ORTIZ & ORTIZ, L.L.P.                         **Hearing Date:** June 27, 2017
32-72 Steinway Street, Ste. 402               **Hearing Time:** 2:30 p.m.
Astoria, New York  11103
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
Norma E. Ortiz
Martha J. de Jesus
*Counsel to the Debtors and Debtors-in-Possession*


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

BOYSIN RALPH LORICK,                          Case No.  16-45645 (NHL)
CYNTHIA THERESA LORICK,

                       Debtors.
-------------------------------------------------------X


**NOTICE OF HEARING ON DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE
(i) APPROVING BIDDING PROCEDURES AND CERTAIN TERMS AND
CONDITIONS OF SALE, (ii) SCHEDULING THE DEADLINE FOR AN AUCTION AND
HEARING DATE, AND (iii) AUTHORIZING SALE OF REAL PROPERTY "AS IS"
AND "WHERE IS", FREE AND CLEAR OF ALL LIENS,
 CLAIMS, ENCUMBRANCES, AND INTERESTS**


      **PLEASE TAKE NOTICE**, that upon the annexed motion (the "Motion") of the above

captioned Debtors and Debtors-In-Possession (the "Debtors"), the undersigned will move this

Court before the Honorable Nancy H. Lord, United States Bankruptcy Judge, at the United States

Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York, 11201, on the 27th day of June,

2017, at 2:30 p.m. for the entry of an order (i) approving proposed bidding procedures and

certain terms and conditions of sale or refinance of the real property located at 3126 Coney Island

Avenue, Brooklyn, New York 11235, (ii) scheduling the deadline for an auction and hearing

date, and (iii) authorizing the sale of the Property, "as is" and "where is", free and clear of all

liens, claims, and interests .

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief requested in

the Motion must be made in writing and (b) must be filed with the Clerk of the Bankruptcy Court

electronically at www.nyeb.uscourts.gov.  If you do not have the ability to file an objection

electronically, the objection may be filed with the Clerk of the Court by presenting the Clerk with

a copy of the objection saved in .pdf format.  A copy of the objection must be provided to (a) the

Chambers of the Honorable Nancy H. Lord, (b) Debtors' counsel, at the address listed below, and

(c) all parties filing Notices of Appearance, so as to be received no later than seven (7) days prior

to the hearing.  The objection must comply with the Bankruptcy Rules and the Local Bankruptcy

Rules of the court and must state with particularity the legal and factual bases for such objection.

Dated: June 9, 2017
      Astoria, New York

<div style="margin-left:50%">

_S/Norma E. Ortiz_
Norma E. Ortiz, Esq.
Martha J de Jesus, Esq.
ORTIZ & ORTIZ, L.L.P.
3272 Steinway Street, Ste. 402
Astoria, New York 11103
Tel. (718) 522-1117
_Counsel to the Debtors and_
_Debtors-in-Possession_

</div>

ORTIZ & ORTIZ, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York  11103
Norma E. Ortiz, Esq.
Martha de Jesus, Esq.
Tel. (718) 522-1117
Fax. (718) 596-1302
email@ortizandortiz.com
*Counsel to the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re

BOYSIN RALPH LORICK,                              Case No.  16-45645 (NHL)
CYNTHIA THERESA LORICK,

                           Debtors.              Chapter 11

-------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE (i) APPROVING BIDDING PROCEDURES AND CERTAIN TERMS AND CONDITIONS OF SALE, (ii) SCHEDULING THE DEADLINE FOR AN AUCTION AND HEARING DATE, AND (iii) AUTHORIZING SALE OF REAL PROPERTY "AS IS" AND "WHERE IS", FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

TO:    THE HONORABLE NANCY HERSHEY LORD,
       UNITED STATES BANKRUPTCY JUDGE:

       Boysin and Cynthia Lorick (the "Debtors"), by and through their attorneys Ortiz & Ortiz,

L.L.P., hereby move for an order, pursuant to 11. U.S.C. Sections 105(a) and 363, (i) approving

the proposed bidding procedures (the "Bidding Procedures") and certain terms and conditions of

sale of the real property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 (the

"Property"), (ii) scheduling the deadline for an auction and hearing date, and (iii) authorizing the

sale of the Property, "as is" and "where is", free and clear of all liens, claims, and interests (the

"Motion").  In support of the Motion, the Debtors assert as follows:

## BACKGROUND

1.      The Debtors filed their voluntary petition on December 15, 2016, (the "Petition

Date") and have remained in possession pursuant to 11 U.S.C. § 1107.  No unsecured creditors'

committee has been appointed in this case.

2.       The Property is encumbered by a first mortgage lien and note held by Wells

Fargo Bank, trustee for the registered holders of Sovereign Commercial Mortgage Securities

Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Mortgagee").

3.      The Property has been managed and operated by a Receiver, and the Receiver

remains in possession.  Since the bankruptcy filing, the Debtors have focused their efforts on

obtaining a source of funding to satisfy the claims of their creditors, or preparing to sell the

Property.  They believe the Property has sufficient equity and value to permit them to accomplish

this goal.  The Debtors would prefer to refinance the Property, but understand that they must sell

it if they do not obtain funding.

4.      The Court has directed the Debtors to accomplish a refinance or sale of the

Property no later than August 21, 2017.  The Debtors are working to ensure they comply with

that direction by proceeding on a dual track with respect to the refinance or sale of the Property.

At this time, the Debtors are in communication with lenders and a possible investor to refinance

the Property for an amount sufficient to repay the Mortgagee.  Although the Debtors have

received three offers to purchase the Property for amounts in excess of the Mortgagee's claim,

2

the Debtors have also contacted two auctioneers about marketing the Property to sell at an auction to the highest bidder.

5.     The Debtors have been unable to pursue the refinance of the Mortgagee's claim because they did not receive a pay-statement from the Mortgagee until June 7, 2017.  All of the lenders the Debtors have approached will not undertake an application without seeing a pay-off statement.  The Debtors have made multiple requests for this information, and the delay in obtaining the statement delayed the Debtors' financing efforts.

