ORTIZ & ORTIZ, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York  11103
Norma E. Ortiz
Tel. (718) 522-1117
Fax. (718) 596-1302
email@ortizandortiz.com
*Counsel to the Debtors*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re

BOYSIN RALPH LORICK,                                      Case No.  16-45645 (NHL)
CYNTHIA THERESA LORICK,

                              Debtors.                         Chapter 11
---------------------------------------------------------X

**DEBTORS' EMERGENCY MOTION FOR AN ORDER
(1) ADJOURNING THE AUCTION SALE OF PROPERTY KNOWN AS
3126 CONEY ISLAND AVENUE, BROOKLYN, NEW YORK, SCHEDULED FOR
AUGUST 22, 2017, EX PARTE OR (2) FIXING METHOD OF SERVICE AND
SHORTENING NOTICE PERIOD FOR A HEARING ON THE MOTION TO ADJOURN
AUCTION SALE, AND (3) FOR RELATED RELIEF**

TO:    THE HONORABLE CARLA E. CRAIG,
        UNITED STATES BANKRUPTCY JUDGE:

Boysin and Cynthia Lorick (the "Debtors"), by and through their attorneys Ortiz & Ortiz, L.L.P., hereby move under 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 9006(c), and Rule 9077-1(c) of the Local Bankruptcy Rules for the Eastern District of New York ("Local Rules"), for the entry of an order (1) adjourning the auction sale of the Debtors' real property, located at 3126 Coney Island Avenue, Brooklyn, New York (the "Building) scheduled for August 22, 2017, on an ex parte basis or (2) Fixing Method of Service and Shortening Notice Period for

a hearing on the Motion, and (3) for Related Relief (the "Motion"). In support, the Debtors state as follows:

## Background

1.  The Debtors are a retired married couple in their early seventies. They own a one family home in New Jersey, and three other relatively modest parcels of real estate. They have little unsecured debt. Their financial difficulties arose when they were unable to refinance a mortgage loan encumbering the Building when it became due. Their battle to save their interest in the Building led them to seek relief before the Court. See Declaration of Boysin Lorick annexed as Exhibit A.

2.  The Building is a 38 unit apartment building that was encumbered by a first mortgage lien and note held by Wells Fargo as Trustee for Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Mortgagee"). The Debtors purchased the Property over 20 years ago for approximately $600,000. The Debtors believe the Building is worth no less than $6 million.

3.  After the Debtors defaulted under their mortgage note, the Mortgagee commenced a foreclosure action in Kings County, New York Supreme Court, entitled Wells Fargo Bank, N.A. v. Boysin Lorick, et al., under Index No. 500469/2013. The Supreme Court appointed a receiver in the Action, Douglas Rosenberg (the "Receiver"), and the Receiver has been collecting the rent from the tenants and managing the Property since his appointment by the state court over two years ago.

4.  The Mortgagee obtained the entry of a foreclosure judgment and noticed the sale of the Building in 2016. The Debtors were advised to file a Chapter 13 petition by their former

counsel, and they did so on July 2, 2016, under Case Number 16-43194-nhl. The Debtors were unaware that they did not qualify as Chapter 13 debtors under Bankruptcy Code Section 109 because of the amounts due to the Mortgagee and their other secured creditors. The Mortgagee moved to dismiss their case, and an order dismissing the prior case was entered on October 11, 2016.

5. The Debtors filed their voluntary Chapter 11 petition on December 15, 2016. No unsecured creditors's committee was appointed in their case. The only creditors that have appeared and participated in this case have been the Mortgagee and the Receiver.

6. Since the Debtors commenced this case, they have fully complied with their obligations as debtors-in-possession. They consented to permitting the Receiver to remain in possession of the Building and collect the rents. They have filed operating reports and apid quarterly fees. Lorick has attended virtually every court hearing that has occurred, and has spent countless hours trying to fashion a plan of reorganization.

7. The Debtors have stated, in no uncertain terms, that they would prefer to keep title to the Building if they can locate a source of funds that would permit them to pay the Mortgagee and their unsecured creditors in full. Judge Lord provided the Debtors the opportunity to attempt to secure a source of financing so long as the Debtors proceeded to sell the Building contemporaneously.

