ORTIZ & ORTIZ, L.L.P.
32-72 Steinway Street, Ste. 402
Astoria, New York  11103
Tel. (718) 522-1117
Fax (718) 596-1302
email@ortizandortiz.com
Norma E. Ortiz
Martha J. de Jesus
*Counsel to the Debtors and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

BOYSIN RALPH LORICK,                                    Case No.  16-45645 (NHL)
CYNTHIA THERESA LORICK,

                               Debtors.
-------------------------------------------------------X

## Report of Public Sale of the Real Property Known as 3126 Coney Island Avenue, Brooklyn, New York

       Norma E. Ortiz, a partner of Ortiz & Ortiz, L.L.P., counsel to the above-captioned Debtors and Debtors-in-Possession, hereby reports the following in connection with the sale of the Debtors' real property known as 3126 Coney Island Avenue, Brooklyn, New York (the "Property") that occurred on August 22, 2017:

    1.      Pursuant to court order entered on July 25, 2017 (Doc. No. 77), the Debtors' scheduled the public sale of the Property for August 22, 2017, at 11:00 a.m.

    2.      Pursuant to the Bidding Procedures approved the court, the Debtors' advertised the sale in the New York Times, and the websites known as Loopnet.com, Apartmentbuildings.com, and Craigslist.

    3.      Three bidders pre-qualified to serve as bidders for the sale, prior to August 22, 2017, by providing the Debtors with certified funds in the following amounts: $5,300,000, $5,200,000, and $5,200,000, and by providing proof of funding that appeared to demonstrate to the Debtor the ability to consummate the purchase the Property.  The names of the three qualified bidders are Soleyman Ghalchi, Jack Geula, and Leon Goldenberg.

1

4. Prior to the commencement of the Auction, Mohammad Choudhary asked the Debtor Boysin Lorick if he could be qualified to bid. Mohammad Choudhary tendered to the undersigned certified funds for $600,000, and provided proof of funds that demonstrated to the Debtor the ability to consummate the purchase of the Property. Mr. Lorick deemed Mr. Choudhary a qualified bidder.

5. All bidders, other than Jack Guela, were accompanied by legal counsel.

6. Prior to commencing the Auction, all bidders signed the Debtor's Terms of Sale, and were reminded that the inability to consummate a purchase would result in a forfeiture of the ten percent contract deposit.

7. The sale commenced on or about 11:15 a.m., and was recorded by a court reporter.

8. Prior to the commencement of the bidding, the Debtor Boysin Lorick requested that the undersigned state on the record that the Debtor acknowledged that the sale must proceed, as ordered by the Court, but he did not agree that the sale was in the best interests of the creditors of the estate.

9. Prior to the commencement of the bidding, counsel to the first lien-holder on the Property, Colin Bernardino, reserved the right to object to Mohammad Choudry's bid if he was not provided with Mr. Choudry's proof of funds to consummate a sale.

10. Counsel to Bidder Soleyman Ghalchi asked if Mohammad Choudhary was related to the Debtor. The Debtor represented that he had no familial relationship, and shared no business interests, with Mohammad Choudhary.

11. No further objections or comments were raised prior to the bidding.

12. The Debtors commenced the bidding at $5,300,000, and received 40 incremental bids.

13. The highest bid received by the Debtors was $7,400,000 from Mohammad Choudhary. Mr. Choudhary's address is 3076 Coney Island Ave, Brooklyn, New York. Mr. Choudhary has tendered $700,000 in certified funds to the Debtors, and has agreed to wire the remaining $40,000 of the deposit within 48 hours. A signed Memorandum of Sale executed by Mr. Choudhary is annexed hereto

14. Solyman Galchi was the second highest bidder, and is the back-up bidder under the Bidding Order. Mr. Galchi's second highest bid was $7,350,000. A signed Memorandum of Sale from Mr. Galchi is annexed hereto.

15.     Boysin Lorick attended the sale, but left before all matters were concluded. Cynthia Lorick did not attend the sale.

16.     The auction sale ended at approximately 12:30 p.m.

17.     The Debtors have not reviewed and qualified the first and second highest bids at the time of this writing.

I declare under the penalty of perjury that the foregoing is accurate and true to the best of my ability.

