```
                    DAHIYA LAW OFFICES LLC
```
*Attorneys*

```
                    75 Maiden Lane Suite 506
                     New York, New York 10013
                Tel: 212-766 8000   Fax: 212 766 8001
                         karam@legalpundit.com
```

November 1, 2017

Hon. Nancy H. Lord
Bankruptcy Judge
United States Bankruptcy Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York

    *Re Chapter 11 of :* BOYSIN RALPH LORICK, CYNTHIA THERESA LORICK (DEBTORS)
    **16-45645-nhl**

Dear Judge Lord:

    I am the proposed counsel of the debtors and writing out of grave concerns. The continued administration of this Chapter 11 is perilous for the debtors and does not bode well for anyone, barring of course, the alleged secured creditor. I am not writing this to accuse anyone of anything at this juncture but sharing something with the Court which is still able to control the proceeding or dismiss it in the best interest of the parties. This Chapter 11 is not only about one creditor, it is about other parties too and predominantly concerning retired couple the debtors. The case should be dismissed or suspended forthwith until basic issues are not resolved.

**On the Issue of Real Property Sale**

    Debtors own real property, 3126 Coney Island Avenue, Brooklyn New York 11235 ("Property"). It was auctioned on August 22, 2017. The highest bid was $7.4million, however, for reasons unclear, the second bidder was granted the bid at 7.350 million. Based on the basis of the property and its treatment in the past in tax returns, etc., the consequences of this sale are fatal. It is a train wreck. I have looked at the debtors returns for the year 2014 and 15—saw the depreciation and basis (IRC) continued in these two returns. Debtors have not filed 2016 returns. They claim that they have not been advised to do so.

This property is a capital asset. Internal Revenue Code, Section 1221 provides that a capital asset is "property held by the taxpayer (whether or not connected with his trade or business). Because of the low acquisition cost of the property and its high value sale along with the depreciation deductions taken, it would be a formidable task to meet the tax obligations by the debtors or the estate. The basis/tax basis/cost basis for real estate is its acquisition cost, I.R.C. § 1012. Debtors' taxes of 2015 shows a total basis of $1,089,560. This basis further is adjusted by capital improvements increasing the basis and depreciation deduction decreasing the basis, thus the adjusted basis of property is generally its cost, adjusted as provided in section 1016. Secs. 1011 and 1012. Debtors have made improvements to the property which increased the basis. IRC 1016(a)(1). If the debtors file 2016 tax returns, it would further add the depreciation deduction. Based on the year, 2015, suppose the property is sold in 2015 during this time of the year, the cumulative depreciation deductions would be around $715,655. This depreciation deduction is determined by reference to the adjusted basis of the property, the applicable depreciation method, the applicable recovery period, and the applicable convention. Secs. 167(c)(1), 168; *Hosp. Corp. of Am. v. Commissioner,* 109 T.C. 21, 45, 1997 WL 412127 (1997). I not giving any opinion as to the proprietary and or the manner of the deduction in the past, however based on what has been filed in the year 2104 and 15, it is easy to discern the numbers.

Pursuant to IRC §1001(a), gain is computed from the sale or disposition of property by determining the amount realized minus the adjusted basis and the current capital gains tax is 20%. Since the property is sold for more than its depreciated value (the adjusted basis less all depreciation claimed during ownership ), debtors will now additionally have to pay depreciation recapture tax at a 25% maximum rate, on the difference between the building's depreciated value and its adjusted basis." (See IRC §§ 1(h)(1)(E); 1250). I have attempted to make a rough calculation of what the debtor and or the estate will confront.

The adjusted basis is $373,905. The "adjusted basis" of a property is its original cost basis after certain tax-allowed adjustments. (See IRC § 1016).

