**United States Bankruptcy Court**
**Eastern District of New York**
-------------------------------------------------X   Case No.  16-45645 (NHL)
In Re:

     Boysin Ralph Lorrick
     Cynthia  Theresa Lorick

                   Debtors.
-------------------------------------------------X

### Affidavit against Bernardino and Kilpatrick fees application or any other relief including their Client, Wells Fargo Proof of Claim

State of New York    )
                 )SS:
County of New York:  )

I, Bosyin Ralph Lorrick under the penalty of perjury state the following in opposition to the fees application by Colin Bernardino with his law firm Kilpatrick and also regarding claim of Wells Fargo:

1.  I am the debtor here in this case with my wife, Cynthia Lorick.  The fees application has been filed by Bernardino, as if this is a loot.  This is court of law as my lawyer, Karamvir Dahiya tells me. And it has to be respected and approached in that manner.

2.  I have been provided a sheet by my lawyer, Mr. Dahiya which talks about their numbers.  They want to be paid very and very well.  When I am still questing for justice, they want to move away with their killing.  Yes, they do have judgment from the state court.  But how far are they allowed to hide behind that judgment.

3.  This law firm is responsible for taking away my property by unlawful means.  They started a foreclosure in violation of the very contract they are propounding.

4.    I had a contract with independent bank for the purchase of 3216 Coney Island Avenue, Brooklyn, New York 11235.

1

5.      I bought this property in 1985 and I refinanced the property in 2005 with Independent Bank

that ended up merging with Sovereign bank. It was a seven year loan with 5 year option to extend.

I am attaching a copy of the broker statement showing 7+5 years terms.

6.      The loan document says,

> You shall have one option to extend the maturity of the Loan for a period of five
> years, provided on conditions precedent to the exercise of such option, the loan is
> maintained on a current basis and you (a) give us written notice, sixty (60) days
> prior to the original maturity date and (b) at the time such notice if give you, you
> simultaneously pay to us a sum equal to 1% (one percent) of the then unpaid
> principal balance of the Loan as non-refundable extension fees. Upon the giving
> of such notice and the payment of such fees the Loan shall be automatically
> extended for a five (5) year prior period and interest during such extension period
> will be computed at a rate equal to the Five Year Fixed Advance Rate of the
> Federal Home Loan Bank of New York as of a date sixty days to to the
> commencement of such extension, plus 200 basis points, but in any even not less
> than the interest Rate. During such extended term, the constant monthly payments
> shall be adjusted to reflect the change in the interest Rate and shall include a 1%
> (one percent) per annum amortization factor.

Attached is the page of that loan document. I was current when the five years expired. I did send

them a 60 days' notice prior to the original maturity date. As a follow up, I spoke to one Amy

Gilbert, the loan servicing lady regarding my loan. I had $25,000 in escrow with them and she told

me that she would apply that money towards 1%. And the loan would be extended. I was assured

that my loan maturity is extended.

7.      After the extension given, early October 2012, Water Stone Asset Management and Wells

Fargo for the first time came into the picture. They wrote a letter to me. Much to my shock, they

demanded that I pay the entire sum at once. I still kept paying the regular mortgage payments after

the extension. The bank kept taking the money. I called and spoke to one Sumit Jain. I had

discussion with him. He said that he was going to follow the loan document. I made regular

payments after the extension. Attached is sheet reflecting the check numbers and the checks. Sumit

Jain called in between said that d he would keep my payments in the escrow account. And with impunity that conducted the foreclosure. They breached the agreement.

8.      I did not have the benefits of a good lawyer.  However, now I will proceed against this foreclosing bank. They committed a fraud on the state court by misleading facts and creating paperwork which were false in order to achieve a result.  I have retained my claims and I shall exercise them now.

9.      I understand that Barnardino and his law firm have a judgment in the state court.  But I have yet to have my claims against them decided. The bank breached the agreement. It is a claim that I have not waived.  Mr. Dahiya tells me that New York state is a permissive counterclaim. I didn't have to bring my counterclaims in the state action or at the same time when the bank brought its claim. I am not looking to set aside the state court judgment. But I am looking for claim of damages against Wells Fargo, Sumit Jain, Water Stone Asset Management, Bernardino and Kilpatric. Sumit Jain under perjury made a statement in the state court filed affidavit—"By Notice of Default and Demand for Payment dated October, 26, 2012 (the "Notice"), Trustee, though its counsel, notified Borrowers, among others, of the Default and demanded payment within fifteen (15) days of the date of the Notice, no part of which has been paid despite demanded." See Attachment. That is a fraudulent statement. Judgement was obtained with fraud and filing false statements. It is an offense of racketeering, where Mr. Jain, Water Stone Asset Management, their attorneys including Kilpatric Townsend is involved.  Despite not being given the extension, I arranged for the payment of the entire principal. However, they wanted all monies with their attorney's fees. It is the attorney's fees which amounted to approximately $500,000. Kilpatrick was the engine driving this foreclosure, talks and they wanted it all. But they buried my entitlements.

3

We are preparing a lawsuit. How they have destroyed me and my family. I understand, all things must come to an end. But not without justice. Where is my justice and payment on my claim for breach of contract and racketeering claim. So they are not entitled to any money disbursement from this case.

10.     Also, to bring to your attention, Your Honor are other facts. If this building had been sold to right and the top bidder Mr. Mohammed Choudhry. I would have gained more benefits. There would not have been litigation to this level, they are claiming fees upon fees because of their own doings. Mr. Choudhry was not acceptable because he was a Muslim! Incredible. I stated the same thing in the open court that Mr. Choudhry did not get the building, he was discriminated because he was a Muslim. You could see the transcript. Mr. Barnadino asked the court to strike my testimony. But the fact remains that Mr. Choudhry is a victim of discrimination by Mr. Barnardino and his law firm. So, after the auction time, no fees should come at all to Barnadino and his law firm.

