UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

                                       Chapter 11

Boysin Ralph Lorick and
Cynthia Theresa Lorick,

                                       Case No. 16-45645-NHL

                   Debtors.
----------------------------------------------------------X

## REPLY IN SUPPORT OF APPLICATION FOR ORDER DIRECTING DISTRIBUTION OF SALE PROCEEDS TO WELLS FARGO BANK, N.A.

     Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Lender"), a secured creditor of the above-captioned debtors (the "Debtors"), respectfully submits this reply in support of the *Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* (the "Application") [Dkt. No. 191] and in response to the *Response of Ortiz & Ortiz LLP to Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* (the "Ortiz Response") [Dkt. No. 203] filed by Ortiz & Ortiz LLP ("O & O"), in its capacity as a creditor in this Chapter 11 case, and the *Limited Objection to the Demand for Payment of Wells Fargo's Claim Without the Benefit of a Plan or a Bar Date* (the "Debtors' Objection") [Dkt. No. 204] filed by the Debtors and respectfully states as follows:

     1.     The Court's familiarity with the factual background of this case is presumed, and only the facts pertinent to the Application and this Reply are set forth below.

     2.     The Consolidated Mortgage, Consolidated Note, So-Ordered Stipulation and Amended Foreclosure Judgment (as defined below) underlying the Lender's secured claim provide for the payment of interest on the Amended Foreclosure Judgment and attorneys' fees

and costs incurred by the Lender in connection with its collection efforts. The Lender submits that the attorneys' fees and costs incurred by the Lender while enforcing its rights are reasonable, especially in the context of the Debtors' repeated attempts to flout the Court's orders and obstruct the Lender.

3.      On February 28, 2014, the Supreme Court of the State of New York, County of Kings ("Kings County Supreme Court") entered a Stipulation of Settlement and Order (the "So-Ordered Stipulation") executed by Boysin Lorick ("B. Lorick"), his then-counsel Mark S. Friedlander, Esq., and the Lender (a true and correct copy of which is attached hereto as Exhibit A). Pursuant to the So-Ordered Stipulation, B. Lorick, *inter alia,* consented to the relief sought by the Lender in the complaint filed against the Debtors in Kings County Supreme Court on January 30, 2013 [Index No. 500469/2013] (the "Foreclosure Action") and to the entry of a final judgment in the Foreclosure Action. See So-Ordered Stipulation ¶ 4(a).

4.      Paragraph 2(d) of the So-Ordered Stipulation provided the following:

> [B. Lorick] acknowledges that the amount due under the Loan Documents shall continue to accrue through the date of payment. The Outstanding Indebtedness[1] together with such additional interest calculated through the date of payment as well as Lender's costs and expenses incurred through the date of payment shall be referred to as the "Payoff Amount."

Id. ¶ 2(d).

5.      Similarly, pursuant to paragraph 14(b) of the So-Ordered Stipulation, the Lender is entitled to invoke additional remedies permitted under the Loan Documents upon the occurrence of an Event of Default. Id. ¶ 14(b).

---

[1] The Outstanding Indebtedness is defined in the So-Ordered Stipulation as $2,447,121.60, the total amount due under the Loan Documents as of November 12, 2013. See id. at ¶ 2(c).

US2008 13719885 4

6.      The Amended Final Judgment of Foreclosure and Sale entered on June 3, 2016

(the "Amended Foreclosure Judgment") (a true and correct copy of which is attached hereto

as Exhibit B) references the So-Ordered Stipulation as follows: "and upon the executed

Stipulation of Settlement entered February 28, 2014 . . ., pursuant to which B. Lorick consented

to entry of this final judgment of foreclosure and sale . . ."  Amended Foreclosure Judgment

at 2.  The Amended Foreclosure Judgment further provides:

