UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

Boysin Ralph Lorick and
Cynthia Theresa Lorick,

Debtors.
-----------------------------------------------------------X

Chapter 11

Case No. 16-45645-NHL

# SUPPLEMENTAL STATEMENT IN SUPPORT OF APPLICATION FOR ORDER DIRECTING DISTRIBUTION OF SALE PROCEEDS TO <u>WELLS FARGO BANK, N.A.</u>

Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "<u>Lender</u>"), a secured creditor of the above-captioned debtors (the "<u>Debtors</u>"), respectfully submits this supplemental statement in support of the *Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* (the "<u>Application</u>") [Dkt. No. 191] and respectfully states as follows:

1. The Court's familiarity with the factual background of this case is presumed, and only the facts pertinent to the Application are set forth below.

2. The Consolidated Mortgage, Consolidated Note, So-Ordered Stipulation and Amended Foreclosure Judgment (as defined below) underlying the Lender's secured claim provide for the payment of interest on the Amended Foreclosure Judgment and attorneys' fees and costs incurred by the Lender in connection with its collection efforts. The Lender submits that the attorneys' fees and costs incurred by the Lender while enforcing its rights are reasonable, especially in the context of the Debtors' repeated attempts to flout the Court's orders and obstruct the Lender.

3. On February 28, 2014, the Supreme Court of the State of New York, County of Kings ("Kings County Supreme Court") entered a Stipulation of Settlement and Order (the "So-Ordered Stipulation") executed by Boysin Lorick ("B. Lorick"), his then-counsel Mark S. Friedlander, Esq., and the Lender (a true and correct copy of which is attached as Exhibit A to the Reply in Support of Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A. [ECF No. 207] (the "Reply")). Pursuant to the So-Ordered Stipulation, B. Lorick, *inter alia,* consented to the relief sought by the Lender in the complaint filed against the Debtors in Kings County Supreme Court on January 30, 2013 [Index No. 500469/2013] (the "Foreclosure Action") and to the entry of a final judgment in the Foreclosure Action. See So-Ordered Stipulation ¶ 4(a).

4. Paragraph 2(d) of the So-Ordered Stipulation provides the following:

[B. Lorick] acknowledges that the amount due under the Loan Documents shall continue to accrue through the date of payment. The Outstanding Indebtedness[1] together with such additional interest calculated through the date of payment as well as Lender's costs and expenses incurred through the date of payment shall be referred to as the "Payoff Amount."

Id. ¶ 2(d).

5. Paragraph 9 of the So-Ordered Stipulation provides the following:

B. Lorick shall, and hereby covenant and agree to, protect, defend, indemnify, and hold Trustee and its affiliates, agents, employees and attorneys, harmless from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs, and expenses (including, without limitation, reasonable attorneys' fees and expenses) arising or occurring out of: (i) any of the representations and warranties made by B. Lorick in this Stipulation being untrue in any material respect; and (ii) any and all claims of any kind and description made against Lender.

---

[1] The Outstanding Indebtedness is defined in the So-Ordered Stipulation as $2,447,121.60, the total amount due under the Loan Documents as of November 12, 2013. See id. at ¶ 2(c).

Id. ¶ 9.

6.  Similarly, pursuant to paragraph 14(b) of the So-Ordered Stipulation, the Lender is entitled to invoke additional remedies permitted under the Loan Documents upon the occurrence of an Event of Default.  Id. ¶ 14(b).

7.  The Amended Final Judgment of Foreclosure and Sale entered on June 3, 2016 (the "Amended Foreclosure Judgment") (a true and correct copy of which is attached as Exhibit B to the Reply) references the So-Ordered Stipulation as follows: "and upon the executed Stipulation of Settlement entered February 28, 2014 . . ., pursuant to which B. Lorick consented to entry of this final judgment of foreclosure and sale . . ." Amended Foreclosure Judgment at 2.  The Amended Foreclosure Judgment further provides:

