**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOYSIN RALPH LORICK; | ) | Case No. 1-16-45645-nhl |
| CYNTHIA THERESA LORICK, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

### RESPONSE IN OPPOSITION TO DEBTORS' SURCHARGE MOTION

      Wells Fargo Bank, as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Lender"), files this Response to the Motion of Debtors Boysin Ralph Lorick & Cynthia Theresa Lorick for Entry of an Order Authorizing Debtors to Surcharge Secured Creditor['s] Collateral (Proceeds of Sale of Debtors' Assets) [ECF No. 231] (the "Motion"), and respectfully shows the Court as follows:

### I.      BACKGROUND

      1.      On December 2, 2017, the Lender filed its Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A. [ECF No. 191] (the "Application"). During the December 21, 2017 hearing on the Application, the Court noted that only a claim for surcharge under section 506(c) of the Bankruptcy Code could reduce the Lender's otherwise allowable claim and ordered the payment of a portion of the Lender's claim. The Court continued the balance of the Application to February 8, 2018 to give the Debtors time to file a surcharge motion. The Debtors failed to file a surcharge motion before the February 8, 2018 hearing. Given that the Lender has been attempting to resolve its claims against the Debtors for more than five years and the Debtors do not appear to be motivated to bring this matter to a

close, counsel for the Lender requested that the Court set a deadline for the Debtors to file any motion seeking to surcharge the Lender's collateral.  On February 9, 2018, the Court entered its Scheduling Order, providing, among other things:  "the Debtor shall have until March 2, 2018 to file and serve a motion pursuant to 11 U.S.C. § 506(c)."  Scheduling Order [ECF No. 229] at 1.

2.      On March 2, 2018, the Debtors filed the Motion.  Yet, rather than present a case for surcharging the Lender's collateral, the Debtors spent the bulk of their 28-page brief attacking undersigned counsel, the Debtors' former bankruptcy counsel, Debtors' former state court counsel, the receiver appointed in the state court foreclosure action, and just about every other party that has been involved in the Debtors' attempt to prevent the Lender from realizing on its claim.  Suffice to say that the Lender disputes the Debtors' allegations.

3.      Despite the length of the Motion, the Debtors largely fail to put forth any defensible argument in support of surcharging the Lender.  Indeed, looking only at the Motion, in which the Debtors argue that "all expenses, legal or administrative" should be surcharged against the Lender, see Motion at 3, there was no way the Lender could tell what amount(s) the Debtors sought to surcharge against the Lender.  The Debtors do not articulate how the Lender benefited from "all expenses, legal or administrative" or what the bulk of those expenses are.[1]  Then on the night of March 11, 2018 (more than a full week since the deadline to file the Motion), the Debtors filed a one-page schedule purporting to detail "expenses, costs and fees" that the

---

[1] The Lender can determine the fees of Marilyn Macron, P.C. and the receiver's fees by reviewing the docket in this case.  However, any evidence of other expenses was missing from the Motion and was not readily discernible from the record (except for a short letter from Debtors' former Chapter 11 bankruptcy counsel asserting that it provided $127,848 in services from December 2016 to November 30, 2017 (without providing supporting invoices)).  See ECF No. 222.  Now more than two months since the Court approved the retention of the Debtors' replacement counsel, Debtors' former counsel has yet to file a final fee application.  The irony that the Debtors are seeking to surcharge fees to which they will likely object is not lost on the Lender.

US2008 13960745 3

Debtors could surcharge against the Lender.  <u>See</u> ECF No. 232.[2]  The Court should strike the schedule as untimely filed when determining whether surcharge is appropriate.[3]

4.      Nonetheless, despite the Debtors' attempts to smear the Lender[4] and prejudice it with last minute filings, the Debtors cannot prevail because, as an oversecured creditor, the Lender cannot be surcharged.  Even if an oversecured creditor could be surcharged, the Debtors did not meet their burden of proof with respect to the Motion.  The Lender prays that the Court will deny the Debtors' Motion at the hearing scheduled for March 21, 2018, and that the Court will order the disbursement of the remaining amount of the Lender's claim.

