UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

Boysin Ralph Lorick and
Cynthia Theresa Lorick,

                       Debtors.
-----------------------------------------------------------X

Chapter 11

Case No. 16-45645-NHL

## SECOND SUPPLEMENTAL STATEMENT IN SUPPORT OF APPLICATION FOR ORDER DIRECTING DISTRIBUTION OF SALE PROCEEDS TO WELLS FARGO BANK, N.A.

      Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Lender"), a secured creditor of the above-captioned debtors (the "Debtors"), respectfully submits this second supplemental statement in support of the *Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* (the "Application") [Dkt. No. 191] and respectfully states as follows:

      1.    The Lender files this supplemental statement in response to the Court's instructions at the hearing held on March 22, 2018.[1] As noted at the hearing, invoices supporting the Lender's request for fees and expenses were previously filed at docket numbers 207 and 227.[2] Because the Lender has incurred additional fees and expenses since it last filed evidence of its attorneys' fees, additional invoices for subsequent attorneys' fees and expenses

---

[1] Much of the information contained in this supplement was previously provided with the Lender's Reply in Support of Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A. [ECF No. 207] (the "Reply") and the Supplemental Statement in Support of Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A. [ECF No. 227].

[2] In addition to being filed on the docket, the invoices have been previously provided to Debtors' counsel.

US2008 14065358 1

are attached.  The Court gave the Debtors until May 7, 2018 to object to Lender's claim for attorneys' fees and expenses.  The Lender reserves the right to respond to any such objection.

2.      The Court's familiarity with the factual background of this case is presumed, and only the facts pertinent to the Application and this supplement are set forth below.

A.      <u>The Debtors are Responsible for Payment of Lender's Fees and Expenses</u>.

3.      The Consolidated Mortgage, Consolidated Note, So-Ordered Stipulation and Amended Foreclosure Judgment (as defined in the Reply) underlying the Lender's secured claim provide for the payment of interest on the Amended Foreclosure Judgment and attorneys' fees and costs incurred by the Lender in connection with its collection efforts. Section 506(b) provides that an oversecured claim shall be allowed "interest on such claim, and any reasonable fees, costs or charges provided for under the agreement or State statute under which the claim arose."  11 U.S.C. § 506(b).  There is no dispute that the Lender is oversecured.  Therefore, the Lender is entitled to reasonable fees and interest pursuant to 506(b).  The Lender submits that the attorneys' fees and costs incurred by the Lender while enforcing its rights are reasonable, especially in the context of the Debtors' repeated attempts to flout the Court's orders and obstruct the Lender.

B.      <u>The Lender is Entitled to Attorneys' Fees and Costs Incurred in Connection with this Chapter 11 Case, the Debtors' Prior Bankruptcy Case, and Foreclosure Proceedings</u>.

4.      Despite the Debtors' prior contentions that the Lender did not actually incur the attorneys' fees asserted in the Application, the invoices submitted to the Court, as discussed above, evidence the attorneys' fees and expenses incurred by the Lender while enforcing its rights.  To the extent that the Debtors object to what have been characterized as "humongous legal fees," the Lender notes that fees and expenses have, in large part, been driven up due to

the litigation and delays caused by the Debtors. As for the allegation that the Lender has "seized the process" of this case, the Court noted at the November 17, 2017 hearing that the Lender would have been well within its right to have obtained stay relief at an early juncture in this case. Instead, the Court approved the sale process (proposed by the Debtors), while continuing to allow the Debtors the opportunity to refinance in an effort to help the Debtors. However, by doing so, the Lender has been forced to expend hundreds of additional hours to protect its interests. The underlying loan has been in default since its maturity in 2012, and since then the Debtors have repeatedly attempted to challenge the Lenders' attempts to enforce its rights during in both Kings County Supreme Court and the Bankruptcy Court.

