UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X  Case No. 16-45645-NHL
IN RE:
      BOYSIN RALPH LORICK,
      CYNTHIA THERESA LORICK.

             Debtors
-----------------------------------------------------------X

## Additional and Further affirmation in Support of Surcharge

Boysin Ralph Lorick and his wife, Cynthia Theresa Lorick (the "debtors) through their

counsel Karamvir Dahiya posits as follows in support of the pending surcharge application.

The debtors are the  chapter 11 debtor in possession ("DIP") and thus clearly entitled to have the

fees and expenses incurred regarding the sale of their Coney Island Property, along with the

extensive litigation and attendant fees incurred by the professionals solely for the benefit of the

sole secured creditor, Wells Fargo, paid by the proceeds earmarked for the secured creditor. It is

clear here, that after having made payments to all creditors including the administrative claim of

the Internal Revenue Services, the debtors shall be insolvent.  Under section 506(c), a trustee or

DIP "may recover from property securing an allowed claim the reasonable, necessary costs and

expenses of preserving, or disposing of, such property to the extent of any benefit to the holder

of such claim." The purpose of the provision is to prevent secured creditors from obtaining a

financial windfall at the expense of the estate and unsecured creditors by ensuring that the

secured creditors are responsible for the same collateral disposition costs within a bankruptcy

case that normally would arise in a foreclosure or similar state law proceeding outside

bankruptcy. See *Loudoun Leasing Development Co. v. Ford Motor Credit Co.* (*In re K & L*

*Lakeland, Inc.*), 128 F.3d 203 (4th Cir. 1997); *In re TIC Memphis* RI 13, LLC, 498 B.R. 831

(Bankr. W.D. Tenn. 2013).

All the requisite three elements are satisfied here in order to surcharge collateral under

the terms of section 506(c): (i) the expenditure were necessary; (ii) the amounts expended were

reasonable; and (iii) the secured creditor benefitted from the expense. As claimed by both the

former counsel and the secured creditor applications for disbursement, that all their acts and

billing were necessary to achieve the forgoing results. If their fees application justified for

whatever they do to benefit, then they are equally bound by the necessary implication of section

506(c). The inquiry into what costs are reasonable and necessary, and the extent to which they

benefit the party being surcharged, is factual, and the party seeking recovery has the burden of

establishing those elements. See 4 COLLIER ON BANKRUPTCY ¶ 506.05[9] (16th ed. 2014).

This burden stands unequivocally satisfied, as both parties the former counsel and secured

creditor have asserted that their actions were necessary for the protection, preservation and

disposing of real estate for the benefit of Fargo. Thus all the fees, expenses incurred in this case,

regarding the sale of Coney Island property must be paid from the sale corpus. *In re

Anderson,* 66 B.R. 97, 99 (9th Cir.BAP1986) ("We read the Code to provide for payment of the

trustee's direct costs of sale out of the proceeds of the sale before distribution to the secured

creditors."). It is not costs of sale but preservation too—thus expenses on the Coney Island

property by the receiver and his fees including the attorney fees must be paid from this collateral

(now a cash). Wells Fargo has conceded the sale was necessary, actually they engineered the

sale, controlled the process...so all expenses therein seems to have been justifiable expenses to

the secured creditor.

### Receiver and Attorneys fees

It is clear from the legislative history behind § 506(c):

> Any time the trustee or debtor in possession expends money to provide for the
> reasonable and necessary cost and expenses of preserving or disposing of

a secured creditor's collateral, the trustee or debtor in possession is entitled
to recover such expenses from the secured party or from the property securing an
allowed secured claim held by such party.

124 Cong. Rec. H11089 (Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978

U.S.C.C.A.N. 5787, 6451.

The receiver had a receipt of $1,317,117.40.

Disbursement were     $1,194,620.87

Receiver Fees of 5%:   $65,885.87

Receiver Attorney fees: $10,000

The disbursement, receiver and his attorneys fees are necessarily to be born from the sale

proceeds, as the expenses were necessary "expense of preserving" of the Coney Island property

for the benefit of the secured creditor, Fargo.    Even charges that which have not been paid, for

instance legal fees of the counsel, Ortiz and Ortiz have to be paid from the proceeds of the sale.

Clearly the lion share of her legal fees is battling on behalf of the secured creditor to have the

property sold and its sale confirmed despite all kind of challenges.  *See IRS v. Boatmen's First*

*Nat'l Bank,* 5 F.3d 1157, 1160 (8th Cir.1993) (holding that unpaid payroll taxes could

be surcharged to secured creditor even though no funds were advanced to the debtor-in-

possession or to the bankruptcy trustee). It is undeniable that the fees were necessary to

undertake whatever was required to be accomplished that the debtors' former counsel thought.