6.     In addition, the amount sought by the Mortgagee continues to shift.  By letter dated December 9, 2016, the Debtors were informed that the amount due was $4,179,697.09. This amount included $40,000 of estimated legal fees as of December 14, 2016.  By letter dated February 21, 2017, the Debtors were informed that the amount due was $4,392,429.68.  This amount included $125,000 of estimated legal fees as of February 28, 2017.  In the proof of claim filed on April 24, 2017, the Mortgagee asserted it was due no less than $4,149,568.83.  Finally, by letter dated June 7, 2017[1], the Mortgagee asserted it was due $4,613,225.11, including additional attorney fees and costs of $289,194.08.  The Debtors' have requested legal time records to support the Mortgagee's fee request.  No time records were attached to the Proof of Claim.[2]

---

[1] The June 7, 2017, letter does not include any payment directions or instructions for calculating future interest, and contains the following language: "The amounts stated herein are being provided to you for <u>informational purposes only</u> and shall not be deemed an estoppel from collecting the actual amounts due under the Loan Documents or a waiver of any amounts sought under the Lender's proof of claim" (*emphasis in original*).

[2] It appears from the state court foreclosure documents obtained by the Debtor that the Mortgagee was awarded approximately $160,000 in legal fees and costs for the period November 2013 through June 2016, as set forth in the foreclosure judgment entered in June 2016.

7.      To ensure compliance with the Court's direction, the Debtors have continued to pursue the sale of the Property.  They have received multiple offers to purchase the Property, and have to pending written offers for no less than $5,2500,000[3].

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to consider the Motion and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The predicate for the relief requested is based upon Sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, Local Rule 6004-1, and the Sale Guidelines, adopted as Administrative Order No. 557 of the United States Bankruptcy Court for the Eastern District of New York (the "Sale Guidelines").

## RELIEF REQUESTED

10.      By this Motion, the Debtors seek authorization to, pursuant to Section 363(f) of the Bankruptcy Code, conduct an auction sale of the Property in "as is", "where is" condition, free and clear of any liens, claims, encumbrances, and interests (the "Sale").  The Debtors seek the entry of an order approving the proposed Bidding Procedures, the terms and conditions of Sale, and establishing a subsequent hearing date for the Court's approval of the Sale of the Property to the highest qualified bidder.  For these reasons, the Debtors request that the Court enter an order substantially in the form of the order annexed as Exhibit A.

---

[3] One of the offerors has sought to serve as a stalking horse bidder.  The Debtors are negotiating the terms of a proposed agreement, and intend to amend this motion when the negotiations are finalized.

4

11.     The Debtors believe that the proposed Bidding Procedures, annexed hereto as

Exhibit B, are the procedures most likely to maximize the value of the Property for the Debtors'

estate, their creditors and other interested parties.  The principal terms of the Bidding Procedures[4]

are as follows:

- Any person or entity interested in becoming a qualified bidder must demonstrate they are an Interested Party.  In order to do so, they must submit, by **August 4, 2017**:

    (1)     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the Interested Party has a bona fide interest in purchasing the Property; and

    (2)     current financial statements or other information deemed reasonably acceptable to the Debtors demonstrating the financial wherewithal to consummate the purchase of the Property.

    Upon satisfaction of this criteria, the Interested Party shall be deemed a Potential Bidder.

- Potential Bidders will be permitted to conduct due diligence and to inspect the Property prior to the auction.  Such inspections shall be arranged by contacting Debtors' Counsel or auctioneer.

- Potential Bidders must be "qualified" to participate in the bidding process by performing the following:

    i.     <u>Bid Deadline</u>. Submit a bid package by **August 11, 2017,** at 5:00 p.m. (the "Bid Deadline").

    ii.    <u>Bid Documents</u>.  Each bid must include (collectively, the "Bid Package"):

---

[4] This description is intended only as a summary of the Bidding Procedures and is qualified in its entirety by reference to the more detailed provisions of the Bidding Procedures. Capitalized terms used in this summary and not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures. If an inconsistency exists between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall control.

(a)  a letter stating that the bidder's offer is irrevocable until (1) the conclusion of the Auction to the extent the bidder is not the Successful Bidder, or (2) the closing of the Sale Transaction (the "Closing") to the extent the bidder is the Successful Bidder or Backup Bidder;

(b) a cash deposit (via wire transfer or certified funds) to ORTIZ AND ORTIZ L.L.P., as Attorneys (the "Deposit Agent") the total sum equal to ten percent (10%) of such bidder's bid (a "Good Faith Deposit"); and

(c)  proof of financial ability to consummate the purchase of the Property.

- In the event the Debtors do not refinance, the auction shall occur on or before **August 21, 2017** (the "Auction").  The Auction will be conducted by the Debtors and must be attended in person by each prospective bidder or their legal designee with full authority to bind such bidder legally.  Only Qualified Bidders and their counsel may attend the Auction.

- Only Qualified Bidders that have delivered the full amount of their Deposit to the Debtors will be entitled to participate in the Auction.  During the Auction, bidding will begin with the then best Qualified Bid and will subsequently continue in minimum increments of at least $50,000 higher than the previous Qualified Bid (the "Bid Increment"). The Debtors may accept bids at lesser increments at their discretion after the initial overbid.

- The Auction shall continue until there is only one offer that the Debtors determine, and subject to Court approval, is the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (the "Successful Bid").

- At the conclusion of the Auction, the second highest bidder will be announced and confirmed at the Sale Hearing as a "back up" bidder (the "Backup Bidder") whose final bid to acquire the Property (the "Backup Bid") shall become the Successful Bid should the Successful Bidder at auction fail to consummate the purchase of the Property. The Deposit of the Backup Bidder will be returned within five business days after the closing of the sale to the Successful Bid.