A. **Approved Bidding Procedures for the Sale or Refinance of the Building**

8. As a result, the Debtors moved the court for the entry of an order permitting them to sell the Building by public auction (the "Auction") on August 22, 2017. A copy of the order approving that Motion (the "Sale Order") is annexed as Exhibit B. The Sale Order

provides, in relevant part, that the Debtor shall conduct the Auction on August 22, 2017, at 11:00 a.m., in Room 3554 of the Bankruptcy Court. A hearing to approve the sale is scheduled to be heard by the Court on August 24, 2017, at 2:00 p.m.

9. In recognition of the Debtors' attempts to obtain financing to pay their creditors and avoid the sale, the Sale Order allows the Debtors to seek a court order authorizing them to obtaining financing before the Auction occurs. The Sale Order provides

> **ORDERED**, that the Debtors are not precluded from seeking an order of the Court, on shortened notice if needed, either (1) authorizing them to obtain financing to, among other things, satisfy the claims of creditors, so long as the Debtors obtain such financing on or before the Auction date of August 22, 2017, or (2) seeking a private sale of the Property, so long as the sale occurs no later than the Auction date of August 22, 2017.

10. Since the entry of the Sale Order on July 25, 2017, the Debtors have feverishly sought to comply with the terms of the Sale Order by both continuing to seek a source of funding while actively marketing the Auction sale. The Debtors have complied with its terms by, among other things, advertising the Auction in the New York Times, and under the internet sites Loopnet, Apartmentbuildings.com, and Craigslist.

11. The Sale Order, and the approved terms of sale, set a minimum bid of Five Million Two Hundred Thousand Dollars ($5,200,000.00). Bidders are required to pre-qualify in order to participate in the Auction by providing proof of the funds needed to purchase the Building, and to provide the Debtors with a deposit of no less than Five Hundred and Twenty Thousand Dollars ($520,000.00) in certified funds. See approved Bidding Procedures annexed to Exhibit B. The Debtors received three qualified bids, and fully expect the Auction to result in a purchase price in excess of Five Million Three Hundred Thousand Dollars ($5,300,000.00).

B. **The Debtors' Liabilities**

12.     The Debtors' obtained the entry of a bar date order (Doc. No. 47) that set April 24, 2017, as the last date for non-governmental claims to be filed, and June 13, 2017, as the last date for governmental claims to be filed. In response thereto, 11 claims were filed, including one duplicate claim that was filed by the Mortgagee. As a result, the Debtors believe that the following claims are asserted against the bankruptcy estate:

| Unsecured Creditor[1] | Disputed or Subject to Court Approval? | Comment | Amount |
|---|---|---|---|
| Quantum3 Group LLC as agent for MOMA Funding LLC | No | Claim No. 1<br><br>(Listed on Schedules as Comenity Bank) | $131.78 |
| Capital One Bank (USA), N.A. | No | Claim No. 2 | $6,064.91 |
| Capital One Bank (USA), N.A. | No | Claim No. 3 | $24,925.68 |
| IRS | No | Last amended Claim No. 4 | $0.00 |
| Directv, LLC by American InfoSource LP as agent PO Box 5008 Carol Stream, IL 60197-5008 | No | Claim No. 6 | $103.75 |

---

[1] The Debtors' schedules list seven credit card debts that were listed in their credit report. The Debtors' listed the claims as "amounts unknown" because the did not believe these were accurate claims. No proofs of claim were filed by these creditors, and they are not considered claim holders against the bankruptcy estate.

| | | | |
|---|---|---|---|
| Portfolio Recovery Associates, LLC c/o The Home Depot Consumer POB 41067 Norfolk VA 23541 | No | Claim No. 7 | $1,294.12 |
| Douglas Rosenberg, Receiver 80 Livingston Street Brooklyn NY 11201 | Subject to Court Approval | Claim No. 10<br><br>Pre-petition commissions | $43,977.50 |
| **Maximum amount of unsecured debt possibly due** | | | $76,365.96 |

| **Secured Creditor** | **Disputed or Subject to Court Approval?** | **Comment** | **Amount** |
|---|---|---|---|
| Wells Fargo Bank, N.A. Home Equity Group 1 Home Campus X2303-01A Des Moines, IA 50328 | Secured | Equity loan secured by 38 Utica Road, Edison, NJ (Debtors' residence)<br><br>Loan payments are current; no arrears due, as stated proof of claim. Claim No. 5 | $219,003.42<br><br>(Debtors intend to continue payments pursuant to terms of note) |
| Wells Fargo Bank, as Trustee Colin M. Bernardino Kilpatrick Townsend & Stockton LLP 1100 Peachtree Street, Suite 2800 Atlanta, GA 30309 | Legal Fees and Costs subject to Court approval. Legal fees disputed. | Two duplicate claims filed on April 24, 2017: Claims 8 and 9. Amount listed in claims: $4,149,568.83 | Amount listed below is last payoff letter received dated August 18, 2017:<br><br>$4,781,705.70 |
| Department of Housing and Preservation | Possibly. Receiver has no knowledge of this charge and believes it was paid. | Claim No. 11 | $21,650 |
| **Estimated Maximum Amount Due to Secured Creditors (excluding mortgage loan on Edison Home)** | | | $4,803,355.70 |