Dated: Astoria, New York
        August 22, 2017

                                        *S/Norma E. Ortiz*
                                        Norma E. Ortiz, Esq.
                                        ORTIZ & ORTIZ, L.L.P.
                                        3272 Steinway Street, Ste. 402
                                        Astoria, New York 11103
                                        Tel. (718) 522-1117

# Memorandum of Sale and Terms and Conditions of Mohammad Choudhary

## <u>MEMORANDUM OF SALE – SUCCESSFUL PURCHASER</u>

**Purchase Price Realized at Auction:** *$7,400,000*

The undersigned has on this 22nd day of August, 2017, agreed to purchase the property located at 3126
Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678   Lot: 59 (the
"Property") of Boysin and Cynthia Lorick as the Chapter 11 debtors and debtors-in-possession for the sum
of $ *7,400,000* DOLLARS and hereby promises and agrees to
comply with the annexed Terms and Conditions of Sale of the Property and this Memorandum of Sale.

_____          _____
SUCCESSFUL PURCHASER (Signature)          SUCCESSFUL PURCHASER (Signature)

*Mohammad Choudhary*
PRINT NAME                                 PRINT NAME

*3076 Coney Island Avenue*
ADDRESS                                    ADDRESS

*Brooklyn, NY 11235*
ADDRESS (City, State, Zip)                 ADDRESS (City, State, Zip)

*(718) 934-5000*
TELEPHONE NUMBER                           TELEPHONE NUMBER

*ppp Contracting@yahoo.com*
EMAIL ADDRESS                              EMAIL ADDRESS

Received from *Mohammad Choudhary* the sum of $ *700,000* DOLLARS,
as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price in the above sale was for the sum of $ *7,400,000* .

Received by: *Martha de Jesus, Esq.*

## <u>SUCCESSFUL PURCHASER ATTORNEY INFORMATION</u>

Name     *Jane Nadelson, Esq*

Address  *3024 Coney Island Avenue*

Phone    *718-934-8090*

## TERMS AND CONDITIONS OF SALE

**PURSUANT TO AN ORDER OF THE HONORABLE NANCY HERSHEY LORD, DATED JULY 25, 2017, THE PROPERTY OF THE DEBTORS, LOCATED AT 3126 CONEY ISLAND AVENUE, BROOKLYN, NEW YORK 11235, IS TO BE SOLD AT PUBLIC AUCTION.**

1.       On December 15, 2016, Boysin and Cynthia Lorick, the debtors and debtors-in-possession (the "Debtors"), filed a voluntary petition for relief under chapter 11 of Title 11, United States Code (the Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court"), under  case number 16-45645-NHL.  To date, no committee, trustee, or examiner has been appointed, and the Debtors continue to operate and manage their business and property as a debtors-in-possession under Bankruptcy Code §§ 1107(a) and 1108.

2.       These Terms and Conditions of Sale are promulgated in connection with the Court authorized Public Auction Sale (the "Auction") of the Debtors' real property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678 Lot: 59 (the "Property").  The Auction shall be conducted by the Debtors.

3.       The Debtors are represented by Ortiz and Ortiz, L.L.P., ("Ortiz"), with offices at 32-72 Steinway Street, Suite 402, Astoria, NY 11103.

4.       Subject to the conditions set forth below, the Auction will be held on August 22, 2017at 11:00 a.m.  (the "Sale Date") at the **U.S. Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York  11201, in Room 3554.**

5.       The Successful Purchaser (as hereinafter defined) of the Property, will, at the time and place of the conclusion of the Auction, sign a memorandum of sale (the "Memorandum of Sale") in accordance with these Terms and Conditions of Sale.

6.       In order to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver to Ortiz on or before **August 4, 2017** the following documents:  (1) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Interested Party has a bona fide interest in purchasing the Property; and (2) current financial statements or other information deemed reasonably acceptable to the Debtors demonstrating the financial wherewithal to consummate the purchase of the Property. The Debtors shall review the materials and determine whether an Interested Party qualifies to serve as a potential bidder ("Potential Bidder").

Any Potential Bidder who seeks be a Qualified Bidder must deliver written and electronic copies of the Required Bid Documents (as defined below) no later than 5:00 p.m. (Eastern Time) on **August 11, 2017**, or such later date to which the Debtors consent, but, in all events prior to the commencement of the Auction, (the "Bid Deadline") to Ortiz & Ortiz, LLP, 32-72 Steinway Street, Suite 402, Astoria, New York 11103.  Required Bid Documents consist of

(a)     Minimum Bid: Each Bid must be in writing and clearly set forth the purchase price to be paid (the "Purchase Price"). The Purchase Price must be in cash consideration and must equal or exceed Five Million Two Hundred Thousand Dollars ($5,200,000.00).