*Total Basis in the aforesaid property and based on tax returns:* $1,089,560

*Cumulative Depreciation of mid-year sale of 2015*: $715,655

*Adjusted Basis:* $373,905

*Total Capital Gain*

>*Sale Price minus Adjusted Basis:*
>
>$7,350,000-$373,905
>
>*Equals:* $6,976,095

The following taxes will have to be paid:

1. Capital Gain Tax at 20%
2. Depreciation Deduction at 25%
3. Net Investment Tax imposed by section 1411 at 3.8%
4. New York State, Local and or City: 12.7%
5. See the issue of Transfer tax at 2.625% of the sale price


1. Capital Gain
    20% of

    > 7,350,000
    > 1,089,560
    > ———
    > 6,260,440   20% of this equals: **1,252,088**

2. Depreciation Deduction

    25% of 715,655 (total depreciation taken until mid 2015) equals **178,913.75**

3. Net Investment Income Tax (this income includes capital gains)

    3.8$ of 7,350,000 minus 373,905
    Equals:  6, 976,095 x 3.8% equals **265,091.61**

4. New York State and local taxes:

    12.7%[1] of total capital gain

    6,976,095 x 12.7% equals **885,964.06**

Total:   1,252,088.00
         178,913.75

---

[1] Even if we go by minimum 8.88%, end result is in minus..

    265,091.61
    885,964.06
_____
    $2,582,057.42

One is looking at approximately a tax liability of $2,582,057.42 upon this sale at $7,350,000.

Now also, there is an additional tax of 2.625% of the sale price as this is a transfer of real property above $25,000, i.e. $192,937.50. So the total shall be 2,774,994.92. The property is sold in bankruptcy, but not pursuant to a chapter 11 plan, hence this transfer tax has to be paid. Bankruptcy Code § 1146(c) provides that "the issuance, transfer, or exchange of a security or the making or delivery of an instrument of transfer under a plan confirmed under may not be taxed under any law imposing a stamp or a similar tax." So here the property is being sold pursuant to 11 U.S.C. § 363. Also, somehow if this sale could be dovetailed with a chapter 11 plan, it could still be exempted, but the transfer should be "necessary to the consummation of the plan." *City of New York v. Jacoby-Bender*, 758 F.2d 840 (2nd Cir. 1985. But See *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 128 S. Ct. 2326, 171 L.Ed.2d 203 (2008) (Section 1146 of the Bankruptcy Code does not apply to asset sales outside of a confirmed plan).

So now, if we add into calculation the money to be paid to the secured creditor, who are claiming at least 5.1 million. So the calculation would look like this:

Sale price 7,350,000 minus 5,100,000 equals 2,250,000. But with the tax liability of minimum 2,582,057.42 one will never be able to close. Also the transfer tax issue, so 2,774,994.92 where will the rest of the money come from? I do not any feasibility. There has to be a "sound business purpose" or a "sound business justification" for this sale here. See *Committee of Equity Security Holders v. Lionel Corp.,* 722 F.2d 1063 (2nd Cir. 1983). There was no justification.

So this Chapter 11 process is futile. Why? If one looks at the structure of the bankruptcy code. Upon the creation of the bankruptcy estate, the trustee or debtor in possession becomes liable to pay any federal and state income tax due on the bankruptcy estate's taxable income (see, e.g., *Holywell Corporation v. Smith*, 503 U.S. 47, 52 (1992) (citing Sec. 6151(a) of the Internal Revenue Code, which provides, in relevant part, "[W]hen a return of tax is required . . . the person required to make such return shall . . . pay such tax."). IRC § 6012(4) states that "[returns] of an estate, a trust, or an estate of an individual under chapter 7 or 11 of title 11 of the United States

Code shall be made by the fiduciary thereof." See 11 U.S.C. § 1106 (duty to file taxes). See also, 11 U.S.C.§ 346(a)(imposing similar duties regarding state and local taxes). . Section 6672(a) of Revenue Code imposes penalty for nonpayment of taxes.

It is also clear that where the debtors and bankruptcy estate are separate entities, as here they are required to filing separate returns—the estate with Form 1041 and individual with form 1040. These debtors were supposed to be filing their returns, this has not happened as they tell theat they were not advised.

The sale of this property resulted in the gain and gross income of the estate includes all income received or accrued by the estate and the gross income of the debtor which estate is entitled under title 11. IRC § 1398(e)(1). The tax liability is a responsibility of the estate as an administrative expense. See 11 U.S.C. § 503(b)(1)(B)(i). For a chapter 11 plan to be confirmed, the administrative claims have to be paid in full. See § 1129. The allowed secured claims would be paid in full followed by the taxes. 11 U.S.C. section 507(a)(2) addresses ''administrative expense'' and refers to 11 U.S.C. section 503(b). 11 U.S.C. section 503(b)(1)(B)(i) contains the ''incurred by the estate'' language in question. So there would be no monies left to pay full income taxes incurred by the estate and there would be nothing for any other administrative fees claims. Also, if the case is converted to 7, that would be disaster for the debtors, they will lose whatever else they have with them. If the case is dismissed with the property having been sold by the estate, the debtors life would be destroyed—where will they get the money to pay all the taxes? If monies meant to pay taxes is used to pay the professional fees and then the case is dismissed. With the impact coming on the debtors, the payment paid in the bankruptcy before the dismissal would seriously run afoul of the *Takings Clause*.