Your Honor, I hope you will look why we are here today. Mr. Barnardino had the highest bidder removed, even the second bidder was complaining of the illegal auction and now lawsuits by the second bidder—who is going to be responsible for all these expenses. Bernardino set in motion the entire litigation and caused excessive damage and expenses.

I oppose their filed Proof of Claim and also oppose their attorney's fees claim.

Dated:  December 11, 2017
New York NY

Boysin Lorick

Sworn to before me this day of

Notary Public

KARAMVIR DAHIYA
Notary Public, State of New York
No. 02DA6056365
Qualified in New York County
Commission Expires Sept. 22, 2018

2.  Prohibition against the sale or transfer of the Borrower's fee or leasehold interest in the Premises to include, but not by way of limitation, an installment sales contract, a lease with an option to buy, a lease with a term in excess of three (3) years including renewal terms and the creation of any other lien or encumbrance involving a transfer of rights of occupancy and any change in the interests of the principals of the Borrower as shareholders, partners and/or members, as well as any change in the management of the Premises in place at the closing of the Loan.

3.  Prohibition against secondary financing of the fee or financing of the leasehold estate in the absence of the Bank's prior written consent.

4.  Assignment of all leases, space leases, rents, profits and security deposits, including restrictions on the Borrower as to the cancellation or modification of the leases and prepayments of rent.

5.  Payment by Borrower, upon the occurrence of any default, of default interest in lieu of the interest Rate otherwise applicable, which default interest shall be the lower of 16% or the highest rate than permissible under existing law.

6.  Removal of and correction of conditions relating to asbestos, asbestos-containing and other hazardous materials and conditions (including without limitation lead based paint, mold, radon and oil storage tanks) located in or upon or occurring at the Premises. The Borrower must personally indemnify and hold the Bank harmless with respect to such matters and materials and the performance of all obligations in connection therewith, such indemnity to survive repayment and maturity of the Loan.

7.  Payment of a late charge of five (5%) percent for each $1.00 of each and every payment of principal, interest and any monthly accruals not received within fifteen (15) days from the due date.

8.  A prepayment premium as provided herein shall be payable upon any prepayment of principal, voluntary or involuntary, including but not limited to any payment of principal prior to the scheduled maturity date or following acceleration of the Loan.  Voluntary prepayment of less than the entire principal balance shall not be permitted.

Upon prepayment of the entire balance of principal commencing in the first year of the Term, you must pay a premium of 5% if prepaid in the first year of the Term, 4% if prepaid in the second year of the Term, 3% if prepaid in the third year of the Term, 2% if prepaid in the fourth or the fifth years of the Term, and 1% if prepaid in the sixth or the seventh years of the Term.  Prepayment may be made within ninety (90) days prior to the seventh anniversary of the Loan without premium.  If the Loan Term is extended as below provided, the premium shall be in an amount equal to 5% if prepaid in the eighth year of the Term reducing 1% per year thereafter.  Notwithstanding the above, prepayment may be made within ninety (90) days prior to the twelfth anniversary of the Loan without premium. You will be required to provide us with thirty (30) days' prior written notice of any voluntary prepayment

9.  You shall have one option to extend the maturity of the Loan for a period of five years, provided that as conditions precedent to the exercise of such option, the Loan is maintained on a current basis and you (a) give us written notice sixty (60) days prior to the original maturity date, and (b) at the time such notice is given by you, you simultaneously pay to us a sum equal to 1% (one percent) of the then unpaid principal balance of the Loan as a non-refundable extension fee.  Upon the giving of such notice and the payment of such fee the Loan shall be automatically extended for a five (5) year period and interest during such extension period will be computed at a rate equal to the Five Year Fixed Advance Rate of the Federal Home Loan Bank of New York as of a date sixty days prior to the commencement of such extension, plus 200 basis points, but in any event not less than the Interest Rate.  During such extended term, the constant monthly payments shall be adjusted to reflect the change in the Interest Rate and shall include a 1% (one percent) per annum amortization factor.

M

## DEFAULT BY BORROWERS

15.    Borrowers defaulted on their obligations under the Consolidated Note and Consolidated Mortgage by, _inter alia_, failing to pay the Loan in full on the Maturity Date (the "Default").

16.    By Notice of Default and Demand for Payment dated October 26, 2012 (the "Notice"), Trustee, through its counsel, notified Borrowers, among others, of the Default and demanded payment within fifteen (15) days of the date of the Notice, no part of which has been paid despite demand. _Mortgage continue to Pay —_

17.    Borrowers nonetheless failed to cure the Default. As a result, Trustee commenced this action.

18.    As a result of the foregoing, there is now due and owing by Borrowers to Trustee, pursuant to the Consolidated Note and Consolidated Mortgage, the unpaid principal in the amount of $1,992,410.85, accrued and unpaid interest at the rates set forth in the Consolidated Note through and including July 14, 2013 in the amount of $260,203.32, accrued and unpaid late charges through and including July 14, 2013 in the amount of $100,056.38, together with such additional late payment charges, advances and Trustee's costs and expenses of collection, including, without limitation, Trustee's reasonable attorneys' fees and costs.

## CONCLUSION

19.    For all of the foregoing reasons, it is respectfully requested that the Court grant Trustee's application in its entirety.

_____
SUMIT JAIN

Sworn to before me this
18th day of _July_, 2013.

_____
Notary Public

_I continued to Pay_

JENNIFER ANN CHURCH
NOTARY PUBLIC
GASTON COUNTY
STATE OF NORTH CAROLINA
MY COMMISSION EXPIRES 3-20-2016

5