> ORDERED, ADJUDGED AND DECREED that said Substitute Referee on
> receiving the proceeds of such sale shall forthwith pay therefrom:
>
> ***
>
> FOURTH: Said Substitute Referee shall then pay to the plaintiff or its attorney
> the sum of $9,602.78 for costs and disbursements in this action to be taxed by
> the Clerk and inserted herein, with interest from the date hereof, [together with
> an additional allowance of $300.00 hereby awarded to the plaintiff in addition
> to costs with interest thereon from the date hereof,] and also the sum of
> $3,668,619.69 the said amount so reported due as aforesaid, together with
> interest thereon pursuant to the terms of the Note from January 31, 2016 the date
> the interest was calculated to in said Report, to the date of entry of this Order,
> and thereafter at the statutory post-judgment rate to the date of transfer of title,
> or so much thereof as the purchase money of the mortgaged premises will pay
> of the same, together with $85,000 hereby awarded to the plaintiff as reasonable
> legal fees, together with any advances as provided for in the note and mortgage
> which plaintiff may have made for taxes, insurance, principal and interest and
> any other charges due to prior mortgages or to maintain the premises pending
> consummation of this foreclosure sale, not previously included in the
> computation, upon presentation to the Substitute Referee of receipts for said
> expenditures, **all together with interest thereon pursuant to the note and
> mortgage as above provided**. Copies of such receipts shall be annexed to the
> Referee's Report of Sale. Plaintiff shall timely move to confirm the Referee's
> Report of Sale pursuant to RPAPL § 1355.

Id. at 5, 7 (emphasis added).

7.      The Consolidation, Extension and Modification Agreement dated September

13, 2005 (the "Consolidated Mortgage") (a true and correct copy of which is attached hereto

as Exhibit C) provides:

US2008 13719885 4

32. All obligations of the mortgagor hereunder shall continue until the entire debt evidenced hereby is paid, notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this agreement.

35. If it becomes necessary to employ counsel to collect the obligation described herein or to protect or foreclose said mortgage, the mortgagor hereby agrees to pay all expenses and costs, **including reasonable attorney's fees for the services of such counsel together with all other costs and disbursements in connection therein whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding** (including any action for relief from the automatic stay of any bankruptcy proceeding).

Consolidated Mortgage ¶¶ 32, 35 (emphasis added).

8.      Lastly, paragraph 6(h) of the So-Ordered Stipulation provides:

[B. Lorick] knowingly and intentionally covenants and agrees not to sue or commence any action or counterclaim or cross-claim against Lender or its affiliates, agents, employees, and attorneys, for any claims, demands, expenses and liabilities of whatsoever kind and nature arising from or in any matter connected with this Stipulation, the Loan Documents, and  the lending relationship between the parties.

So-Ordered Stipulation ¶ 6(h).

9.      The above-quoted language from the So-Ordered Stipulation, the Amended Foreclosure Judgment, and the Consolidated Mortgage all support the Lender's clear entitlement to attorneys' fees, costs, and interest to be paid by the Debtors as well as Debtors' acknowledgment that Debtors have no viable claims against the Lender.

## I.    **Ortiz Response**

### A.    <u>Administrative Expense Claims Do Not Have Priority Over the Lender's Secured Claim</u>.

10.     O & O asserts that this chapter 11 case may be administratively insolvent as a result of "capital gains" incurred by the Debtors due to the sale of the property located at 3126

4

Coney Island Avenue, Brooklyn, New York (the "Property"). See Ortiz Response ¶ 8. O & O bases its argument that the Debtors' estate *may* be administratively insolvent because the Debtors may have incurred alleged capital gains tax liability. Time and again, the Court has admonished the Debtors and their proposed new counsel to retain a certified public accountant before presenting arguments regarding capital gains. O & O has not engaged a certified public accountant and has failed to submit any evidence, competent or otherwise, that the Debtors will incur capital gains tax liability, nor any further evidence to support the estate's purported administrative insolvency. O & O's assertions are speculative, conclusory, and entirely unsupported by any evidence, and, as such, provide no basis for denying the Application or even for delaying a portion of the distribution owed to the Lender.

11.     Regardless of the estate's administrative solvency, O & O's argument seems to imply that payment of the Lender's secured claim would be subject to payment of any capital gains and/or O & O's claim for attorneys' fees. The Lender's valid, perfected lien on the Sale Proceeds[2] cannot not be "primed" by either of those alleged administrative expense claims. In accordance with the Court's orders, the Property was sold free and clear of all liens, and the Lender's lien attached to the Sale Proceeds with the same validity, force, and effect that the Lender had prior to the closing. See Order Approving the Sale of Real Property "As Is" And "Where Is", Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Related Relief [Dkt. No. 95] ¶ 9. Secured claims are entitled to the highest priority under the Bankruptcy Code to the extent of the value of the secured claimant's collateral. The Bankruptcy Code does not provide for the payment of a secured claim *after* the payment of

---

[2] All terms not defined herein are ascribed their meaning as provided in the Application.