> ORDERED, ADJUDGED AND DECREED that said Substitute Referee on receiving the proceeds of such sale shall forthwith pay therefrom:
>
> ***
>
> FOURTH: Said Substitute Referee shall then pay to the plaintiff or its attorney the sum of $9,602.78 for costs and disbursements in this action to be taxed by the Clerk and inserted herein, with interest from the date hereof, [together with an additional allowance of $300.00 hereby awarded to the plaintiff in addition to costs with interest thereon from the date hereof,] and also the sum of $3,668,619.69 the said amount so reported due as aforesaid, together with interest thereon pursuant to the terms of the Note from January 31, 2016 the date the interest was calculated to in said Report, to the date of entry of this Order, and thereafter at the statutory post-judgment rate to the date of transfer of title, or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with $85,000 hereby awarded to the plaintiff as reasonable legal fees, together with any advances as provided for in the note and mortgage which plaintiff may have made for taxes, insurance, principal and interest and any other charges due to prior mortgages or to maintain the premises pending consummation of this foreclosure sale, not previously included in the computation, upon presentation to the Substitute Referee of receipts for said expenditures, **all together with interest thereon pursuant to the note and mortgage as above provided**. Copies of such receipts shall be annexed to the Referee's Report of Sale. Plaintiff shall timely move to confirm the Referee's Report of Sale pursuant to RPAPL § 1355.

Id. at 5, 7 (emphasis added).

8. The Consolidation, Extension and Modification Agreement dated September 13, 2005 (the "Consolidated Mortgage") (a true and correct copy of which is attached as Exhibit C to the Reply) provides:

> 16. If any action or proceeding commenced (except an action to foreclose or to collect the mortgage debt) to which action or proceeding the holder hereof is made a party or in which it becomes necessary to defend or uphold the lien of the mortgage, all sums paid by the holder hereof for the expense of any litigation to prosecute or defend the right and lien created by the mortgage, including reasonable counsel fees, shall be paid by the mortgagor, together with interest thereon, at the rate or rates specified herein and any such sums, with the interest thereon, shall be a lien on said premises attaching or accruing subsequent to the lien of the mortgage and shall be deemed to be secured hereby. In any action or proceeding to foreclose the mortgage and/or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall continue unaffected by this covenant.
>
> 32. All obligations of the mortgagor hereunder shall continue until the entire debt evidenced hereby is paid, notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this agreement.
>
> 35. If it becomes necessary to employ counsel to collect the obligation described herein or to protect or foreclose said mortgage, the mortgagor hereby agrees to pay all expenses and costs, **including reasonable attorney's fees for the services of such counsel together with all other costs and disbursements in connection therein whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding** (including any action for relief from the automatic stay of any bankruptcy proceeding).

Consolidated Mortgage ¶¶ 32, 35 (emphasis added).

9. Lastly, paragraph 6(h) of the So-Ordered Stipulation provides:

> [B. Lorick] knowingly and intentionally covenants and agrees not to sue or commence any action or counterclaim or cross-claim against Lender or its affiliates, agents, employees, and attorneys, for any claims, demands, expenses and liabilities of whatsoever kind and nature arising from or in any matter

4

connected with this Stipulation, the Loan Documents, and the lending relationship between the parties.

So-Ordered Stipulation ¶ 6(h).

10. The above-quoted language from the So-Ordered Stipulation, the Amended Foreclosure Judgment, and the Consolidated Mortgage all support the Lender's clear entitlement to attorneys' fees, costs, and interest to be paid by the Debtors as well as Debtors' acknowledgment that Debtors have no viable claims against the Lender.

**I.    CALCULATION OF JUDGMENT AMOUNT AND INTEREST THEREON**

11. At the initial hearing on the Application, the Court appeared to invite questions regarding the amount of the Amendment Foreclosure Judgment and the amount upon which post-judgment interest could be earned. The Court ordered that a distribution from the sale proceeds comprised of the following amounts:

- the total foreclosure judgment amount, without interest: $3,668,619.69, ECF No. 207-3;
- accrued interest on the foreclosure judgment amount at 9% from June 9, 2016 to December 15, 2016 ($904.59 per diem; 189 days): $170,967.73; and
- attorney's fees as provided in the foreclosure judgment, without interest: $85,000

Order Granting Motion in Part [ECF No. 209] at 2.