## II.    DISCUSSION

5.      As noted above, the Debtors cannot prevail on their Motion because the Lender is oversecured.  Had the Lender been allowed to continue with its state court foreclosure,[5] the Lender would have been able to charge costs and expenses related to the foreclosure and preservation of collateral (including those related to the receiver) against the Debtors.  Therefore, expenses associated with the maintenance and sale of the Lender's collateral, to the extent they are subject of the Motion, cannot be surcharged against the Lender.

6.      The Debtors argue that "all expenses, legal, or administrative" should be surcharged against the Lender.  Mot. at 3.  The bulk of the Debtors' argument is that the Lender

---

[2] Debtors' counsel provides no explanation or excuse for filing the schedule more than a week after the Court's deadline, other than "somehow the schedule of expenses was not filed."  <u>See</u> Email from Karamvir Dahiya, March 11, 2018 at 10:44 p.m., a true and correct copy of which is attached hereto as <u>Exhibit A</u>.  Oddly, the Motion made no reference to the existence of an exhibit or schedule of the expenses the Debtors seek to surcharge against the Lender.

[3] Given the Debtors' history of failing to comply with deadlines in this case, a continuance is not warranted.

[4] The Debtors argue that the Lender somehow denied a bidder the right to bid because he is a Muslim.  The Lender vehemently disputes this slanderous and unfounded allegation.

[5] The Debtors spend a great deal of time in the Motion insinuating that the Lender's judgment was fraudulently obtained, suggesting that the Cynthia Lorick's signature is missing and Boysin Lorick's signature was fraudulently obtained.  The Lender directs the Court to the Amended Final Judgment of Foreclosure and Sale entered on the docket in the state court foreclosure action on June 8, 2016.  <u>See</u> ECF No. 207, Ex. B.  There are no signatures by either of the Debtors.  However, importantly, the state court judge did sign the judgment before it was entered.

US2008 13960745 3

somehow controlled Debtors' bankruptcy case and counsel,[6] and by implication, controlled the Court—all to force a sale of the Property against the will of the Debtors.[7]  As noted above, the Lender disputes these accusations.  The Lender sought dismissal of the Debtors' case on March 23, 2017.  See ECF No. 51.  The Court has carried that motion for almost a year since it was filed.  Had the Court dismissed the case, the Lender could have foreclosed almost a year ago and avoided expensive litigation.  Additionally, the Lender sought the appointment of a trustee due the Debtors' failure to close on the bankruptcy sale and for other violations of the Debtors' fiduciary duties as debtors-in-possession.  See ECF No. 169.  The trustee motion was not granted either.  Again, though had a trustee been appointed, the parties might not be forced to respond to unfounded, slanderous allegations in surcharge motions.

7.      Section 506(c) of the Bankruptcy Code allows a trustee to "recovery from property securing on an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim …."  11 U.S.C. § 506(c).  The Second Circuit Court of Appeals has held that "[i]f expenses for the preservation or disposition of property are incurred primarily for the benefit of a creditor holding a security interest in the property, such expenses, properly identified, may be charged against the secured creditor."  General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.), 739 F.2d 73, 76 (2d Cir. 1984).  The debtor bears the burden of showing section 506(c) of the Bankruptcy Code applies.  Id. at 77.  In order to meet that burden, the debtor must demonstrate that the expenses were necessary, the amounts expended were reasonable, and the expenses directly benefitted the secured creditor.  See In re McLean Indus.,

---

[6] Absent from these allegations is any evidence that the Lender controlled the Debtors' case or counsel.

[7] If somehow the Lender had controlled the Debtors' bankruptcy case as the Debtors allege, this matter would have been resolved long ago.  Instead, the Lender has been forced to devote resources responding to baseless allegations contained in the Motion and related litigation.

4

Inc., 84 B.R. 340, 350 (Bankr. S.D.N.Y. 1988).[8]    Indeed, the Court must make affirmative findings that the requirements of section 506(c) have been met before authorizing a surcharge. In re K&L Lakeland, Inc., 128 F.3d 203, 210 (4th Cir. 1997).