5. As noted above, the Debtors have caused the Lender to incur substantial attorneys' fees while the Lender has protected its interests. On July 20, 2016, in an effort to stop the foreclosure of the Property to which the Debtors had consented, the Debtors filed a chapter 13 petition. The Lender was forced to seek relief to keep the state court receiver in possession of the Property, necessary for several reasons, including the environmental issues at the Property and the Debtors' conversion of tenant security deposits. Of course, the Debtors did not qualify for chapter 13 because of the amount debt they owed to the Lender. The Lender was forced to seek dismissal of the Debtors' chapter 13 case. The Court entered an order dismissing the Debtors' Chapter 13 case on October 11, 2016.[3] Thereafter, the Lender reinstituted foreclosure proceedings. The Debtors filed this case on December 15, 2016, on the eve of a foreclosure sale. Again, the Lender had to seek relief to keep the receiver in place to protect the Property and to finish the environmental remediation. After almost four months

---

[3] The Lender incurred fees to Kilpatrick Townsend & Stockton LLP totaling approximately $77,000 during July 2016 through October 2016, largely as a result of the Debtors' improperly filed chapter 13 bankruptcy case.

with no progress, the Lender filed its motion to dismiss. Only then did the Debtors take affirmative steps to move the case along. On June 9, 2017, the Debtors filed a motion for approval of sale procedures. The Court entered its order that provided for a dual-track process on July 25, 2017. On August 21, 2017, the Debtors sought to stay their own auction. On August 22, 2017, the Debtors conducted the auction. On August 24, 2017, the Court approved a successful bidder (Soleyman Ghalchi) and a back-up bidder. As predicted by the Lender at the hearing on August 24, 2017, Mr. Ghalchi filed a motion seeking to vacate the sale order and appealed the sale order because events at the auction led Mr. Ghalchi to assert that the Debtors had colluded with one of the other bidders. This led to Mr. Ghalchi taking depositions of the Debtors, the Debtors' counsel, and numerous other parties. At this point, the only party seeking to uphold the Court's sale order was the Lender. After a two-day evidentiary hearing on October 5 and 6, 2017, the Court denied Mr. Ghalchi's motion to vacate the sale order. Then, the Debtors began to collaterally attack the Court's sale order by filing a complaint in the United States District Court, eventually seeking an emergency stay of the sale with the Second Circuit Court of Appeals. The Lender opposed the stay, and the Second Circuit denied the Debtors' stay request. Only after the denial of his stay request, repeated hearings before this Court leading to Mr. Lorick being found in contempt, and when facing the appointment of a trustee, did the Debtors close the sale.[4] Even after that, the Debtors did not seek to pay the Lender. Instead, they have threatened the Lender with various claims supposedly arising before the entry of the So-Ordered Stipulation when they waived all such claims. The Lender was put in the awkward position of having to ask the Court to enter an order to pay its claim

---

[4] The fees of the Lender's bankruptcy counsel for June through November totaled $385,600.50, largely caused by the issues with the auction, sale hearing, collateral attacks on the sale, and the Debtors' refusal to close.

because the Debtors appear to be willing to continue to drag out their dispute with the Lender indefinitely. (This is consistent with their actions since the loan matured in 2012.) Recently, Mr. Lorick's friend (and the recipient of at least one unauthorized post-petition transfer of $25,000) initiated a civil action against various parties asserting claims related to the auction. Debtors are required to indemnify the Lender for its costs associated with defending these claims. Given this background, the Lender's fees are entirely reasonable.[5]

## Conclusion

In light of the foregoing, the Lender respectfully requests that the Court award the payment of Lender's legal fees and expenses, in addition to other unpaid amounts sought in the Lender's Application.

Dated: April 9, 2018

Respectfully submitted,

/s/     Colin M. Bernardino
Colin M. Bernardino, Esq. (Ga. Bar No. 054879)
(Admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
Email:  cbernardino@kilpatricktownsend.com

and

Keith Brandofino, Esq. (NY Bar No. KB 2128)
KILPATRICK TOWNSEND & STOCKTON LLP
31 West 52nd Street, 14th Floor
New York, New York  10019

---

[5] The Lender hereby attaches invoices for legal fees and expenses incurred in January and February 2018 as Exhibits A & B, respectively. As reflected in Exhibit C, attached hereto, the Lender has been forced to incur legal fees totaling $879,153.00 and $50,638.75 in expenses since fees were awarded by the state court through February 2018. The legal fees resulted from 1,636.9 hours of professional time at a blended rate of $537.08 per hour.

Telephone:  (212) 775-8700
Facsimile:  (212) 954-5555
Email:  kbrandofino@kilpatricktownsend.com

*Counsel for Wells Fargo Bank, as Trustee for the registered holders of Sovereign Commercial Mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1*