All this was done for the benefit of the secured creditor claim. The secured creditor wanted quick

cash, and the property was put to a sale, even without a Chapter 11 plan.  It was to meet the

exigencies put by Wells Fargo.  To recover a "necessary" expense, each item must (1) have been

incurred to preserve or dispose of the secured creditor's collateral and (2) must have been

necessary under the circumstances. 4 *Collier on Bankruptcy* ¶ 506.05[3], at 506–127. Ortiz &

Ortiz had to hire special counsels to meet the sale requirements, that the secured creditor not only

3

actively participated, but precipitated the events which are clearly billable to it. The special

counsels fees have allowed by the court. Thus, the following fees are directly related to the sale

litigation and must come from the share allocable to Wells Fargo,

>    $26,985.00 to Marilyn Macron P.C
>
>    $6,657.61 to Veritext Legal Solutions
>
>    $305.00 to Marilyn Macron P.C. as a final award of expenses
>
>    Ortiz & Ortiz demand of $172,248.94 and Expenses of $2,135

The Wells Fargo counsel precipitated the events leading to the heavy litigation, thus recovery

under section 506 (c) is available. One of the ways recovery under § 506(c) is available is if "the

holder of the secured claim caused or consented to the expense." *In re Swann,* 149 B.R. 137, 143

(Bankr.D.S.D.1993); *In re Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982) ( "Although the

emphasis under [§506] is on [the] 'benefit' to the secured creditor, considerations of 'consent'

and 'causation' are still relevant."). A court may treat a creditor's consent as "advance

acknowledgment that certain of the costs and expenses incurred would benefit" the

creditor. *Swann,* 149 B.R. at 143 (quoting *Collier on Bankruptcy* ). Mr. Colin Bernardino,

geared the entire sale process, vetted the bids, allowed and disallowed certain parties. All this

was with his directions; thus his client must pay for all this.

This case was about disposition of the property by maximizing the value for paying the

secured creditor. And the attorneys actively engaged to pander to such requirement of the

secured creditors, thus they must now pay for the expenses incurred. There is no doubt that the,

> Payment of administration expenses traditionally has been the responsibility of
> the debtor's estate, not its secured creditors. *Matter of Trim-X, Inc., supra,* 695
> F.2d at 301; *Seaboard Nat. Bank v. Rogers Milk Products Co.,* 21 F.2d 414, 417
> (2d Cir.1927). However, if expenses for the preservation or disposition of
> property are incurred primarily for the benefit of a creditor holding a security

4

> interest in the property, such expenses, properly identified, may be charged
> against the secured creditor. *Matter of Trim-X, Inc., supra,* 695 F.2d at 301; *In re
> Korupp Associates, Inc.,* 30 B.R. 659, 661 (Bkrtcy.D.Me.1983).

*In re Flagstaff Foodservice Corp.,* 739 F.2d 73, 76–77 (2d Cir. 1984). And there is no doubt here

that the whole filing of the case, its content and core tasks undertaken were for the sale of the

property. Thus, fees of Ortiz & Ortiz must be paid by Wells Fargo.

Here Wells Fargo clearly would have a windfall and at the cost of other creditors. There

are other creditors who have not been paid, even an priority claim of the Internal Revenue

Service, which shall be excruciatingly difficult. Thus, this case warrants that the cost, expense

that which are correlated to the sale including the litigation, bidding process, attorneys fees etc.

are to be borne by Wells Fargo. It was all for Wells Fargo. *In re P.C., Ltd.,* 929 F.2d 203, 205

(5th Cir.1991) ("*Delta Towers* held that the benefit element requires 'that the claimant incurred

the expenses primarily for the benefit of the secured creditor....' " (quoting *In re Delta Towers,

Ltd.,*924 F.2d 74, 76 (5th Cir.1991)). *In re Senior–G&A Op. Co., Inc.,* 957 F.2d 1290, 1300 (5th

Cir.1992) ("In order to support a surcharge under Section 506(c), ... the expenditures ... must

have been made primarily for the creditor's benefit." (citing *Delta Towers,* 924 F.2d at 77)). S*ee,

e.g.,* 4 COLLIER ON BANKRUPTCY ¶ 506.05 ("In general, a secured creditor receives a

'benefit' within the meaning of section 506(c) if the relevant expense preserved or increased the

value of its collateral."); *id.* ¶ 506.05[6][c] ("[T]he facts of a particular case may justify charging

the holder of a secured claim with certain expenses if a clear benefit to the secured creditor can

be demonstrated."). The rationale for this "hindsight" approach is to prevent unjust enrichment:

"a secured creditor should    not    reap    the    benefit    of    actions    taken    to    preserve

the secured creditor's collateral without shouldering the cost." *Id.* ¶ 506.05; *see also In re JKJ*

*Chevrolet, Inc.,* 26 F.3d 481, 483 (4th Cir.1994) ("The purpose of this provision [11 U.S.C. § 506(c)] is to prevent a windfall to a secured creditor at the expense of the estate.").

Thus the secured creditor must pay from his share the expenses of the receiver, Ortiz & Ortiz fees, and her special counsels fees.

Wherefore, the Court grant an Order that the aforesaid fees be paid from the claim of Wells Fargo.

Dated: New York NY
May 18, 2018

/s/ _____
Karamvir Dahiya