- All Qualified Bidders shall be bound by their bids until conclusion of the Auction.  Additionally, the Successful Bidder and the Backup Bidder shall

be bound by their respective bids until the Closing of the Sale of the Property.  If the Successful Bidder is unable or unwilling to close the sale, subject to the Successful Bidder's rights under its sale contract the Successful Bidder shall forfeit its Deposit to the Debtors, and the Debtors may close the sale with the Backup Bidder, without further notice or hearing, who shall then be obligated to close the sale on the terms of the Backup Bidder's sale contract upon twenty days' prior written notice, time being of the essence.  If the Backup Bidder is unable or unwilling to close the sale in the time permitted, subject to the Backup Bidder's rights under its agreement of sale, the Backup Bidder shall forfeit its Deposit to the Debtors.

A proposed Terms and Conditions of Sale to be provided the Successful Bidder is annexed hereto as Exhibit C.

12.    Notice of the Sale shall be provided as follows:

(a)    Within four days after entry of the Bidding Procedures order (the "Notice Mailing Deadline"), the Debtors shall serve a Sale Notice on (i) the Office of the United States Trustee for the Eastern District of New York; (ii) all applicable state and local taxing authorities; (iii) the Internal Revenue Service; and (iv) all entities who are known to possess or assert a claim against the Debtors (collectively, the "Notice Parties"); and on or about the same date, the Debtors will advertise the auction in such publications and/or periodicals as the Debtors deems appropriate in their business judgment.

(b)    Within seven (7) business days after the conclusion of the Sale, the Debtors will file a notice identifying the Successful Bidder and Backup Bidder (the "Notice Of Successful Bidder").

13.    The Debtors submit that the proposed Sale Notice and the Notice of Successful Bidder, and providing notice of this Motion, the Sale, and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and constitutes good and adequate notice of the Sale and the proceedings with respect thereto.

a.      **The Proposed Sale and Sale Process Should be Approved by the Court**

14.      The Bidding Procedures are designed to ensure that the Debtors' estate receives

the highest and best offer for the Property.  The Bidding Procedures have been structured to

attract the maximum number of bids.  The terms proposed are reasonable and typical of the terms

utilized in cases similar to the Debtors' case.

15.      Section 363(b)(1) provides that the "[t]he trustee, after notice and a hearing, may

use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C.

§ 363(b)(1).  The decision to use, sell or lease property of the estate is subject to the exercise of

the debtor's business judgment.  See  Committee of Equity Sec. Holders v. Lionel Corp. (In re

Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).  Further, to obtain court approval to sell

property under section 363(b) of the Bankruptcy Code, a debtor need only show a legitimate

business justification for the proposed action.  See id. at 1070. ("Where the debtor articulates a

reasonable basis for its business decisions . . . courts will generally not entertain objections to the

debtor's conduct."); In re Chrysler LLC, 576 F.3d 108, 117-18 (2d Cir. 2009); In re Iridium

Operating LLC, 478 F.3d 452, 466 (2d Cir. 2007); see also In re Gen. Motors Corp., 407 B.R.

463, 494-5 (Bankr. S.D.N.Y. 2009).

16.      As set forth above, the Debtors expect that the sale of the Property will generate

the best recovery for all their creditors.  Moreover, the creditor most affected by the Sale – the

Mortgagee – fully supports a quick and expeditious sale of the Property so that the Debtors may

satisfy its claim.   For these reasons, the proposed Sale is in the estate's best interest.

b.    **The Court Should Approve the Sale of the Property Free and Clear of All Liens**

17.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property free

and clear of any interest in such property of an entity other than the estate only if:

> (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (ii) such entity consents;
>
> (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (iv) such interest is in bone fide dispute; or
>
> (v) such entity should be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Section 363(f) provides the courts with broad discretion to permit sales free and clear of all liens

and interests if solely one of the criteria set forth therein is satisfied.  See In re Smart World

Tech., LLC, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) (stating Section 363 allows purchasers to

acquire assets without any accompanying liabilities.");  In re Dundee Equity Corp., No. 89-B-

10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the

disjunctive, such that the sale free of the interest concerned may occur if any one of the

conditions of § 363(f) have been met").

18.     The Debtors assert that permitting a sale free and clear of all liens and interests

will help to encourage buyers to participate in the Sale and avoid any title issues that may delay

or prevent the winning bidder to consummate the purchase on an expedited basis.  For these

reasons, the Court should find that such a sale is in the best interests of the estate and warranted

under the circumstances of this proceeding.

19.     The Debtors hereby request that the Court: (a) direct an auction to be held in accordance with Local Bankruptcy Rule 6004-1; and (b) schedule a hearing to consider the approval of the Sale of the Property to the Successful Bidder (the "Sale Hearing"), on dates and times that would permit the Debtors to provide notice thereof to creditors and parties-in-interest in compliance with the above-referenced notice periods, and so as hold the auction sale prior to August 21, 2017.

20.     The Debtors propose to serve a notice of the Sale Hearing upon the Notice Parties, by first class mail by the Mailing Deadline.  The Debtors believe that such notice provides sufficient notice of the Sale to permit a party to be fully informed of the nature and terms of the proposed transaction in accordance with Bankruptcy Rule 2002(c)(1).  Objections, if any, to the approval of the Sale would be required to be served and filed not later than seven days prior to the Sale Hearing.

c.     **<u>Requests for Immediate Relief and Waiver of Stay</u>**

21.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The purpose of the fourteen (14) day stay period (the "Stay Period") is to permit parties sufficient time to respond to propose uses of estate property.  Nevertheless, the Debtors request that the Court waive the Stay Period to allow a sale or other transaction to close immediately.  Accordingly, the Debtors respectfully request that the Court waive the fourteen-day Stay Period under Bankruptcy Rules 6004(h).