| Administrative Claims | Disputed or Subject to Court Approval? | Comment | Amount |
|---|---|---|---|
| Douglas Rosenberg, Receiver | Requires Court Approval | Per the Receiver (in addition to amount listed in claim) | $14,000 |
| David Doyaga, Receiver's Counsel | Requires Court Approval | Per counsel. | $5,000 |
| Ortiz & Ortiz, LLP Debtor's Counsel | Requires Court Approval | Amount above retainer paid. Estimated. | $50,000 |
| U.S. Trustee Quarterly Fees | Subject to UST Computation | | $3,500 |
| **Maximum Amount of Administrative Claims Due** | | | $72,500 |

Based upon the foregoing, the Debtors believe that the maximum amount of funds they require to pay their creditors in full is Four Million Nine Hundred Fifty Two Thousand Two Hundred Twenty One Dollars and Sixty Six Cents ($4,952,221.66)[2].

**C.  The Debtors' Proposed Financing**

13.   As set forth in greater detail in the Declaration of Boysin Lorick, the Debtors have struggled to locate a source of financing for the Building. The Debtors were unable to locate one lender that would provide enough financing to pay the Mortgagee in full. Moreover, the lenders that offered to loan the Debtors secured financing would not permit the Debtors to obtain any further funding that would result in a second mortgage. The Debtor obtained the assistance of an

---

[2] Annexed hereto as Exhibit C is a copy of the pay-off letter the Debtors received dated June 7, 2017. The pay-off letter requests legal fees and costs in the amount of $289,194.08. Annexed hereto as Exhibit D is a copy of the foreclosure judgment obtained by the mortgagee dated June 3, 2016. The foreclosure judgment awarded legal fees in the amount of $85,000 as of January 31, 2016. Annexed hereto as Exhibit E is a copy of a pay-off letter dated August 18, 2017, that seeks an increase in legal fees, from June to August, by $123,168.83 to $412,362.91. The Debtors reserve the right to seek a review of the reasonableness of the legal fees and costs sought. However, for this Motion, they have assumed full payment of all amounts sought by the Mortgagee.

old friend, Mohammad Choudhary ("Mohammad"), to obtain financing. Mohammad agreed to co-sign a first mortgage loan in the net amount of Three Million One Hundred Thousand Dollars ($3,100,000.00), and provide the Debtor with the remaining funds through (a) an unsecured loan in the amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) and (b) purchase a ten percent interest in the Building for Six Hundred Thousand Dollars ($600,000.00). These two sources of funding, subject to the Court's approval, will provide the Debtor with the funds needed to pay his creditors in full and emerge from bankruptcy court protection.

14. Significantly, the funds will available in no more than three weeks from the Court's approval of the Debtors' proposal. Mohammad's funds are already earmarked in two bank accounts. See Declaration of Mohammad Choudhary annexed as Exhibit F. The proposed lender, represented by ERG Capital Advisors ("ERG"), informs us that they can close on a loan in no more than three weeks from the entry of a court order permitting them to lend to the Debtors. Since the Bidding Procedures provides the successful bidder thirty (30) days to close on the purchase of the Building, the Debtors believe that their financing proposal will provide creditors with payment of their claims as quickly as a proposed sale. See copy of executed term sheet annexed as Exhibit G.[3]

D. The Emergent Nature of the Motion

15. As discussed in greater detail in Boysin Lorick's Declaration, the Debtors' believe that a sale at this time will result in a capital gains tax that will surpass the net proceeds of the Auction Sale. Although the qualified bidders have offered to pay more than the amount needed to pay the Mortgagee in full, the Debtors believe the sale will result in a significant capital gains

---

[3] A current term sheet is being prepared that contains Cynthia Lorick's signature, and increases the loan amount to $3,300,000.00.

tax that will render the estate administratively insolvent.