(b)     a signed statement that the bidder's offer is irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing of the Sale Transaction (the "Closing") to the extent the bidder is the Successful Bidder or Backup Bidder;

(c)     a cash deposit (via wire transfer or certified funds) to ORTIZ AND ORTIZ LLP, as Attorneys (the "Deposit Agent") the total sum equal to ten percent (10%) of such bidder's bid  or no less than Five Hundred and Twenty Thousand Dollars ($520,000.00) (the "Qualifying Deposit"); and

(d)     proof of financial ability to consummate the purchase of the Property.

The Debtors shall notify bidders whether they have been determined to be a Qualified Bidder no later than 1:00 p.m. (Eastern time) on **August 15, 2017**.

7.     If the Debtors receive more than one Qualified Bid, the Debtors shall conduct the Auction of the Property. The Debtors shall conduct the Auction in accordance with the Bidding Procedures approved by the Bankruptcy Court, and upon notice to all Qualified Bidders who have submitted Qualified Bids.

8.     The Auction for the Property will be conducted by Ortiz on **August 22, 2017, at the U.S. Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201, in Room** _____. Only representatives or agents of the Debtors and any Qualified Bidders that have submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction.  Only Qualified Bidders will be entitled to make any subsequent bids at the Auction. All bids must be made openly and in the presence of all parties at the Auction.

9.     At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid that the Debtors believe, in their reasonable discretion,  represents the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have informed the Debtors of their intent to participate in the Auction.

10.    If a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.  The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith; and (b) disclosed to each Qualified Bidder participating in the Auction.

11.     Bidding for Property at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round a Qualified Bidder(s) submits at least one subsequent bid that is no less than $50,000.00 above the immediately preceding highest or best bid.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid(s) that they believe to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid.  Prior to the conclusion of the Auction, the Debtors will (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction and the cost to the Debtors' estate; (b) identify the highest or otherwise best offer (the "Successful Bid"); (c) determine which Qualified Bid is the next highest or otherwise best offer or collection of offers (the "Backup Bid") for the Property; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the bidder whose bid was determined to the be the Successful Bid (the "Successful Bidder"), (ii) the amount and other material terms of the Successful Bid, and (iii) the identity of the party or parties that submitted the Backup Bid (the "Backup Bidder").

12.     The Qualifying Deposit shall serve as a partial good faith deposit against payment of the purchase price by such competing Bidder as the Debtors determine to have made the highest or best bid for the Property (the "Successful Purchaser").  Within 48 hours after conclusion of the Auction, the Successful Purchaser shall deliver to Ortiz, by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P, as Attorneys" or by wire in immediately available federal funds, an amount equal to 10% of the high bid realized at Auction minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit").  Failure of the Successful Purchaser to tender the 10% Deposit of the high bid at Auction within 48 hours after conclusion of the Auction shall result in an immediate default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale and shall result in the forfeiture of all earnest monies paid, including the Deposit.  The Successful Purchaser and the competing Bidder who the Debtors determine to have made the second highest or best bid for the Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by these Terms and Conditions of Sale and the Memorandum of Sale.  **At the conclusion of the Auction, Ortiz will return the Qualifying Deposits to all Bidders, except for the Successful Purchaser and the Second Highest Bidder.  The Second Highest Bidder's Qualifying Deposit shall be returned within five (5) business days following closing of the sale to Successful Purchaser.**

13.     The Successful Purchaser must pay the balance of the Purchase Price for the Property to Ortiz by certified check or bank check or by wire in immediately available federal funds.  The Successful Purchaser must close title to the Property at a date that is no more than thirty (30) days after the approval of the Auction by the Bankruptcy Court ("Court Approval Date"), **TIME BEING OF THE ESSENCE as to the Successful Purchaser,** although such date may be extended solely by the Attorney for the Debtors.  Notwithstanding the foregoing, Debtors shall grant the Successful Bidder a single thirty (30) day extension, at the request of the Successful Bidder, provided Successful Bidder posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the thirtieth (30th) day following court approval (the "Additional Deposit").  The Additional Deposit shall be made by certified check or bank check

made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit". If Successful Bidder elects for an extension, the Closing shall take place on or before the sixtieth (60th) day following court approval, **TIME BEING OF THE ESSENCE as to the Successful Bidder.** If Successful Purchaser elects to exercise the Extension, Successful Purchaser shall be responsible for all real estate taxes incurred from the 30th day after the Court Approval Date through closing and shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day after the Court Approval Date through to the actual day of closing.