I have looked at your docket, there is no planning or a thoughtful process to achieve the fruitful end. The alleged creditor has hijacked the process of bankruptcy. It seems it is about paying the sole creditor, without balancing competing interests.

We are very concerned Your Honor, with the way this Case has morphed into a liquidation proceeding at the cost of perilous end for the debtors. I will be happy if I am found to be erroneous in my impressions. I am ready to learn. But if we can prevent something, we must prevent it. My client might have the benefit of the lawyer, Ms. Norma Ortiz, but the debtors have discharged her and they have lost confidence in her. They must be given a chance to speak, it is about due process.

Technicalities cannot rise to the level to obfuscate basic due process rights. The stakes are high here—loss of property and draconian tax issues. And the rules and powers of the bankruptcy are not higher than the constitutional due process protection. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) (The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."). We are talking about the rights of the debtors regarding their properties. Clearly the process due for relinquishment of "property" is determined by constitutional standards. See *Fuentes v. Shevin,* 407 U.S. 67 (1972). Thus, the process due for deprivation of the property interest must have its roots in substantive constitutional doctrine and is not derived from the will of the parties or from provisions of positive law enacted in advance by the legislature. It is the Court, guided by the constitution to determine the balance between the competing property interest of creditors and debtors in terms of the process due to resolve a controversy between them. Saying that the Bankruptcy Code says that is not enough. See *Cleveland Bd. Of Educ. V. Loudermill,* 470 U.S. 532 (1985). What process is due? The debtors needs to be heard. They should be allowed to speak. The present counsel Ms. Ortiz does not reflect their voice. It is the property rights of the debtors and they want to speak about it. This right is not conferred by the by the legislative grace or by having attorney speak through section 327 appointment, but by a constitutional guarantee. *Arnett v. Kennedy*, 416 U.S 134, 167 (1974). This Court is stuck with the fact that the present attorney, Ms. Ortiz has been approved by the court and was the attorney engaged by the debtors. And the undersigned cannot be allowed to speak. This approach must be rejected. "The very nature of due process negates any concept of inflexible procedures applicable to every imaginable situation." *Cafeteria and Restaurant Workers Union, Local 473 V. McElroy*, 367 U.S. 886, 895 (1961). Indeed the Supreme Court has emphasized that the procedures needed to minimize error and to reduce the dangers of arbitrary action to an acceptable level vary "according to specific factual contexts*,"* *Hannah v. Larche*, 363 U.S. 420, 442 (1960) since "not all situation calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The debtors interest and the attendant harm on the cannot be underestimated. It must be considered,

> [O]our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: *First,* the private interest that will be affected by the official action; *second,* the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally,* the

> Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).  It is the question of the property of the debtors and the draconian tax liability. The debtors must be allowed to speak here.  They have no voice here when the property is being liquidated. Here the bankruptcy law advocates or the secured creditor might call for expediency and or efficiency, but procedural due process is not intended to promote efficiency." *Fuentes v. Shevin,* 407 U.S. 67, 90 n.22 (1972). "To minimize substantially unfair or mistaken deprivation," we must pause here and do a process calculation on the consequences which shall flow from this sale of the property.  And of course, the debtors should be allowed to speak even if the undersigned is not allowed to speak as a proposed counsel. It is no doubt unfair to give more credence to a section 327 process of appointment and not give weightage to basic rudimentary aspects of due process.  We are very concerned.

Respectfully Your Honor, this sale should be cancelled based on my impression of the numbers and the law. I also feel that the debtors have been erroneously deprived of their property rights.  And even if they are deprived for whatever reason, the result is disastrous for them.

Wherefore, all proceeding in this case should be suspended if the Court is not inclined to dismiss this case.

/s/karamvir Dahiya