US2008 13719885 4

administrative expenses, such as capital gains tax on the Sale or compensation and expenses of retained professionals, pursuant to sections 503 and 507 of the Bankruptcy Code, nor does O & O provide any support for such proposition.  <u>See</u> 11 U.S.C. §§ 503 and 507; <u>see also</u> <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 120 S.Ct. 1942, 1946 (2000) ("Administrative expenses … do not have priority over secured claims.") (citing <u>United Sav.</u> <u>Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.</u>, 484 U.S. 365, 378-79 (1988)); <u>Monarch Air Serv. V. Solow (In re Midway Airlines, Inc.)</u>, 383 F.3d 663, 669 (7th Cir. 2004) ("secured claims are paid (or the collateral returned) before any distribution is made to priority claimants or to general unsecured creditors").  Any speculative administrative insolvency of this chapter 11 case has no bearing on the Application or the payment of the Lender's secured claim.

      B.    <u>The Lender's Fees and Expenses Incurred are Supported by Invoices and Time</u> <u>Records</u>.

12.    O & O argues that the Lender has failed to provide support for its legal fees and costs, the disbursement of which from the Sale Proceeds is requested in the Application.  As O & O and the Debtors are aware, on June 23, 2017, the Lender provided O & O with invoices of its fees and other costs incurred through April 30, 2017 (true and correct copies of the transmittal emails to Norma Ortiz (without attachments) are attached hereto as <u>Exhibit D</u>)).  The Lender has now provided to the Debtors' counsel and O & O the remainder of the Lender's fee invoices through October 2017.  To the extent that the Court requires further evidence of the Lender's attorneys' fees incurred, redacted invoices reflecting the balance of the Lender's attorneys' fees incurred through October 2017, are being submitted contemporaneously for the

6

Court's review (see Exhibit E). These invoices show that the Debtors' own actions and strategies have caused the Lender to incur the fees while protecting the Lender's interests.

13.     Section 506(b) provides that an oversecured claim shall be allowed "interest on such claim, and any reasonable fees, costs or charges provided for under the agreement or State statute under which the claim arose." 11 U.S.C. § 506(b). There is no dispute that the Lender is oversecured. As O & O correctly asserts, the Lender is entitled to reasonable fees and interest pursuant to 506(b).[3]

## II.    Debtors' Objection

### A.    The Lender is Entitled to Attorneys' Fees and Costs Incurred in Connection with this Chapter 11 Case.

14.     As stated above, Consolidated Mortgage, Consolidated Note, So-Ordered Stipulation and Amended Foreclosure Judgment and as an oversecured creditor in this chapter 11 case, the Lender is entitled to reasonable attorneys' fees and costs incurred, as well as interest, in accordance with section 506(b) of the Bankruptcy Code.

15.     Despite the Debtors' contentions that the Lender did not actually incur the attorneys' fees asserted in the Application, the invoices to be submitted to the Court, as discussed above, will evidence the attorneys' fees incurred by the Lender while enforcing its rights. To the extent that the Debtors object to what have been characterized as "humongous legal fees," the Lender notes that the costs have, in large part, been driven up due to the litigation and delays caused by the Debtors. As for the allegation that the Lender has "seized the process" of this case, the Court noted at the November 17, 2017 hearing that the Lender

---

[3] The Lender notes that it is entitled to reasonable fees, costs, and interest pursuant to the Consolidated Mortgage, Consolidated Note, the terms of the So-Ordered Stipulation, and the Amended Foreclosure Judgment as set forth above, in addition to section 506(b) of the Bankruptcy Code.

US2008 13719885 4

would have been well within its right to have obtained stay relief at an early juncture in this case. Instead, the Court approved the sale process (proposed by the Debtors), while continuing to allow the Debtors' the opportunity to refinance in an effort to help the Debtors. The underlying loan has been in default since its maturity in 2012, and the Debtors have repeatedly attempted to challenge the Lenders' attempts to enforce its rights during this time in both Kings County Supreme Court and the Bankruptcy Court.