12. Nothing in the Amended Foreclosure Judgment makes a distinction between the $3,668,619.69 component of the judgment amount and the other constituent amounts awarded therein. Furthermore, the sum of the items contained in the Amended Foreclosure Judgment's paragraph beginning "FOURTH" are not limited to the liquidated amounts totaling $3,763,522.47 ($9,602.78 + $300 + $3,668,619.69 + $85,000). See Amended Foreclosure Judgment at 7. Instead, the amount of the judgment also includes "interest thereon pursuant

to the note and mortgage as provided." Id. In other words, the judgment amount includes interest accruing at the note rate until entry of the judgment. Under the note, interest accrued at an annual rate of 5.25%, unless the note was in default, in which case, an additional 10.25% for a total of 16% per annum. As a result, the Debtors owed interest for the period from January 31, 2016 through June 8, 2016 totaling $115,117.60. Therefore, the total judgment amount as set forth in the Amended Foreclosure Judgment is $3,878,640.07.

13. Based upon the above judgment amount, post-judgment interest accrued at $956.38 per day through December 26, 2017 (the date payment was deposited with the Lender after counsel overnighted the partial payment check), the post-judgment interest totaled $541,311.08. Additional advances, including taxes, insurance payments, publication costs, and property protection advances were made and interest accrued thereon for a total of $62,189 as of December 26, 2017. Finally, the Lender had incurred attorney's fees totaling $773,240.40 through December 2017. As a result, the amount due to the Lender at the time of the partial payoff was $5,255,380.55.[2]

## II. PARTIAL PAYOFF

14. As noted above, on December 26, 2017, the Lender received payment in the amount of $4,039,705.02. This meant $1,215,675.53 remained owing to the Lender, and post-judgment interest continued to accrue at the rate of $299.75 per day. Between December 27, 2017 and February 8, 2018, $13,189.00 in interest will have accrued.

---

[2] An updated payoff letter asserting amounts due through February 8, 2018, is attached hereto as Exhibit A.

## III. LENDER'S ATTORNEY'S FEES

15. On December 11, 2017, Mohammad Choudhary initiated a lawsuit against various parties, including counsel for the Lender, Wells Fargo Bank, N.A., and, after amendment to the complaint, Berkadia Commercial Mortgage, LLC (collectively, the "Choudhary Defendants"). See Choudhary v. Barnardino, et al., Civil Action No. 1-17-cv-07195-WFK-LB (the "Choudhary Action"). Choudhary asserts several causes of action against the Choudhary Defendants related to the sale of the property located at 3126 Coney Island Avenue, Brooklyn, New York (the "Property"). The Choudhary Defendants dispute many of the factual allegations asserted in the Choudhary Action, and the Choudhary Defendants believe that the Choudhary Action should be dismissed as it fails to state a claim as a matter of law. The Choudhary Defendants have sought approval to file a motion to dismiss, based, in part, on the fact that the Debtors voluntarily chose not to seek Court approval of Choudhary's bid on the Property and the Court's determination that Soleyman Ghalchi had presented the highest and best offer for the Property to the Debtors' estate.[3] The hearing on the request to file the motion to dismiss is to be held on February 16, 2018. The Debtors' current bankruptcy counsel has filed a notice of appearance and indicated that it is the Debtors' intention to intervene on the grounds that the Debtors have an interest in the Choudhary Action. See Notice of Appearance, Choudhary Action [ECF No. 14] (attached hereto as Exhibit C) ("'The debtors shall be filing a motion to intervene shortly, for having substantial legal interest in the transaction that is the subject of the action,' and protect it.").

---

[3] A true and correct copy of the letter to Judge Kuntz seeking such approval is attached hereto as Exhibit B.