8.    Moreover, in order to prevail on a surcharge motion, a trustee or debtor in possession must show that the expenditures were made "primarily for the benefit of the creditor and that the creditor directly [benefitted] from the expenditure." General Elec. Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.) ("Flagstaff II"), 762 F.2d 10, 12 (2d Cir. 1985).    See also Bank of NY v. Treco (In re Treco), 240 F.3d 148, 155 (2d Cir. 2001) ("[A]bsent an argument to the contrary, a secured creditor's collateral may only be charged [under 11 U.S.C. § 506(c)] for administrative expenses, including attorney's fees, to the extent these expenses directly benefit that secured creditor.").    The debtor "does not meet this burden of proof by suggesting possible or hypothetical benefits." Flagstaff II, 762 F.2d at 12.    "[T]he [debtor] must show that absent the costs expended the property would yield less to the credit than it does as a result of the expenditure."    In re Domistyle, Inc., 811 F.3d 691 (5th Cir. 2015); see In re Baum's Bologna, Inc., 50 B.R. 689, 691 (Bankr. E.D. Pa. 1985) (refusing to order surcharge when the debtor's attorney did not prove that the secured creditor "would have received less absent [the attorney's] efforts").[9]

---

[8] "The threshold inquiry is whether the services for which a surcharge is sought were necessary to the secured creditor … ." In re Compton Impressions, Ltd., 217 F.3d 1256, 1260 (9th Cir. 2000).    "An expense is not 'necessary' if it bears no relation to the collateral or was not essential to preserve or increase the value of the collateral." 4 Collier on Bankr. ¶ 506.05[4] (16th ed. 2015); In re Gluth Bros. Const., Inc., 424 B.R. 379, 400 (Bankr. N.D. Ill. 2009) (the benefit required under section 506(c) of the Bankruptcy Code "must have specifically benefited the secured creditor, not just have generally preserved the assets of the estate as a whole.").

[9] "This is not an easy standard to meet.    It is the party seeking the surcharge that has the burden of showing a 'concrete' and 'quantifiable' benefit." Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp., Inc. (In re Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d 1061, 1068 (9th Cir. 2001); In re Cascade Hydraulics & Utility Service, Inc., 815 F.2d 546, 548 (9th Cir. 1987) ("To satisfy the benefit test of section 506(c), [the debtor] must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral.").

**A.      The Lender Received No Surchargable Benefit as an Oversecured Creditor.**

9.      Section "506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate." In re Codesco, Inc., 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982). Where a secured creditor is oversecured and holds a mortgage that gives it the right to charge the collection of costs and expenses, including attorneys' fees against the debtor, "it cannot be said that the liquidation expenses were included primarily for the benefit of the secured claim holder" because the secured creditor could have proceeded with a state court foreclosure sale and "would have realized its claim in full, including the expenses of collection." In re West Post Road Props. Corp., 44 B.R. 244, 247 (Bankr. S.D.N.Y. 1984).

10.      In Codesco, the court recognized the unique position of an oversecured creditor:

Where the proceeds from a trustee's sale of encumbered property are sufficient to cover the actual costs associated with the sale and to pay the secured claim in full, it has been held that Code § 506(c) does not authorize charging the encumbered assets with foreclosure costs because the lienholder received no benefit and would have realized full satisfaction of its claim without intervention of the trustee. In re Robertson, 14 B.R. 706 (Bankr. N.D. Ga. 1981). The key factor is whether or not any "benefit" was received by the holder of the secured property, since any recovery permitted from such property must be measured not by the outlay, but by the necessity and the benefit involved, usually limited to the actual foreclosure costs saved by the lienholder where the full satisfaction would not otherwise have bene realized because the secured claim exceed the value of the encumbered property. See In re Truitt, 15 B.R. 169 (Bankr. N.D. Ga. 1981).

Codesco, 18 B.R. at 228-29; see also Textile Banking Co., Inc. v. H.E. Widener, 265 F.2d 446, 453 (4th Cir. 1959) ("[W]here the [debtor] has elected to sell the encumbered property he cannot intrench [sic] upon the amount of the secured debt for the payment of any of the expenses of administration, such as commissions and similar costs. Such costs can be taken

6

only out of any surplus realized over and above the amount necessary to pay the secured

debt.").