22.     No previous application for relief requested herein has been made to this or any other court.

10

## <u>CONCLUSION</u>

23.     Based upon the foregoing, it is respectfully submitted that the Bidding Procedures

and Sale of the Property is in the best interest of the Debtors' estate and creditors.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested

herein and grant such other and further relief as is just.

Dated: June 9, 2017
      Astoria, New York

<div align="right">

*/s/Norma E. Ortiz*
Norma E. Ortiz, Esq.
Martha de Jesus, Esq.
Ortiz & Ortiz, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, NY  11103
Tel. (718) 522-1117
*Counsel to the Debtors and*
*Debtors-in-Possession*

</div>

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

BOYSIN RALPH LORICK,                                Case No.  16-45645 (NHL)
CYNTHIA THERESA LORICK,

                                 Debtors.            Chapter 11
--------------------------------------------------------X

**ORDER PURSUANT TO SECTIONS 105(a)
AND 363 OF THE BANKRUPTCY CODE (i) APPROVING BIDDING PROCEDURES
AND CERTAIN TERMS AND CONDITIONS OF SALE, (ii) SCHEDULING THE
DEADLINE FOR AN AUCTION AND HEARING DATE, AND (iii) AUTHORIZING
SALE OF REAL PROPERTY "AS IS" AND "WHERE IS", FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

Upon the motion of Boysin and Cynthia Lorick (the "Debtors"), dated June 9, 2017, (the

"Motion"), (i) seeking the approval of the procedures (the "Bidding Procedures") to be used in

connection with the sale of the real property located at 3126 Coney Island Avenue, Brooklyn,

New York 11235 (the "Property"), (ii) scheduling the deadline for an auction and hearing date,

and (iii) authorizing the sale of the Property "as is" and "where is", free and clear of all liens,

claims, encumbrances, leases and adverse interest, all as more fully described in the Motion; and

the Court having held a hearing to consider the relief requested therein (the "Bidding Procedures

Hearing") with the appearances of all interested parties noted in the record of the Bidding

Procedures Hearing; and upon the record of the Bidding Procedures Hearing, and all of the

proceedings before the Court, it is hereby

**ORDERED**, that the Motion is granted to the extent provided herein; and it is further

**ORDERED**, that the Bidding Procedures attached hereto as Exhibit A are approved and

fully incorporated into this Order, and the Debtors are authorized and directed to act in

accordance therewith; and it is further

**ORDERED**, that an auction sale (the "Auction") shall be conducted on or before **August 21, 2017, or as soon thereafter as recommended by the Debtors' real estate broker or auctioneer,** at which time the Debtors will offer the Property for sale to the highest offer submitted in compliance with the Bidding Procedures; and it is further

**ORDERED**, that a hearing is to be held on _____, 2017, at ____ before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201, on the approval of the sale to the successful bidder at the Auction of the Property, together with such other and further relief as the Court may deem just and proper (the "Sale Hearing"); and it is further

**ORDERED**, that objections if any to the approval of the sale shall: (a) be made in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of New York, (c) set forth the basis for the objection and the specific grounds therefor, (d) identify the party objecting and its alleged interest in the Debtors' chapter 11 case; (e) be filed with the Court with a copy to the chambers of the Honorable Nancy Hershey Lord, and (f) be served in a manner so as to be received by Ortiz & Ortiz, LLP, 32-72 Steinway Street, Suite 402, Astoria, New York 11103, no later than 7 days prior to the Approval Hearing.

 Dated: June___, 2017
          Brooklyn, New York

                                                    _____
                                                    HON. NANCY HERSHEY LORD
                                                    U.S. BANKRUPTCY JUDGE

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re

BOYSIN RALPH LORICK,                              Case No.  16-45645 (NHL)
CYNTHIA THERESA LORICK,

                              Debtors.            Chapter 11
-------------------------------------------------------X

## BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures") have been approved by an order o
the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy
Court") entered on June ___, 2017 [Docket No. __] (the "Bidding Procedures Order") in the
above-captioned bankruptcy case.

These Bidding Procedures set forth the process by which Boysin and Cynthia Lorick (the
"Debtors") are authorized to conduct a sale ("Sale") by auction (the "Auction") of the real
property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 (the "Property").

Any interested bidder should contact, as soon as practical, the Debtors' counsel, Ortiz &
Ortiz, L.L.P., 32-72 Steinway Street, Suite 402, Astoria, New York 11103 ("O & O").  Any party
desiring to obtain a copy of the Bidding Procedures Order may do so by contacting O & O.

## I.    The Bidding Process

The Debtors will (a) coordinate the efforts of Potential Bidders (as defined below) in
conducting their respective due diligence investigations regarding the Property; (b) receive and
evaluate bids from Potential Bidders; (c) determine whether any Potential Bidders are Qualified
Bidders (as defined below); (d) receive and evaluate bids from Qualified Bidders prior to the
Auction; and (e) administer the Auction. The foregoing activities are referred to, collectively, as
the "Bidding Process." Neither the Debtors nor their representatives will be obligated to furnish
information of any kind whatsoever to any person or entity that is not a Potential Bidder.

The Debtors and their representatives will use good faith efforts to provide all Potential
Bidders with substantially similar access and information.  Any person or entity who wishes to
participate in the Bidding Process must meet the participation requirements for Potential Bidders
below and must thereafter submit a Qualified Bid to become a Qualified Bidder.

## II.    Participation Requirements

A.    Interested Parties

Unless otherwise provided herein or ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver the below-listed items (unless previously delivered) to O & O or the Debtors' real estate broker or auctioneer on or before **August 4, 2017** (or such later date to which the Debtors consent, but, in all events prior to the commencement of the Auction).  The Interested Party must deliver each of the following:

(1)    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Interested Party has a bona fide interest in purchasing the Property; and

(2)    current financial statements or other information deemed reasonably acceptable to the Debtors demonstrating the financial wherewithal to consummate the purchase of the Property.