16.  Moreover, obtaining an unsecured loan under these circumstances was very difficult for the Debtors to achieve. Mohammad and his counsel simply did not agree to all of these terms until three days ago. Mohammad's counsel is preparing loan documents and a proposed agreement, and ERG's newly-retained bankruptcy counsel is preparing agreements for submission to the Court. At the time of this writing, the supporting agreements have simply not been completed, and the Debtors can not seek the Court's approval of the terms of this proposed financing until they are completed. For these reasons, the Debtors are forced to request that the Court adjourn the Auction Sale.

### RELIEF REQUESTED

17.  The Debtors' request that the Court enter an order, pursuant to 11 U.S.C. Section 105, that enforces that portion of the Sale Order that provides the Debtors the opportunity to obtain financing to pay their creditors in full. The Debtors request that the Court grant such relief on an ex parte basis. Alternatively, the Debtors request that the Court shorten the time to obtain such relief under Fed. R. Bankruptcy Proc. 9006(c), and conduct a hearing on the Motion before the Auction Sale scheduled for August 22, 2017, at 11:00 a.m..

18.  Although the Debtors did not obtain an order approving financing by August 22nd, it is respectfully submitted that the import of the Sales Order was to provide the Debtors with the opportunity to obtain financing so long as their request does not prejudice creditors and delay further their reorganization. Since the Debtors anticipate seeking the Court's approval on an expedited basis, as soon as the supporting agreements are completed, payment to the Mortgagee and creditors should not take longer than it would under a sale. Moreover, since the Debtors's request an adjournment – and not a cancellation – of the Auction Sale, the Mortgagee is ensured

of full payment if the adjourned sale must occur.

19.     There is no question that the Court has the authority to enforce and interpret the terms of the Sale Order.  E.g., Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009) (citing Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S. Ct. 695, 78 L. Ed. 1230 (1934); In re Motors Liquidation Co., 514 BR 377, 379, n. 7 (Bankr. S.D.N.Y. 2014) (citing numerous cases recognizing the courts' power to, among other things, enforce their orders). Moreover, the Court has the power to either grant the adjournment of the sale on an ex parte basis, or schedule a hearing before the sale occurs.

20.     The Debtors request that the Court grant their request to adjourn the sale on an ex parte basis for approximately two weeks.  The benefit of the relatively short adjournment to the unsecured creditors and the Debtors outweighs the inconvenience caused as a result of the delay.  For the reasons stated above, the Court should find that the possibility that the sale will render the estate administratively insolvent constitutes they type of irreparable harm warranting ex parte relief from the Court.

21.     Alternatively, the Court should shorten the time for a hearing on the Motion so that it is heard before the sale scheduled for August 22nd at 11:00 a.m.  Under Fed. Bankr. R. Proc. 9006(c)(1) and Local Rule 9006-1, the Court may shorten the time, for cause shown, for the notice period of the hearing on the Motion.  Within the exercise of its discretion under Bankruptcy Rule 9006(c)(1), a court must consider the prejudice that potentially would result to parties entitled to notice if a reduction is effected, and weigh this against the reasons for shortening this period. E.g., In re Kings Falls Power Corp., 185 B.R. 431, 441 (Bankr. N.D.N.Y. 1995) (allowing shortened notice period because resolution of motion was in the estate's best interests); In re Chateaugay Corp., 111 B.R. 399, 407–408 (Bankr. S.D.N.Y. 1990) (shortening

notice would not prejudice defendant).

22. Under these circumstances, ample cause exists to grant the ex parte relief requested or shorten the time for notice of the Motion. The Debtors's proposal, with the help of Mohammad and ERG, will enable them to pay their creditors in full and keep their interest in the Building. It will ensure that the primary goals of a successful reorganization – full payment to creditors and financial rehabilitation of the Debtors – will have been achieved in this case. The alternative – a sale and concomitant administrative insolvency – will not be in the best interests of the unsecured creditors of the estate.

23. No previous application for relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and grant such other and further relief as is just.

Dated: August 21, 2017
      Astoria, New York

>  */s/Norma E. Ortiz*
>  Norma E. Ortiz, Esq.
>  Martha de Jesus, Esq.
>  Ortiz & Ortiz, L.L.P.
>  32-72 Steinway Street, Ste. 402
>  Astoria, NY  11103
>  Tel. (718) 522-1117
>  *Counsel to the Debtors and Debtors-in-Possession*