14.     If the Successful Purchaser fails to post the total required ten (10%) percent Deposit within 48 hours following the Auction ("Successful Purchaser's Default"), the Debtors, in their sole and absolute discretion, may, within three (3) business days of Successful Purchaser's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the new Successful Purchaser (the "New Successful Purchaser"). The New Successful Purchaser shall not receive credit for any Deposit forfeited by the initial Successful Purchaser. The New Successful Purchaser must close title to the Property no later than forty five (45) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by Ortiz. Notwithstanding the foregoing, Ortiz shall grant the New Successful Purchaser a single thirty (30) day extension (the "New Successful Purchaser's Extension"), at the request of the New Successful Purchaser, provided the New Successful Purchaser posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the thirtieth (30th) day following receipt of notification of Successful Purchaser's Default (the "New Successful Purchaser's Additional Deposit"). The New Successful Purchaser's Additional Deposit shall be made by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit". If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the Closing shall take place on or before the seventy fifth (75th) day following receipt of notification of Successful Purchaser's Default, **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by the Debtors. If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the New Successful Purchaser shall be responsible for all real estate taxes incurred from the 45th day following receipt of notification of Successful Purchaser's Default through closing and shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 45th day following receipt of notification of Successful Purchaser's Default through to the actual day of closing.

15.     The closing shall take place at the offices of Ortiz and Ortiz, L.L.P., located at 32-72 Steinway Street, Suite 402, Astoria, NY 11103 (the "Closing").

16.     The Successful Purchaser, or the New Successful Purchaser, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other Property inspections; appraisals, reports and other costs of Property due diligence; and County, State, New York City, or other real property transfer, deed

4

or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Property from the Debtors at Closing. The Successful Purchaser acknowledges that they will be responsible for the completion of any ACRIS forms, if required. The Debtors shall not be required to execute any form of title affidavit (but may in their sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Purchaser, or the New Successful Purchaser, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms. In connection with the Closing and Closing date, the Successful Purchaser or the New Successful Purchaser, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Purchaser or the New Successful Purchaser, as the case may be, and the failure of the Successful Purchaser or the New Successful Purchaser, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing date, will result in an immediate forfeiture of the Deposit and the termination of the Successful Purchaser's or the New Successful Purchaser's, as the case may be, right to acquire the Property under these Terms and Conditions of Sale and the Memorandum of Sale**. The Successful Purchaser or the New Successful Purchaser, as the case may be, shall be obligated to close title to the Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Purchaser, or the New Successful Purchaser, as the case may be, to cancel or avoid its obligation under these Terms of and Conditions of Sale and the Memorandum of Sale other than the Debtors' inability to deliver insurable title to the Property. Further, the Successful Purchaser or the New Successful Purchaser, as the case may be, shall have demonstrated, to the satisfaction of Debtors and Ortiz, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale and the Memorandum of Sale, without delay. Ortiz reserves the right to reject any Purchaser or Bidder who the Debtors believe, in their sole discretion, is not financially capable of consummating the purchase of the Property. Expenses incurred by the Successful Purchaser, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall the Debtors be responsible for, or pay, such expenses.

17.    The Debtors have not retained the services of a real estate broker and are not responsible for any commissions with regards to this Auction.

18.    The Debtors and their professionals have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or this Auction, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including,

but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the current or future rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the property. Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. The Debtors shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtors or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtors unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms and Conditions of Sale and the Memorandum of Sale. **The Property shall not be delivered vacant of tenancies at Closing.**

19.    The Property is being sold **"AS IS" "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, and sale of the Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided, however, **the Property shall be delivered free and clear of any and all monetary liens.** By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. Neither the Debtors nor any of their collective representatives makes any representations or warrantees with respect to the permissible uses of the Property including, but not limited to, the zoning of the Property. All Bidders acknowledge that they have conducted their own due diligence in connection with the Property and are not relying on any information provided by the Debtors or their professionals. The Property will be sold subject to any and all violations requiring corrective action.