16.     The Debtors' argue that the Lender's attorneys' fees and costs are unsubstantiated and were not actually incurred by the Lender. As noted above, the Debtors have been provided, with evidence of the Lender's attorneys' fees and costs through October 2017. Debtors' cite to Vardy Holding Co. v. Metric Resales, Inc., 131 A.D.2d (N.Y. App. Div. 2d Dep't 1987) seemingly for the proposition that attorneys' fees and costs incurred in connection with foreclosure proceedings in New York State must be denied. This statement is inaccurate and has no bearing on the Lender's current request for attorneys' fees and costs. The portion of Vardy Holding Co. to which the Debtors cite to specifically notes that the subject mortgages provided for the award of attorneys' fees in actions other than to foreclose the mortgages. Here, as discussed in detail above, the Consolidated Mortgage provides for the payments of the Lender's attorneys' fees and costs and disbursements in a foreclosure action, in a bankruptcy proceeding, and those incurred in post-judgment collection efforts. Further, pursuant to paragraph 2(d) of the So-Ordered Stipulation, B. Lorick agreed that the amount due to the Lender, inclusive of costs and expenses, would continue to accrue through the date of payment and B. Lorick consented to pay additional fees and costs from November 13, 2013 until the date the Lender received payment. See So-Ordered Stipulation ¶ 2(d).

US2008 13719885 4

17.    As noted above, the Debtors have caused the Lender to incur substantial attorneys' fees while the Lender has protected its interests.  On July 20, 2016, in an effort to stop the foreclosure of the Property to which the Debtors had consented, the Debtors filed a chapter 13 petition.  The Lender was forced to seek relief to keep the state court receiver in possession of the Property, necessary for several reasons, including the environmental issues at the Property and the Debtors' conversion of tenant security deposits.  Of course, the Debtors did not qualify for chapter 13 because of the amount debt they owed to the Lender.  The Lender was forced to seek dismissal of the Debtors' chapter 13 case.  The Court entered an order dismissing the case on October 11, 2016.[4]  Thereafter, the Lender reinstituted foreclosure proceedings.  The Debtors filed this case on December 15, 2016, on the eve of a foreclosure sale.  Again, the Lender had to seek relief to keep the receiver in place to protect the Property and to finish the environmental remediation.  After almost four months with no progress, the Lender filed its motion to dismiss.  Only then did the Debtors take affirmative steps to move the case along.  On June 9, 2017, the Debtors filed a motion for approval of sale procedures.  The Court entered its order that provided for a dual-track process on July 25, 2017.  On August 21, 2017, the Debtors sought to stay the auction.  On August 22, 2017, the Debtors conducted the auction.  On August 24, 2017, the Court approved a successful bidder (Soleyman Ghalchi) and a back-up bidder.  As predicted by the Lender at the hearing on August 24, 2017, Mr. Ghalchi filed a motion seeking to vacate the sale order and appealed the sale order because events at the auction led Mr. Ghalchi to assert that the Debtors had colluded with one of the other bidders.  This led to Mr. Ghalchi taking depositions of the Debtors, the Debtors' counsel,

---

[4] The Lender incurred fees to Kilpatrick Townsend & Stockton LLP totaling approximately $82,000 during July 2016 through October 2016, largely as a result of the Debtors' improperly filed chapter 13 bankruptcy case.

9

and numerous other parties.  At this point, the only party seeking to uphold the Court's sale order was the Lender.  After a two-day evidentiary hearing on October 5 and 6, 2017, the Court denied Mr. Ghalchi's motion to vacate the sale order.  Then, the Debtors began to collaterally attack the Court's sale order by filing a complaint in the United States District Court, eventually seeking an emergency stay of the sale with the Second Circuit Court of Appeals. The Lender opposed the stay, and the Second Circuit denied the Debtors' stay request.  Only after the denial of his stay request, repeated hearings before this Court leading to Mr. Lorick being found in contempt, and when facing the appointment of a trustee, did the Debtors close the sale.[5]  Even after that, the Debtors did not seek to pay the Lender.  Instead, they have threatened the Lender with various claims supposedly arising before the entry of the So-Ordered Stipulation when they waived all such claims.  The Lender has been put in the awkward position of having to ask the Court to enter an order to pay its claim because the Debtors appear to be willing to continue to drag out their dispute with the Lender indefinitely. (This is consistent with their actions since the loan matured in 2012.)  Given this background, the Lender's fees are entirely reasonable.