16. In the Reply, the Lender filed its invoices showing Lender's attorney's fees incurred in its efforts to foreclose on the Property and protect its interests in the Property. At the time of filing the Reply, the invoices of Kilpatrick Townsend & Stockton LLP ("KTS") were current through October 2017. The Lender has since received and paid KTS invoices for November and December 2017. Those invoices are attached hereto as Exhibit D. Additionally, the Lender's environmental counsel, Akin Gump Strauss Hauer & Feld LLP ("Akin") had redacted the entirety of its invoices. Lender now submits copies of the Akin invoices in substantially unredacted form as Exhibit E, attached hereto.

17. Since, January 2016, the Lender has spent more than 1,500 hours seeking to enforce its contractual rights with the Debtors and addressing concerns relating to the condition of the Property, including the environmental concerns.[4] As the Court is aware, at every turn, the Debtors have attempted to thwart the Lender's exercise of its rights – whether challenging the propriety of a receiver (despite the necessity of environmental remediation and B. Lorick converting tenant security deposits), attempting to delay the Court-ordered sale of the Property, collaterally attacking the sale of the Property, and repeatedly refusing to close the sale of the Property. Now it appears that the Debtors may continue this course of action by intervening in the Choudhary Action. Any review of reasonableness of the Lender's fees must be viewed with this in mind.[5] Indeed, large portions of the fees were incurred during litigation with Mr.

---

[4] Assuming the Lender is seeking fees for only 1,500 hours, then the blended rate for which the Lender is seeking reimbursement from the estate is approximately $516/hour ($773,240.40/1,500). Such a blended rate for an engagement of this scope is reasonable.

[5] In a recent letter submitted by Ortiz & Ortiz LLP ("O&O"), the Debtors' former bankruptcy counsel, O&O noted the difference between the Lender's attorney's fees and those of O&O. O&O fails to account for the fees of the Debtors' two other attorneys retained in these chapter 11 cases. Additionally, O&O appears to ignore the fact that the Lender's fees are for a period roughly twice as long as O&O's retention, covering the foreclosure action, environmental issues, and two bankruptcy cases. As noted elsewhere herein, it has been the Debtors that have

Ghalchi, including depositions of the Debtors' attorneys and a two-day evidentiary hearing at which the Debtors were represented by four attorneys. Had the Debtors worked with Mr. Ghalchi, the parties could have avoided this litigation. Yet the Debtors refused to accommodate Mr. Ghalchi and were actively attempting to set aside the Court's sale order. It was left to the Lender to defend the sale.

18. Upon payment of the amounts sought in the Application, the Lender will still remain subject to the Choudhary Action. That litigation arises directly out of the Debtors' sale of the Property and the Lender's defense of its interests in the Property. The Debtors are required to indemnify the Lender for such amounts and such amounts are recoverable under the Consolidated Mortgage. See, e.g., So Ordered Stipulation ¶ 9; Consolidated Mortgage ¶¶ 16, 35. Therefore, the Lender is entitled to seek recovery of defense costs from the proceeds of the sale of the Property. The Lender has estimated that such defense costs might total $500,000. The Lender seeks an order from the Court providing that notwithstanding payment of the balance sought in the Application, O&O shall be required to set aside at least $500,000 of the sale proceeds to cover the Lender's defense costs. The Lender's lien will continue to attach this amount.

**IV.  Conclusion**

In light of the foregoing, the Lender respectfully requests that the Court order the immediate distribution of $1,286,849.73 and order that O&O retain at least $500,000 in O&O's

---

caused these fees to be incurred, whether by contesting foreclosure, collaterally attacking the sale, or litigating with Mr. Ghalchi.

9

trust account with the Lender's lien attaching to the same.

Dated: February 8, 2018

Respectfully submitted,

/s/     Colin M. Bernardino
Colin M. Bernardino, Esq. (Ga. Bar No. 054879)
(Admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
Email:  cbernardino@kilpatricktownsend.com

and

Keith Brandofino, Esq. (NY Bar No. KB 2128)
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, New York 10019
Telephone:  (212) 775-8700
Facsimile:  (212) 954-5555
Email:  kbrandofino@kilpatricktownsend.com

*Counsel for Wells Fargo Bank, as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1*

10

US2008 13857739 3