11.     Where an oversecured creditor is not permitted to foreclose and realize the payoff

of its mortgage, expenses incurred by the debtor, even in pursuit of a sale of the property, will

not be chargeable against the oversecured creditor's collateral:

> [Secured creditor] was at all times a substantially oversecured creditor.  It is
> clear that many buyers existed who would have purchased the [property] for a
> sum substantially in excess of [secured creditor's] total secured claim.
> Therefore, every action which the Debtor too in this case short of allowing
> [secured creditor] to foreclose as soon as possible provided a clear detriment,
> rather than any direct benefit, to [secured creditor].

In re Mall at One Assocs, L.P., 185 B.R. 981, 989 (Bankr. E.D. Pa. 1995) (finding that

debtor's actions to relet and conduct an auction sale were chargeable to the second

mortgagee, which was undersecured, not the oversecured creditor as the debtor's actions did

not benefit the oversecured creditor and merely delayed its realization of the payoff of its

mortgage).[10]

12.     The Debtors cite In re Trim-X, Inc., 695 F.2d 296 (7th Cir. 1982) for the

proposition that being oversecured does not insulate the Lender from surcharge.  See Mot. at 22.

Yet in Trim-X, the creditor was appealing from a decision that "an award under 506(c) could

never be clearly erroneous as being too small" because the creditor was undersecured.  Trim-X,

---

[10] A sale negotiated by the debtor where the single asset is real property and where the creditor is oversecured rarely
will benefit the creditor because the creditor could have foreclosed upon and sold the collateral to satisfy the debt.
See Compton Impressions, 217 F.3d 1256 ("Additional expenses beyond those covered by the carve-outs merely
aided the Debtor in its attempt to salvage some equity from the project; they were not necessary to the Banks, nor
were they reasonably incurred insofar as the Banks' recovery was concerned."); see, e.g., In re Glen Eden Hosp.,
Inc., 202 B.R. 589 (Bankr. E.D. Mich. 1995) (no recovery under § 506(c) because the creditor would have been paid
in full regardless of the claimant's actions); In re Mall at One Assocs, L.P., 185 B.R. at 989 ("every action which the
Debtor took in this case short of allowing [the creditor] to foreclose as soon as possible provided a clear detriment,
rather than any direct benefit."); In re Chicago Lutheran Hosp. Ass'n, 89 B.R. 719, 731-32 (Bankr. N.D. Ill. 1988)
("It is true that the United States Supreme Court has ruled that is constitutionally permissible for an undersecured
creditor to be required to bear some of the cost of a reorganization effort.  However, it requires a quantum leap to
conclude that Congress did in fact intend to impose the costs of a failed reorganization effort on secured creditors in
11 U.S.C. § 506(c).").

US2008 13960745 3

695 F.2d at 298. Instead the Seventh Circuit found that because expenses were necessary, benefited the creditor, and were reasonable, surcharge was justified. Id. at 299. The Debtors miss the point if they believe this means the Lender can be surcharged. Unlike in Trim-X, but consistent with the decisions cited above by the Lender, the Lender could have foreclosed and recovered its costs from the Debtors but for the delay caused by the Debtors' bankruptcy filing. Because the Lender is oversecured, the Lender did not receive a benefit from the estate's efforts.