After receipt of the items identified above, the Debtors shall review the materials as soon as reasonably practicable and determine whether an Interested Party has a bona fide interest in purchasing the Property and whether such Interested Party has the financial wherewithal to do so. To the extent any such Interested Party satisfies both of the aforesaid criteria, such Interested Party shall be deemed a "Potential Bidder."

B.    Due Diligence

Until the Bid Deadline (as defined below) and in addition to access to the Property, the Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors determines to be reasonable and appropriate under the circumstances but only to the extent same is in the Debtors' possession.

In the event that, having performed its due diligence, the Potential Bidder fails to timely submit a Qualified Bid or if such Potential Bidder submits one or more Qualified Bids and none of which Qualified Bids are accepted by Debtors, then, in such an event, the deposit made by such Potential Bidder to qualify as a Potential Bidder shall be returned to Potential Bidder and such Potential Bidder shall cease to be a Potential Bidder and is prohibited from further making any bids or attending the Auction.

## III.    Qualified Bid

Each bid, offer, solicitation, or proposal a Potential Bidder submits must satisfy each of the following conditions to constitute a "Qualified Bid" and for the Potential Bidder to constitute

a "Qualified Bidder."

     A.    <u>Bid Deadline</u>

     A Potential Bidder who desires to be a Qualified Bidder must deliver written and electronic copies of the Required Bid Documents (as defined below) to the following parties no later than 5:00 p.m. (Eastern Time) on **<u>August 11, 2017</u>**, or such later date to which the Debtors consent, but, in all events prior to the commencement of the Auction, (the "Bid Deadline") to Ortiz & Ortiz, LLP, 32-72 Steinway Street, Suite 402, Astoria, New York 11103 or the Debtors' auctioneer.

     The Debtors may extend the Bid Deadline once or successively, but are not obligated to do so.  If the Debtors extend the Bid Deadline, it will promptly notify all Potential Bidders of such extension.

     At any time after the Bid Deadline and prior to the conclusion of the Auction, the Debtors further reserve the right, in their reasonable business judgment to invite parties that have not previously submitted Qualified Bids to do so, such that they may be considered for participation in the Auction pursuant to the Bidding Procedures.

     B.    <u>Bid Requirements</u>

     All bids must include the following items (the "Required Bid Documents"):

     (a)    a signed statement that the bidder's offer is irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing of the Sale Transaction (the "Closing") to the extent the bidder is the Successful Bidder or Backup Bidder;

     (b)    a cash deposit (via wire transfer or certified funds) to ORTIZ AND ORTIZ LLP, as Attorneys (the "Deposit Agent") the total sum equal to ten percent (10%) of such bidder's bid (a "Good Faith Deposit"); and

     (c)    proof of financial ability to consummate the purchase of the Property.

     If a bid is received and, in the Debtors' judgment it is not clear to the Debtors whether the bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.

**IV.**    **<u>Evaluation of Qualified Bids</u>**

     Unless the Debtors agree otherwise, a bid received from a Potential Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above

requirements (except as otherwise provided for credit bids of a lender as provided for in Section XIII). All Qualified Bids will be considered, but the Debtors reserve the right to reject any and all bids other than the highest or otherwise best bid in the Debtors' business judgment. The Debtors may, in their business judgment, evaluate bids on numerous grounds including, without limitation, (i) any delay, (ii) additional risks (including closing risks), (iii) whether the Qualified Bidder provides for an amount sufficient to pay the senior obligations applicable to the Property in cash in full (other than for credit bids of a lender as provided for in Section XIII), and (iv) added costs to the Debtors.

The Debtors shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 1:00 p.m. (Eastern time) on **August 15, 2017**. The Debtors reserve the right, at any time after the Bid Deadline and prior to the commencement of the Auction, to request parties submitting written offers (whether or not such offers might be determined to be Qualified Bids) to amend their written offers.

## **V.**    **Auction**

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct the Auction of the Property. The Debtors shall conduct the Auction in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids. The Auction for the Property will be conducted by O & O, or the Debtors' real estate broker or auctioneer, on or before **August 21, 2017**. Only representatives or agents of the Debtors and any Qualified Bidders that have submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction.

Only Qualified Bidders will be entitled to make any subsequent bids at the Auction. All bids must be made openly and in the presence of all parties at the Auction.

At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid that the Debtors believe, in their reasonable discretion represents the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have informed the Debtors of their intent to participate in the Auction. If requested, the Debtors will provide to these same parties an explanation of how the Starting Bid is valued and a list of all Qualified Bidders.

If a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder. The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith; and (b) disclosed to each Qualified Bidder participating in the Auction.

Bidding for Property at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round a Qualified Bidder(s) submits at least one subsequent bid that is no less than $50,000.00 above the immediately preceding highest or best bid.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid(s) that they believe to be the highest or otherwise best offer (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid.

## VI.    Selection Of Successful Bid

Prior to the conclusion of the Auction, the Debtors will (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction and the cost to the Debtors' estate; (b) identify the highest or otherwise best offer (the "Successful Bid"); (c) determine which Qualified Bid is the next highest or otherwise best offer or collection of offers (the "Backup Bid") for the Property; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the bidder whose bid was determined to the be the Successful Bid (the "Successful Bidder"), (ii) the amount and other material terms of the Successful Bid, and (iii) the identity of the party or parties that submitted the Backup Bid (the "Backup Bidder").

The Successful Bidder shall within 2 business days of the auction, deposit with O&O certified funds equal to the amount necessary to increase its Good Faith Deposit to ten percent (10%) of the Successful Bid.

In advance of the Sale Hearing, the Debtors shall complete and execute all agreements, instruments, or other documents necessary to bind the Successful Bidder to close on the sale of the Property.  The Debtors shall also complete all agreements necessary with the Backup Bidder in the event the Successful Bidder does not consummate the purchase of the Property.