20.    The Successful Purchaser has five (5) days from the Court Approval Date to order title, copy of which shall promptly be provided to Ortiz. The Successful Purchaser has twenty (20) days from the Court Approval Date to advise Ortiz (by electronic mail to email@ortizandortiz.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Property. Failure of the Successful Purchaser to advise Ortiz within twenty (20) days from the Court Approval Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects,

with Ortiz reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

21. The Debtors shall convey the Property by delivery of a quitclaim deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. If the Successful Purchaser or the New Successful Purchaser, as the case may be, is unable to obtain title insurance, subject to the permissible exceptions contained herein, Debtors may, at their option, arrange for the issuance of a title insurance policy by such a company at the sole cost and expense of the Successful Purchaser, or the New Successful Purchaser, as the case may be.

22. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the "Bankruptcy Code" or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by Ortiz or by the Court. Ortiz reserves the right to modify these Terms and Conditions of Sale at the Auction or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

23. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Auction of the Property. By making a bid for the Property, all Purchasers will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

24. If the Debtors are unable to deliver the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, the Debtors' only obligation will be to refund the Deposit, without interest, to the Successful Purchaser and/or the New Successful Purchaser, as the case may be, and upon such refund, the Successful Purchaser or the New Successful Purchaser, as the case may be, and/or New Successful Purchaser will have no claim or recourse against the Debtors or their professionals and shall have no further rights under these Terms and Conditions of Sale or Memorandum of Sale.

25. The Auction of the Property is subject to further order of the Bankruptcy Court confirming the Auction.

26. Ortiz shall notify the Successful Purchaser whether the Auction is confirmed.

27. The Bankruptcy Court shall determine any disputes concerning the Auction of the Property. By participating in the Auction, all Purchasers consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtors' pending case.

I have read these Terms and Conditions of Sale and agree to be bound by them.
Dated:

By: _____

Print Name: Mohammad Choudhary , Purchaser

# Memorandum of Sale and Terms and Conditions of Soleyman Ghalchi

## MEMORANDUM OF SALE – SECOND HIGHEST BIDDER

**Purchase Price Realized at Auction**: $7,350,000

The undersigned has on this 22nd day of August, 2017, agreed to purchase the property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678  Lot: 59 (the "Property") of Boysin and Cynthia Lorick as the Chapter 11 debtors and debtors-in-possession for the sum of $ 7,350,000 _____ DOLLARS in the event of the Successful Purchaser's Default and if deemed by the Debtors, in their sole and absolute discretion, to hold all benefits and obligations of a Successful Purchaser under the Terms and Conditions of Sale and this Memorandum of Sale and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of said Property and this Memorandum of Sale.

_____    _____
SECOND HIGHEST BIDDER (Signature)    SECOND HIGHEST BIDDER (Signature)

Soleyman Ghalchi _____    _____
PRINT NAME                            PRINT NAME

███████████████████                  _____
ADDRESS                               ADDRESS

███████████████████                  _____
ADDRESS (City, State, Zip)            ADDRESS (City, State, Zip)

███████████████████                  _____
TELEPHONE NUMBER                      TELEPHONE NUMBER

███████████████████                  _____
EMAIL ADDRESS                         EMAIL ADDRESS
elie@aryehlaw.com

Received from ____ Soleyman Ghalchi ____ the sum of $ 520,000 ____ DOLLARS, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price for the 2nd Highest Bid in the above sale was for the sum of $ 7,350,000 _____.

_____
Received by: Martha de Jesus, Esq.

## SECOND HIGHEST BIDDER ATTORNEY INFORMATION

Name    Elazar Aryeh, P.C. _____

Address   110-20 71 Road, Ste. 110 Forest Hills, NY 11375

Phone   (718) 261-0210 _____

## TERMS AND CONDITIONS OF SALE

**PURSUANT TO AN ORDER OF THE HONORABLE NANCY HERSHEY LORD, DATED JULY 25, 2017, THE PROPERTY OF THE DEBTORS, LOCATED AT 3126 CONEY ISLAND AVENUE, BROOKLYN, NEW YORK 11235, IS TO BE SOLD AT PUBLIC AUCTION.**

1.      On December 15, 2016, Boysin and Cynthia Lorick, the debtors and debtors-in-possession (the "Debtors"), filed a voluntary petition for relief under chapter 11 of Title 11, United States Code (the Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Court"), under case number 16-45645-NHL. To date, no committee, trustee, or examiner has been appointed, and the Debtors continue to operate and manage their business and property as a debtors-in-possession under Bankruptcy Code §§ 1107(a) and 1108.