B.    The Lender is Now Entitled to Interest on the Amended Foreclosure Judgment.

18.    The Debtors argue that the Lender is only entitled to interest through June 3, 2016, the date of the Amended Foreclosure Judgment at the contract rate.[6]

19.    Section 5003 of the New York Civil Practice Law and Rules ("CPLR") provides that "[e]very money judgment shall bear interest from the date of its entry.  Every order

---

[5] The fees of the Lender's bankruptcy counsel for August through October totaled $272,316.24, largely caused by the issues with the auction, sale hearing, collateral attacks on the sale, and the Debtors' refusal to close.

[6] No authority is provided for awarding contract interest, but if contract interest is appropriate, it should accrue at the default rate (16%).  If the Court declines to award statutory interest now, the Lender reserves the right to seek interest at the default rate.

US2008 13719885 4

directing the payment of money which has been docketed as a judgment shall bear interest from the date of such docketing." CPLR § 5003. "[I]nterest is not a penalty. Rather it is simply the cost of having the use of another person's money for a specified period," and "is intended to indemnify successful plaintiffs 'for the nonpayment of what is due to them[.]' " Love v. State of New York, 78 N.Y.2d 540, 544 (N.Y. 1991) (citation omitted). "The statute does not explicitly dictate when interest ceases to accrue, but generally [o]nce a money claim has been reduced to judgment, it carries interest until it is paid." Zavelin v. Greenberg, 117 A.D.3d 726 (N.Y. App. Div. 2d Dep't 2014); Colgate v. Broadwall Mgmt. Corp., 51 A.D.3d 437 (N.Y. App. Div. 1st Dep't. 2008) ("[A] money judgment bears interest from the date of its entry and continues to accrue at the statutory rate until it is satisfied."). Where interest is allowed from and after the date of entry of a money judgment pursuant to CPLR 5003, such "judgment will not be satisfied until interest has been collected from date of entry to date of final payment." Beneficial Discount Co. of New York, Inc. v. Spike, 91 Misc.2d 733 (N.Y. Sup Ct, Yates County, 1977). Therefore, the Court should order payment of interest at the same time payment on the face amount of the foreclosure judgment is ordered.

20. Additionally, the Debtors' assert that the Lender is not entitled to interest on the $85,000 in attorneys' fees awarded under the Amended Foreclosure Judgment. Nothing in CPLR § 5003, nor the Amended Foreclosure Judgment supports such an assertion. The interest accrues on the entire judgment. The Amended Foreclosure Judgment totaled $3,878,640.07, and the Lender is entitled to 9% per annum on the entire money judgment. See CPLR §§ 5003 and 5004. Given that the Lender is clearly oversecured, and that section 506(b) provides that interest shall be allowed, the Court should order prompt payment of such interest ($536,529.18 through December 21, 2017 at 9%). Further delay is not warranted.

11

## Conclusion

In light of the foregoing, the Lender respectfully requests that the Court overrule the Ortiz Response and the Debtors' Objection and approve the Lender's Application in its entirety. In the event that the Court does not order disbursement of all amounts sought at the present time, the Court should order payment of the face amount of the Amended Foreclosure Judgment ($3,876,640.07) and interest at the statutory rate of 9% ($536,529.18 through December 21, 2017 and set a hearing on the balance of the amounts sought.

Dated: December 21, 2017

Respectfully submitted,

/s/    Colin M. Bernardino
Colin M. Bernardino, Esq. (Ga. Bar No. 054879)
(Admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
Email:  cbernardino@kilpatricktownsend.com

and

Keith Brandofino, Esq. (NY Bar No. KB 2128)
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, New York 10019
Telephone:  (212) 775-8700
Facsimile:  (212) 954-5555
Email:  kbrandofino@kilpatricktownsend.com

*Counsel for Wells Fargo Bank, as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1*

US2008 13719885 4