13.    This Court's decision in In re Happy Wave LLC, 2015 WL 7575497 (Bankr. E.D.N.Y. Nov. 25, 2015) is instructive. In Happy Wave, the Court approved a sale order authorizing the payment of certain fees for an auctioneer, debtor's counsel (as they related to the sale), a real estate attorney, taxes, and closing costs. See id. at * 3. The debtor sought to surcharge additional expenses including U.S. Trustee fees, property insurance, and other attorney's fees. See id. The Court noted:

> the Debtor has failed to produce any evidence to establish that the fees and expenses associated with marketing and selling the Property in bankruptcy, and payment of taxes and insurance were primarily and directly for the benefit of BSI. To the contrary, this bankruptcy case was filed solely to forestall BSI's foreclosure efforts and attempt to create equity from the Property in the context of a chapter 11 liquidation—such equity intended to be for the sole benefit of the Debtor. The Debtor has produced no evidence to show that BSI fared any better as a result of the bankruptcy auction than it would have in the context of the pending non-bankruptcy foreclosure. Nor has the Debtor shown that BSI consented to the payment of the administrative expenses of the bankruptcy sale out of its secured claim over and above those expenses already authorized by the Order approving the sale of the Property, dated June 15, 2015 ("Sale Order") [Dkt 64]. See In re Codesco, 18 B.R. 225 (Bankr. S.D.N.Y. 1982)."

Happy Wave LLC, 2015 WL 7575497, *2. As in Happy Wave, the Lender could have charged back to the Debtor all fees that one might typically see surcharged to a secured creditor such as the costs of running the auction. There is no evidence that the Lender benefited as a result of the Debtors' bankruptcy sale.

8

**B.      The Debtors Have Not Met Their Burden of Proof to Surcharge.**

14.      In any event, the Debtors have not met their burden in establishing that the expenses were necessary, the amounts expended were reasonable, and the expenses directly benefitted the Lender.  See McLean Indus., 84 B.R. at 350.  The Debtors cannot meet their "burden of proof by suggesting possible or hypothetical benefits."  Flagstaff II, 762 F.2d at 12. The Debtors' theory that the Lender has controlled the Debtors' bankruptcy case and manipulated the sale of the Lender's collateral is not supported by any evidence and cannot support a claim that "all expenses" must be surcharged against the Lender.  As a result, the Debtors' motion must fail.  Furthermore, the Debtors have not explained how expenses such as the fees of Ms. Macron or the Debtors' former Chapter 11 bankruptcy counsel benefited the Lender.[11]  Absent this evidence, the Debtors' must fail as matter of law.  Indeed, simply listing the receiver's expenditures by month does not meet the Debtors' burden under section 506(c).[12]

## III.   CONCLUSION

15.      The Debtors cannot show that the Lender benefited as a result of the sale of its collateral in the Debtors' bankruptcy case, as the Lender would have been able charge the Debtors for expenses it incurred while foreclosing on the property in the pending state court

---

[11] Fee applications for the Debtors' former chapter 11 bankruptcy counsel have not been filed, but the Lender expects that a large portion of those fees arise from objecting to relief sought by the Lender.  It is hard to imagine how such fees benefited the Lender.  Similarly, Ms. Macron was retained because Debtors' former chapter 11 bankruptcy counsel became fact witnesses in litigation brought by the purchaser.  How those fees benefited the Lender is a mystery.

[12] In the schedule filed by the Debtors, it appears that the Debtors have simply copied the monthly disbursement amounts reported by the receiver.  The Lender notes that the Debtors have increased the July 2017 figure by $400,000 as the receiver reported disbursements totaling $84,289.48 for that month.  The Lender also notes that simply listing amounts does not show a benefit to the Lender.

The receiver's fees and disbursements should not be chargeable to the Lender as the receiver is generally to be paid out of the rents of the property.  See N.Y. CPLR § 8004; Title Guarantee Trust Co. v. Koralek, 247 A.D. 915 (N.Y. App. Div. 2d Dept. 1936).  Therefore, because the Lender is oversecured and the rents were sufficient to pay the costs of the receivership, such amounts cannot be surcharged to the Lender.  Furthermore, it is expected that the disbursements could have been charged back to the Debtors.  See, e.g., Consolidation, Extension, and Modification Agreement [ECF No. 207], Ex. C ¶¶ 4, 40, 44.

proceeding. Rather than benefit the Lender, the Debtors' bankruptcy case has served as a hindrance, causing delay and expense and subjecting the Lender to outlandish accusations. The Court should deny the Motion in its entirety. Furthermore, the Court should order that the Lender be paid the remainder of its claim. Upon payment of the amounts presently due and owing, the Court should order that amounts be held in escrow pending the resolution of litigation against the Lender purportedly arising out of the sale of the Debtors' property so that the Lender can satisfy its claims for indemnification against the Debtors.