The Debtors will sell the Property for the highest bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court at the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Qualified Bid.  The Debtors will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.  Only the Successful Bidder, or the Backup Bidder if applicable, will be entitled to purchase the Property pursuant to these Bidding Procedures.

If for any reason, the Successful Bidder fails to consummate the purchase of the Property, the Debtors and the Backup Bidder are authorized to effect the sale of the Property to such Backup Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement.

## VII.    The Sale Hearing

The Sale Hearing will be held before the Honorable Nancy Hershey Lord _____, 2017, at _____ **(Eastern Time)** in the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201. The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing. If the Debtors do not receive any Qualified Bids, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing. In all other events, the Debtors will seek at the Sale Hearing approval of the offer constituting the Successful Bid, or to the extent applicable, approval of the offer constituting the Backup Bid.

## VIII.    Return of Good Faith Deposit

The Debtors' presentation to the Bankruptcy Court of the offer constituting the Successful Bid and Backup Bid will not constitute the Debtors' acceptance of either bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale, then the Backup Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a sale to the Backup Bidder subject to the terms of the Backup Bid of such Backup Bidder without further order of the Bankruptcy Court.

The Deposit Agent will hold the Good Faith Deposits of all Qualified Bidders in escrow, and, while held in escrow, the Good Faith Deposits will not become property of the Debtors' bankruptcy estate unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder and the Backup Bidder until the Closing unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five (5) business days of the entry of the Sale Order.

At the Closing, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Deposit Agent will release the Good Faith Deposit of the Backup Bidder within five (5) business days after the Closing with the Successful Bidder.

hd

**IX.    As Is, Where Is**

The sale of the Property will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estate except as provided in any agreement with respect to the sale approved by the Bankruptcy Court.

**X.    Free and Clear of Any and All Interests**

Except as otherwise provided in the Sale Order or the Successful Bidder's purchase agreement, all of Debtors' right, title, and interest in, and to, the Property subject thereto will be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon (collectively, the "Interests") to the maximum extent permitted under Section 363 of the Bankruptcy Code.  Such Interests will attach to the net proceeds of the sale of the Property with the same validity and priority as such Interests applied against the applicable Property.

**XI.    Credit Bid Right**

Subject to applicable law and pursuant to Section 363(k) of the Bankruptcy Code, any senior creditor, whose liens are not in dispute will have the right to use its portion of the senior obligations to credit bid as the equivalent of cash on a dollar-for-dollar basis up to the amount of its secured claim with respect to the Property, without compliance with the any of the Qualified Bid requirements; provided however, that if a lien(s) is the subject of a dispute, the applicable senior lender shall be entitled to seek relief from the Bankruptcy Court allowing such credit bid to nonetheless proceed, with the rights and objections of all parties reserved in connection therewith.

**XII.    Reservation of Rights; Deadline Extension**

Notwithstanding any of the foregoing, the Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Property, including, without limitation, extending the deadlines set forth in the Bidding Procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice.

However, any material modifications to the terms of the bidding procedures and any decision by the Debtors (a) to cancel the Auction, (b) withdraw the Property from the Auction, (c) adjourn or change the location of the Auction, or (d) declare any party to be a stalking-horse bidder, are subject to three (3) days' notice to the United States Trustee and parties who filed notices of appearance, with an opportunity to object unless the Court orders otherwise.  All non-material modifications of the bidding procedures must be filed with the Court, with an email copy to counsel to the United States Trustee and all parties who filed notices of appearance.

**XIII.**   **The Closing Date**

In the event the property has been sold to a third party, the closing date shall be thirty (30) calendar days after the date the Sale is confirmed by the Bankruptcy court, time being of the essence.

Dated:  June ___, 2017                                ORTIZ AND ORTIZ LLP
      Astoria, New York                         Norma E. Ortiz, Esq.
                                                Martha de Jesus, Esq.
                                                32-72 Steinway Street, Suite 402
                                                Astoria, NY 11103
                                                T: (718) 522-1117
                                                F: (718) 596-1302
                                                *Counsel to the Debtors and*
                                                *Debtors-in-Possession*

**Exhibit C**

## TERMS AND CONDITIONS OF SALE

**PURSUANT TO AN ORDER OF THE HONORABLE NANCY HERSHEY LORD, DATED JUNE ___, 2017, THE PROPERTY OF THE DEBTORS, LOCATED AT 3126 CONEY ISLAND AVENUE, BROOKLYN, NEW YORK 11235 IS TO BE SOLD AT PUBLIC AUCTION.**

      1.      On December 15, 2016, Boysin and Cynthia Lorick, the debtors and debtors-in-possession (the "Debtors"), filed a voluntary petition for relief under chapter 11 of Title 11, United States Code (the Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court"), commencing case number 16-45645-NHL  To date, no committee, trustee, or examiner has been appointed, and the Debtors continue to operate and manage their business and property as a debtors-in-possession under Bankruptcy Code §§ 1107(a) and 1108.

      2.      These Terms and Conditions of Sale are promulgated in connection with the court authorized Public Auction Sale (the "Auction") of the Debtors' real property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678   Lot: 59 (the "Property").  The Auction shall be conducted by the Debtors.

      3.      The Debtors is represented by Ortiz and Ortiz, L.L.P., ("Ortiz"), with offices at 32-72 Steinway Street, Suite 402, Astoria, NY 11103.

      4.      The Auction will be held on _____ at _____ (the "Sale Date") at _____.

      5.      The Successful Purchaser (as hereinafter defined) of the Property, will, at the time and place of the conclusion of the Auction, sign a memorandum of sale (the "Memorandum of Sale") in accordance with these Terms and Conditions of Sale.