2.      These Terms and Conditions of Sale are promulgated in connection with the Court authorized Public Auction Sale (the "Auction") of the Debtors' real property located at 3126 Coney Island Avenue, Brooklyn, New York 11235 a/k/a Borough: Brooklyn  Block: 8678 Lot: 59 (the "Property"). The Auction shall be conducted by the Debtors.

3.      The Debtors are represented by Ortiz and Ortiz, L.L.P., ("Ortiz"), with offices at 32-72 Steinway Street, Suite 402, Astoria, NY 11103.

4.      Subject to the conditions set forth below, the Auction will be held on August 22, 2017at 11:00 a.m.  (the "Sale Date") at the **U.S. Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York  11201, in Room 3554.**

5.      The Successful Purchaser (as hereinafter defined) of the Property, will, at the time and place of the conclusion of the Auction, sign a memorandum of sale (the "Memorandum of Sale") in accordance with these Terms and Conditions of Sale.

6.      In order to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver to Ortiz on or before **August 4, 2017**  the following documents: (1) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Interested Party has a bona fide interest in purchasing the Property; and (2) current financial statements or other information deemed reasonably acceptable to the Debtors demonstrating the financial wherewithal to consummate the purchase of the Property. The Debtors shall review the materials and determine whether an Interested Party qualifies to serve as a potential bidder ("Potential Bidder").

Any Potential Bidder who seeks be a Qualified Bidder must deliver written and electronic copies of the Required Bid Documents (as defined below) no later than 5:00 p.m. (Eastern Time) on **August 11, 2017**, or such later date to which the Debtors consent, but, in all events prior to the commencement of the Auction, (the "Bid Deadline") to Ortiz & Ortiz, LLP, 32-72 Steinway Street, Suite 402, Astoria, New York 11103. Required Bid Documents consist of

(a)    Minimum Bid: Each Bid must be in writing and clearly set forth the purchase price to be paid (the "Purchase Price"). The Purchase Price must be in cash consideration and must equal or exceed Five Million Two Hundred Thousand Dollars ($5,200,000.00).

(b)    a signed statement that the bidder's offer is irrevocable until (a) the conclusion of the Auction to the extent the bidder is not the Successful Bidder or Backup Bidder, or (b) the closing of the Sale Transaction (the "Closing") to the extent the bidder is the Successful Bidder or Backup Bidder;

(c)    a cash deposit (via wire transfer or certified funds) to ORTIZ AND ORTIZ LLP, as Attorneys (the "Deposit Agent") the total sum equal to ten percent (10%) of such bidder's bid  or no less than Five Hundred and Twenty Thousand Dollars ($520,000.00) (the "Qualifying Deposit"); and

(d)    proof of financial ability to consummate the purchase of the Property.

The Debtors shall notify bidders whether they have been determined to be a Qualified Bidder no later than 1:00 p.m. (Eastern time) on **August 15, 2017**.

7.    If the Debtors receive more than one Qualified Bid, the Debtors shall conduct the Auction of the Property. The Debtors shall conduct the Auction in accordance with the Bidding Procedures approved by the Bankruptcy Court, and upon notice to all Qualified Bidders who have submitted Qualified Bids.

8.    The Auction for the Property will be conducted by Ortiz on **August 22, 2017, at the U.S. Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York 11201, in Room        **. Only representatives or agents of the Debtors and any Qualified Bidders that have submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction. Only Qualified Bidders will be entitled to make any subsequent bids at the Auction. All bids must be made openly and in the presence of all parties at the Auction.

9.    At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid that the Debtors believe, in their reasonable discretion,  represents the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have informed the Debtors of their intent to participate in the Auction.

10.    If a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.  The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith; and (b) disclosed to each Qualified Bidder participating in the Auction.

11.     Bidding for Property at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round a Qualified Bidder(s) submits at least one subsequent bid that is no less than $50,000.00 above the immediately preceding highest or best bid. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid(s) that they believe to be the highest or otherwise best offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid. Prior to the conclusion of the Auction, the Debtors will (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction and the cost to the Debtors' estate; (b) identify the highest or otherwise best offer (the "Successful Bid"); (c) determine which Qualified Bid is the next highest or otherwise best offer or collection of offers (the "Backup Bid") for the Property; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of (i) the identity of the bidder whose bid was determined to the be the Successful Bid (the "Successful Bidder"), (ii) the amount and other material terms of the Successful Bid, and (iii) the identity of the party or parties that submitted the Backup Bid (the "Backup Bidder").