WHEREFORE, in view of the foregoing, Lender respectfully requests that the Court deny the Motion and grant the Lender relief consistent with this response.

Dated: March 12, 2018

Respectfully submitted,

  /s/ Colin M. Bernardino
Colin M. Bernardino, Esq. (Ga. Bar No. 054879)
(admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: cbernardino@kilpatricktownsend.com

and

Keith Brandofino, Esq. (NY Bar No. KB 2128)
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, New York 10019
Telephone: (212) 775-8700
Facsimile: (212) 954-5555
Email: kbrandofino@kilpatricktownsend.com

*Counsel for Wells Fargo Bank, as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1*

**EXHIBIT A**

**Bernardino, Colin**

| | |
|---|---|
| **From:** | Karamvir Dahiya <karam@legalpundit.com> |
| **Sent:** | Sunday, March 11, 2018 10:15 PM |
| **To:** | david.doyaga.sr@gmail.com; nazar.khodorovsky@usdoj.gov; Ortiz & Ortiz, LLP |
| **Cc:** | Bernardino, Colin; RICHARD McCORD |
| **Subject:** | filed Schedule of expenses fees etc. |
| **Attachments:** | Schedule of Fees and Expenses for Surcharge .pdf |

Counselors, I saw that the motion was filed, somehow the schedule of expenses was not filed, however they are all part of the record already filed with the court. Here is a schedule, also, that the Fargo might have some more questions or time to look at it, I consent to to any additional time of 2 days for them to file their response
.

Karamvir Dahiya

Dahiya Law Offices, LLC
75 Maiden Lane Suite 506
New York NY 10038

Tel: 212 766 8000
Cell 646 420 9000

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X        **Case No. 16-45645**
In Re:

      **Boysin Ralph Lorick**
      **Cynthia Theresa Lorick**
                             **Debtors.**
-------------------------------------------------------------X

<u>**Schedule of Expenses, Costs and Fees Chargeable to Wells Fargo Under 11 U.S.C. § 506**[1]</u>

A. <u>RECEIVER EXPENSES, FEES & COSTS</u>
1. Douglas Rosenberg Receiver Commission:  **$65,855.87**
2. David Doyaga, as counsel to the Receiver:   **$10,000.00**
3. Post-Petition, December 15, 2016, Receiver expenditures on the Building repairs, contamination removal, maintenance and all fees incurred and paid thereof regarding the Estate Property:

December: **$4698.32**

For the Year 2017

    i.      January: **$39,326.91**
    ii.     February: **$23,660.67**
    iii.    March: **$65,657.08**
    iv.    April: **$28,066.77**
    v.     May: **$63,549.60**
    vi.    June: **$106,994.82**
    vii.   July: **$484,289.48**
    viii.   August: **$35,412.80**
    ix.   September: **$24,945.57**
    x.     October: **$50,951.38**
    xi.   November: **$63,208.95**
    xii.   December_____

B. <u>SPECIAL COUNSEL MARILYN MACRON, P.C.</u>
1. **FEES:**      $27,960.00
2. **EXPENSES:**  $6962.61

C: <u>ORTIZ & ORTIZ FEES, EXPENSES ETC.</u>

December 2016 November 30, 2017**: $127,848.00 (excluding the expenses).**

---

[1] This Schedule has been prepared with the figures provided by the non-debtors and without prejudice to the rights of the debtors to challenge them. The figures are subject to further change upon availability of any additional information. Further, owing to the acts of Wells Fargo's counsels, the debtors have been exposed to serious additional expenses and appellate litigation for which Wells Fargo is solely responsible.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2018, a true and correct copy of the foregoing Response was filed electronically with the Court's CM/ECF filing system which in turn will generate an electronic notice of filing to all those who have requested or consented to electronic service in this Chapter 11 case.

Dated: March 12, 2018

/s/ Colin M. Bernardino
Colin M. Bernardino