      6.      In order to be permitted to bid on the Property, prior to the commencement of the Auction, each prospective bidder ("Bidder") must deliver to the Debtors a certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P, as Attorneys" in the amount of Five Hundred Thousand Dollars ($500,000.00) (the "Qualifying Deposit"), which amount shall serve as a partial good faith deposit against payment of the purchase price by such competing Bidder as the Debtors determine to have made the highest or best bid for the Property (the "Successful Purchaser").  Within 48 hours after conclusion of the Auction, the Successful Purchaser shall deliver to Ortiz, by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P, as Attorneys" or by wire in immediately available federal funds, an amount equal to 10% of the high bid realized at Auction minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit") plus a _____ percent Buyer's Premium (as hereinafter defined).  The Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after conclusion of the Auction.  Failure of the Successful Purchaser to tender the 10% Deposit of the high bid at Auction and the Buyer's Premium within 48 hours after conclusion of the Auction shall result in an immediate default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale and shall result in the forfeiture of all earnest monies paid, including the Buyer's Premium.  The Successful Purchaser and the competing Bidder who Ortiz determines to have made the second highest or best bid for the Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by these Terms and Conditions of Sale and the Memorandum of Sale. **At the conclusion of the Auction, Ortiz will return the Qualifying Deposits to all Bidders, except for the Successful Purchaser and the**

**Second Highest Bidder.  The Second Highest Bidder's Qualifying Deposit shall be returned within five (5) business days following closing of the sale to Successful Purchaser.**

7.      Pursuant to an order of the Bankruptcy Court, the Successful Purchaser, and the Second Highest Bidder in the event of a Successful Purchaser's Default (as hereinafter defined), are solely responsible to pay _____ percent (___%) of the high bid at Auction (the "Buyer's Premium").  The sum of the high bid at Auction and the Buyer's Premium is defined herein as the "Purchase Price".

8.      The Successful Purchaser must pay the balance of the Purchase Price for the Property to Ortiz by certified check or bank check or by wire in immediately available federal funds.  The Successful Purchaser must close title to the Property at a date that is no more than thirty (30) days after the approval of the Auction by the Bankruptcy Court ("Court Approval Date"), **TIME BEING OF THE ESSENCE as to the Successful Purchaser**, although such date may be extended solely by the Attorney for the Debtors.  Notwithstanding the foregoing, Debtors shall grant the Successful Bidder a single thirty (30) day extension, at the request of the Successful Bidder, provided Successful Bidder posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the thirtieth (30th) day following court approval (the "Additional Deposit").  The Additional Deposit shall be made by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit". If Successful Bidder elects for an extension, the Closing shall take place on or before the sixtieth (60th) day following court approval, **TIME BEING OF THE ESSENCE as to the Successful Bidder**.   If Successful Purchaser elects to exercise the Extension, Successful Purchaser shall be responsible for all real estate taxes incurred from the 30th day after the Court Approval Date through closing and shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day after the Court Approval Date through to the actual day of closing.

9.      If the Successful Purchaser fails to post the total required ten (10%) percent Deposit and _____ (___%) percent Buyer's Premium within 48 hours following the Public Sale ("Successful Purchaser's Default"), Ortiz, in their sole and absolute discretion, may, within three (3) business days of Successful Purchaser's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the new Successful Purchaser (the "New Successful Purchaser").  The New Successful Purchaser shall not receive credit for any Deposit and/or Buyer's Premium forfeited by the initial Successful Purchaser.  The New Successful Purchaser must close title to the Property no later than forty five (45) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser**, although such date may be extended solely by Ortiz.  Notwithstanding the foregoing, Ortiz shall grant the New Successful Purchaser a single thirty (30) day extension (the "New Successful Purchaser's Extension"), at the request of the New Successful Purchaser, provided the New Successful Purchaser posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the thirtieth (30th) day following receipt of notification of Successful Purchaser's Default (the "New Successful Purchaser's Additional Deposit").  The New Successful Purchaser's Additional Deposit shall be made by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit".  If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the Closing shall take place on or before the seventy fifth (75th) day following receipt of notification of Successful Purchaser's Default, **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by

2

the Debtors.  If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the New Successful Purchaser shall be responsible for all real estate taxes incurred from the 45th day following receipt of notification of Successful Purchaser's Default through closing and shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 45th day following receipt of notification of Successful Purchaser's Default through to the actual day of closing.

10.     The closing shall take place at the offices of Ortiz and Ortiz, L.L.P., ("Ortiz"), with offices at 32-72 Steinway Street, Suite 402, Astoria, NY 11103 (the "Closing").

11.     The Successful Purchaser, or the New Successful Purchaser, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other Property inspections; appraisals, reports and other costs of Property due diligence; and County, State, New York City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Property from the Debtors at Closing.  The Successful Purchaser acknowledges that they will be responsible for the completion of any ACRIS forms, if required. The Debtors shall not be required to execute any form of title affidavit (but may in their sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions.  The Successful Purchaser, or the New Successful Purchaser, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms.  In connection with the Closing and Closing date, the Successful Purchaser or the New Successful Purchaser, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Purchaser or the New Successful Purchaser, as the case may be, and the failure of the Successful Purchaser or the New Successful Purchaser, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing date, will result in an immediate forfeiture of the Deposit and Buyer's Premium and the termination of the Successful Purchaser's or the New Successful Purchaser's, as the case may be, right to acquire the Property under these Terms and Conditions of Sale and the Memorandum of Sale.**  The Successful Purchaser or the New Successful Purchaser, as the case may be, shall be obligated to close title to the Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Purchaser, or the New Successful Purchaser, as the case may be, to cancel or avoid its obligation under these Terms of and Conditions of Sale and the Memorandum of Sale other than the Debtors' inability to deliver insurable title to the Property.  Further, the Successful Purchaser or the New Successful Purchaser, as the case may be, shall have demonstrated, to the satisfaction of Debtors and Ortiz, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale and the Memorandum of Sale, without delay.  Ortiz reserves the right to reject any Purchaser or Bidder who the Debtors believe, in their sole discretion, is not financially capable of consummating the purchase of the Property.  Expenses incurred by the Successful Purchaser, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall the Debtors be responsible for, or pay, such expenses.