12.     The Qualifying Deposit shall serve as a partial good faith deposit against payment of the purchase price by such competing Bidder as the Debtors determine to have made the highest or best bid for the Property (the "Successful Purchaser"). Within 48 hours after conclusion of the Auction, the Successful Purchaser shall deliver to Ortiz, by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P, as Attorneys" or by wire in immediately available federal funds, an amount equal to 10% of the high bid realized at Auction minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"). Failure of the Successful Purchaser to tender the 10% Deposit of the high bid at Auction within 48 hours after conclusion of the Auction shall result in an immediate default under the terms of these Terms and Conditions of Sale and the Memorandum of Sale and shall result in the forfeiture of all earnest monies paid, including the Deposit. The Successful Purchaser and the competing Bidder who the Debtors determine to have made the second highest or best bid for the Property (the "Second Highest Bidder") must execute, and thereby agree to be bound by these Terms and Conditions of Sale and the Memorandum of Sale. **At the conclusion of the Auction, Ortiz will return the Qualifying Deposits to all Bidders, except for the Successful Purchaser and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within five (5) business days following closing of the sale to Successful Purchaser.**

13.     The Successful Purchaser must pay the balance of the Purchase Price for the Property to Ortiz by certified check or bank check or by wire in immediately available federal funds. The Successful Purchaser must close title to the Property at a date that is no more than thirty (30) days after the approval of the Auction by the Bankruptcy Court ("Court Approval Date"), **TIME BEING OF THE ESSENCE as to the Successful Purchaser,** although such date may be extended solely by the Attorney for the Debtors. Notwithstanding the foregoing, Debtors shall grant the Successful Bidder a single thirty (30) day extension, at the request of the Successful Bidder, provided Successful Bidder posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the thirtieth (30th) day following court approval (the "Additional Deposit"). The Additional Deposit shall be made by certified check or bank check

3

made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit". If Successful Bidder elects for an extension, the Closing shall take place on or before the sixtieth (60th) day following court approval, **TIME BEING OF THE ESSENCE as to the Successful Bidder.** If Successful Purchaser elects to exercise the Extension, Successful Purchaser shall be responsible for all real estate taxes incurred from the 30th day after the Court Approval Date through closing and shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day after the Court Approval Date through to the actual day of closing.

14.    If the Successful Purchaser fails to post the total required ten (10%) percent Deposit within 48 hours following the Auction ("Successful Purchaser's Default"), the Debtors, in their sole and absolute discretion, may, within three (3) business days of Successful Purchaser's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the new Successful Purchaser (the "New Successful Purchaser"). The New Successful Purchaser shall not receive credit for any Deposit forfeited by the initial Successful Purchaser. The New Successful Purchaser must close title to the Property no later than forty five (45) days following receipt of written notice to the New Successful Purchaser of Successful Purchaser's Default (the "New Successful Purchaser's Closing"), **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by Ortiz. Notwithstanding the foregoing, Ortiz shall grant the New Successful Purchaser a single thirty (30) day extension (the "New Successful Purchaser's Extension"), at the request of the New Successful Purchaser, provided the New Successful Purchaser posts an additional, non-refundable deposit equal to ten (10%) percent of the Purchase Price prior to the thirtieth (30th) day following receipt of notification of Successful Purchaser's Default (the "New Successful Purchaser's Additional Deposit"). The New Successful Purchaser's Additional Deposit shall be made by certified check or bank check made payable to "ORTIZ & ORTIZ L.L.P., as Attorneys" or by wire in immediately available federal funds and, together with the original Deposit, shall be deemed the "Deposit". If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the Closing shall take place on or before the seventy fifth (75th) day following receipt of notification of Successful Purchaser's Default, **TIME BEING OF THE ESSENCE as to the New Successful Purchaser,** although such date may be extended solely by the Debtors. If the New Successful Purchaser elects to exercise the New Successful Purchaser's Extension, the New Successful Purchaser shall be responsible for all real estate taxes incurred from the 45th day following receipt of notification of Successful Purchaser's Default through closing and shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 45th day following receipt of notification of Successful Purchaser's Default through to the actual day of closing.

15.    The closing shall take place at the offices of Ortiz and Ortiz, L.L.P., located at 32-72 Steinway Street, Suite 402, Astoria, NY 11103 (the "Closing").