12.     The only commission that will be paid is to the Licensed Real Estate Broker, who registers the Successful Purchaser in accordance with the Broker Participation Agreement and has received confirmation of receipt and acknowledgement of valid registration by the Debtors.  The commission for such registered real estate broker will be _____ (___%) of the Successful Bid.

13.     The Debtors and their professionals have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or this Auction, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the current or future rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the property.  Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made.  The Debtors shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtors or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtors unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms and Conditions of Sale and the Memorandum of Sale.  **The Property shall <u>not</u> be delivered vacant of tenancies at Closing.**

14.     The Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, and sale of the Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided, however, **the Property shall be delivered free and clear of any and all monetary liens**.  By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. Neither the Debtors nor any of their collective representatives makes any representations or warrantees with respect to the permissible uses of the Property including, but not limited to, the zoning of the Property.  All Bidders acknowledge that they have conducted their own due diligence in connection with the Property and are not relying on any information provided by the Debtors or their professionals.  The Property will be sold subject to any and all violations requiring corrective action.

15.     The Successful Purchaser has five (5) days from the Court Approval Date to order title, copy of which shall promptly be provided to Ortiz.  The Successful Purchaser has twenty (20) days from the Court Approval Date to advise Ortiz (by electronic mail to email@ortizandortiz.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Property. Failure of the Successful Purchaser to advise Ortiz within twenty (20) days from the Court Approval Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects, with Ortiz reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

16.     The Debtors shall convey the Property by delivery of a quitclaim deed.  The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure.  If the Successful Purchaser or the New Successful Purchaser, as the case may be, is unable to obtain title insurance, subject to the permissible exceptions contained herein, Debtors may, at their option, arrange for the issuance of a title insurance policy by such a company at the sole cost and expense of the Successful Purchaser, or the New Successful Purchaser, as the case may be.

17.     Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the "Bankruptcy Code" or otherwise interfere with the jurisdiction of the Bankruptcy Court.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by Ortiz or by the Court.  Ortiz reserves the right to modify these Terms and Conditions of Sale at the Auction or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

18.     These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Auction of the Property.  By making a bid for the Property, all Purchasers will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

19.     If the Debtors are unable to deliver the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, the Debtors' only obligation will be to refund the Deposit and Buyer's Premium, without interest, to the Successful Purchaser and/or the New Successful Purchaser, as the case may be, and upon such refund, the Successful Purchaser or the New Successful Purchaser, as the case may be, and/or New Successful Purchaser will have no claim or recourse against the Debtors or their professionals and shall have no further rights under these Terms and Conditions of Sale or Memorandum of Sale.

20.     The Auction of the Property is subject to further order of the Bankruptcy Court confirming the Auction.

21.     Ortiz shall notify the Successful Purchaser whether the Auction is confirmed.

22.     The Bankruptcy Court shall determine any disputes concerning the Auction of the Property.  By participating in the Auction, all Purchasers consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtors' pending case.

I have read these Terms and Conditions of Sale and agree to be bound by them.


By:_____ Date:_____
      Boysin Lorick, Seller


By:_____ Date:_____
      Cynthia Lorick, Seller



By:_____ Date:_____

Print Name: _____, Buyer

## MEMORANDUM OF SALE – SUCCESSFUL PURCHASER

High Bid Realized at Auction: _____

____% Buyer's Premium: _____

**Purchase Price:** _____

The undersigned has this ___ day of _____, 2017, agreed to purchase the property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678 Lot: 59 (the "Property") of Boysin and Cynthia Lorick as the Chapter 11 debtors and debtors-in-possession for the sum of $_____ DOLLARS and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of the Property and this Memorandum of Sale.

_____    _____
SUCCESSFUL PURCHASER (Signature)    SUCCESSFUL PURCHASER (Signature)

_____    _____
PRINT NAME                          PRINT NAME

_____    _____
ADDRESS                             ADDRESS

_____    _____
ADDRESS (City, State, Zip)          ADDRESS (City, State, Zip)

_____    _____
TELEPHONE NUMBER                    TELEPHONE NUMBER

_____    _____
EMAIL ADDRESS                       EMAIL ADDRESS

Received from _____ the sum of $500,000 DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price in the above sale was for the sum of $_____.

_____
Received by:

## SUCCESSFUL PURCHASER ATTORNEY INFORMATION

Name      _____

Address   _____

Phone     _____

7

## MEMORANDUM OF SALE – SECOND HIGHEST BIDDER

Bid Realized at Auction: _____

____% Buyer's Premium: _____

**Purchase Price:** _____

The undersigned has this 17th day of March, 2016, agreed to purchase the property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678   Lot: 59 (the "Property") of Boysin and Cynthia Lorick as the Chapter 11 debtors and debtors-in-possession for the sum of $_____ DOLLARS in the event of the Successful Purchaser's Default and if deemed by the Debtors, in their sole and absolute discretion, to hold all benefits and obligations of a Successful Purchaser under the Terms and Conditions of Sale and this Memorandum of Sale and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of said Property and this Memorandum of Sale.

_____     _____
SECOND HIGHEST BIDDER (Signature)     SECOND HIGHEST BIDDER (Signature)

_____     _____
PRINT NAME     PRINT NAME

_____     _____
ADDRESS     ADDRESS

_____     _____
ADDRESS (City, State, Zip)     ADDRESS (City, State, Zip)

_____     _____
TELEPHONE NUMBER     TELEPHONE NUMBER

_____     _____
EMAIL ADDRESS      EMAIL ADDRESS

Received from _____the sum of $500,000 DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price for the 2nd Highest Bid was in the above sale was for the sum of $_____.

_____
Received by:

## SECOND HIGHEST BIDDER ATTORNEY INFORMATION

Name     _____

Address     _____

Phone     _____