16.    The Successful Purchaser, or the New Successful Purchaser, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other Property inspections; appraisals, reports and other costs of Property due diligence; and County, State, New York City, or other real property transfer, deed

or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Property from the Debtors at Closing. The Successful Purchaser acknowledges that they will be responsible for the completion of any ACRIS forms, if required. The Debtors shall not be required to execute any form of title affidavit (but may in their sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Purchaser, or the New Successful Purchaser, as the case may be, acknowledges that it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms. In connection with the Closing and Closing date, the Successful Purchaser or the New Successful Purchaser, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Purchaser or the New Successful Purchaser, as the case may be, and the failure of the Successful Purchaser or the New Successful Purchaser, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing date, will result in an immediate forfeiture of the Deposit and the termination of the Successful Purchaser's or the New Successful Purchaser's, as the case may be, right to acquire the Property under these Terms and Conditions of Sale and the Memorandum of Sale**. The Successful Purchaser or the New Successful Purchaser, as the case may be, shall be obligated to close title to the Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Purchaser, or the New Successful Purchaser, as the case may be, to cancel or avoid its obligation under these Terms of and Conditions of Sale and the Memorandum of Sale other than the Debtors' inability to deliver insurable title to the Property. Further, the Successful Purchaser or the New Successful Purchaser, as the case may be, shall have demonstrated, to the satisfaction of Debtors and Ortiz, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale and the Memorandum of Sale, without delay. Ortiz reserves the right to reject any Purchaser or Bidder who the Debtors believe, in their sole discretion, is not financially capable of consummating the purchase of the Property. Expenses incurred by the Successful Purchaser, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall the Debtors be responsible for, or pay, such expenses.

17.    The Debtors have not retained the services of a real estate broker and are not responsible for any commissions with regards to this Auction.

18.    The Debtors and their professionals have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or this Auction, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including,

but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the current or future rents, other operating incomes or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the property. Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. The Debtors shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtors or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtors unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms and Conditions of Sale and the Memorandum of Sale. **The Property shall <u>not</u> be delivered vacant of tenancies at Closing.**

19.    The Property is being sold **"AS IS" "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, and sale of the Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided, however, **the Property shall be delivered free and clear of any and all monetary liens.** By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. Neither the Debtors nor any of their collective representatives makes any representations or warrantees with respect to the permissible uses of the Property including, but not limited to, the zoning of the Property. All Bidders acknowledge that they have conducted their own due diligence in connection with the Property and are not relying on any information provided by the Debtors or their professionals. The Property will be sold subject to any and all violations requiring corrective action.

20.    The Successful Purchaser has five (5) days from the Court Approval Date to order title, copy of which shall promptly be provided to Ortiz. The Successful Purchaser has twenty (20) days from the Court Approval Date to advise Ortiz (by electronic mail to email@ortizandortiz.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Property. Failure of the Successful Purchaser to advise Ortiz within twenty (20) days from the Court Approval Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects,

with Ortiz reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

21.  The Debtors shall convey the Property by delivery of a quitclaim deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. If the Successful Purchaser or the New Successful Purchaser, as the case may be, is unable to obtain title insurance, subject to the permissible exceptions contained herein, Debtors may, at their option, arrange for the issuance of a title insurance policy by such a company at the sole cost and expense of the Successful Purchaser, or the New Successful Purchaser, as the case may be.

22.  Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the "Bankruptcy Code" or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by Ortiz or by the Court. Ortiz reserves the right to modify these Terms and Conditions of Sale at the Auction or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

23.  These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Auction of the Property. By making a bid for the Property, all Purchasers will be deemed to have acknowledged having read and understood these Terms and Conditions of Sale and have agreed to be bound by them.

24.  If the Debtors are unable to deliver the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, the Debtors' only obligation will be to refund the Deposit, without interest, to the Successful Purchaser and/or the New Successful Purchaser, as the case may be, and upon such refund, the Successful Purchaser or the New Successful Purchaser, as the case may be, and/or New Successful Purchaser will have no claim or recourse against the Debtors or their professionals and shall have no further rights under these Terms and Conditions of Sale or Memorandum of Sale.

25.  The Auction of the Property is subject to further order of the Bankruptcy Court confirming the Auction.

26.  Ortiz shall notify the Successful Purchaser whether the Auction is confirmed.

27.  The Bankruptcy Court shall determine any disputes concerning the Auction of the Property. By participating in the Auction, all Purchasers consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtors' pending case.

I have read these Terms and Conditions of Sale and agree to be bound by them.
Dated:

By: _____

Print Name: _____, Purchaser

SOLEYMAN  GHALCHI