**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOYSIN RALPH LORICK; | ) | Case No. 1-16-45645-nhl |
| CYNTHIA THERESA LORICK, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## RESPONSE IN FURTHER SUPPORT OF APPLICATION
## FOR ORDER DIRECTING DISTRIBUTION OF SALE PROCEEDS
## TO WELLS FARGO BANK, N.A.

Wells Fargo Bank, N.A., as Trustee for the registered holders of Sovereign Commercial mortgage Securities Trust, 2007-C1, Commercial Pass-Through Certificates, Series 2007-C1 (the "Lender"), a secured creditor of the above-captioned debtors (the "Debtors"), respectfully submits this response in further support of the *Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* (the "Application") [Dkt. No. 191] and in response to the Debtors' opposition thereto (the "Opposition") [Dkt. No. 253].    In further support of the Application, the Lender shows the Court as follows:

## RESPONSE[1]

1.    The Court's familiarity with the factual background of this case is presumed, and only the facts pertinent to the Application are set forth below.

### A.    The Debtors' Opposition to the Application is Untimely and Should Not Be Considered.

2.    The Debtors' untimely Opposition to the Application should not be considered by this Court.  On December 2, 2017, the Lender filed the Application [ECF No. 191]. On December 21, 2017, the Lender filed a reply in support of its application (the "Reply") [ECF No. 207]. On

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Lender's *Supplemental Statement in Support of Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* [ECF No. 227].

numerous occasions, the Court has directed the Debtors to file their opposition to the Lender's Application. The Debtors consistently asked for additional time instead of making a substantive pleading. At the March 22, 2018 hearing, the Court directed that any further briefing on the Application be filed by the Debtors no later than May 7, 2018. Despite having nearly *six months'* notice of the Application and over *45 days* from the last hearing to file the Opposition, on the May 7, 2018 filing deadline, the Debtors filed a letter requesting that the Court extend their time to file the Opposition by one week. [Dkt. No. 248]. The Court did not enter an order approving the request for an extension. On May 18, 2018 at 6:21 p.m., well in excess of the requested one-week extension and less than one week before the scheduled May 24, 2018 hearing on the Application, the Debtors filed the Opposition. [Dkt. No. 253]. On May 21, 2018, *just three days before the hearing*, the Debtors filed an 82-page document that was seemingly intended to be attached to the Opposition. As further evidence in support of the Opposition, the Debtors attach an unsworn, self-serving affidavit of Debtor Boysin Lorick which is almost entirely consists of hearsay and unfounded, slanderous accusations regarding the Lender and its counsel.

3.    The Lender knows that this Court takes care and consideration of its schedule and the schedule of opposing parties when crafting a briefing schedule so that the Court may adequately review such filings and opposing parties may have sufficient time to respond. The Debtors have shown complete disregard for this Court and their adversaries. The Debtors' latest indifference to the filing deadline comes after a long history of the Debtors and their current counsel flouting the Court's directions and orders issued in this case. The Debtors must be held accountable for their continued recalcitrance. The Court did not grant the Debtors an extension of time to file the Opposition, and, as such, the Opposition should not be considered by the Court as

2

it was untimely filed.  However, to the extent the Court considers the Opposition,[2] the Lender

submits this Response in further support of the Application.[3]

**B.    The Lender will Voluntarily Reduce Its Claim, and the Reduced Application Should be Approved.**

4.    As set forth in detail below, the Lender believes that the fees and expenses that

comprise a portion of its claim are reasonable in relation to the prevailing market rate in the Eastern

District of New York and in light of the length and contentious history of the Debtors' efforts to

thwart the Lender's satisfaction of its claim.  In an effort to narrow the issues related to the

Application, the Lender will voluntarily reduce the fees and expenses requested in the Application.

The blended hourly rate of Kilpatrick Townsend & Stockton LLP ("KTS"), the Lender's primary

counsel in this matter, as set forth in the *Second Supplemental Statement in Support of Application*

*for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* (the "Second

Supplemental Statement") [Dkt. No. 244], is $542.65.  The Lender has agreed to only seek

reimbursement of KTS's fees at the blended hourly rate to $475.00.[4]  KTS's total hours expended

on this matter through April 2018 were 1,562.1.  Applying the reduced blended hourly rate of

$475.00, the Lender's claim arising from the fees it paid KTS is reduced to $741,997.50 from

$847,677.50, resulting in a reduction of $105,680.00.  The travel expenses that are part of the

---

[2] Should the Court consider the Opposition, the Lender would request that the Court disregard the attached *Affidavit of Boysin Ralph Lorick in Response [sic] Wells Fargo Application* (the "Affidavit") as the Affidavit is made up nearly entirely of inadmissible hearsay and nonresponsive, irrelevant recitation of the Debtors' perceptions of this case. Furthermore, the affidavit contains slanderous attacks against the Lender and its counsel.

[3] To the extent that this Response is untimely filed, the Lender submits that any is due entirely to the late filed Opposition, which the Lender's counsel only received after 6:00 p.m. on Friday May 18, 2018.  The Lender worked diligently to submit this Response in as far advance of the May 24, 2018 hearing as possible so that the Court had sufficient time to review it.

[4] The Lender notes that in this case the Court approved the fees of David J. Doyaga, Sr., as counsel to the Receiver, who performed services at an hourly rate of $500.  See ECF. Nos. 214, 230.  Additionally, Norma E. Ortiz, as counsel to the Debtors, performed services at an hourly rate of $450.  See ECF. No. 247.

3

Lender's claim, including transportation, hotels, and meals, total $20,943.00.[5]  The Lender agrees

not to seek reimbursement of these travel-related expenses, thereby further reducing its claim by

$20,943.00.  The combined voluntary reduction in fees and expenses is $126,623.00.  The Lender

submits that, although the originally requested fees and expenses were appropriate, this voluntary

reduction in the fees and expenses requested is more than reasonable.

### C.    The Lender is Entitled to Attorneys' Fees and Expenses.

5.    The Lender is entitled to the payment of attorneys' fees and expenses.  "Since there

is no statute in New York authorizing the recovery of an attorney's fee in a mortgage foreclosure

action, such a fee may only be recovered if it is contractually authorized."  *Vigo v. 501 Second St.*

*Holding Corp.,* 121 A.D. 3d 778, 779 (2d Dep't 2014).   Here, the Consolidated Mortgage (as

defined below), the Consolidated Note (as defined below), the So-Ordered Stipulation (as defined

in the Reply), and the Amended Foreclosure Judgment (as defined below) underlying the Lender's

secured claim provide for the payment of interest on the Amended Foreclosure Judgment and

attorneys' fees and costs incurred by the Lender in connection with its collection efforts.

6.    The Consolidation, Extension and Modification Agreement dated September 13,

2005 (the "Consolidated Mortgage") (a true and correct copy of which is attached as Exhibit C to

the Reply) provides:

> 32.  All obligations of the mortgagor hereunder shall continue until the entire
> debt evidenced hereby is paid, notwithstanding any action or actions, whether by
> foreclosure or otherwise, which may be brought to recover any sum or sums of
> money payable under the provisions of this agreement.
>
> 35.  **If it becomes necessary to employ counsel to collect the obligation
> described herein or to protect or foreclose said mortgage, the mortgagor
> hereby agrees to pay all expenses and costs, including reasonable attorney's**

---

[5] KTS did not bill the Lender for non-working travel to and from New York.

4

**fees for the services of such counsel together with all other costs and disbursements in connection therein whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding** (including any action for relief from the automatic stay of any bankruptcy proceeding).

Consolidated Mortgage ¶¶ 32, 35 (emphasis added).

7.      The Consolidated and Restated Mortgage Note dated September 13, 2005 (the "Consolidated Note") (a true and correct copy of which is attached as <u>Exhibit A</u> hereto) provides:

**If it ever becomes necessary to employ counsel to collect this obligation or to protect or foreclose the lien of the Consolidation Agreement collateral hereto**, the undersigned shall pay all expenses and costs, including reasonable attorney's fees and out-of-pocket expenses of said attorney for the services or such counsel, whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding).

<u>Consolidated Note</u> at 2.[6]

8.      Despite the plain language of the Consolidated Mortgage, the Consolidated Note, the So-Ordered Stipulation, and the Amended Foreclosure Judgment, the Debtors seemingly argue that the Lender is not entitled, under New York law or the mortgage documents, to the payment of fees, expenses and interest incurred by the Lender in connection with the enforcement and defense of its lien and collection of the underlying debt.[7] The Debtors cite *Sibley Mortg. Corp. v. Sobotka*, 155 Misc. 2d 616 (Sup. Ct. Oneida Cnty. 1992)[8] which involved language dissimilar to that at

---

[6] The Debtors cite this provision of the Consolidated Note in the Opposition; *however*, the Debtors *intentionally* remove language regarding the mortgagor's requirement to pay for attorneys' fees and expenses incurred by the Lender to protect and foreclose its lien in an effort to mislead this Court. (The Lender does not concede that its attorneys' fees do not qualify as collection efforts.)

[7] Additional language upon which the Lender relies in its assertion of attorneys' fees and costs can be found in the Reply [Dkt. No. 207] and *Supplemental Statement in Support of Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* [Dkt. No. 227].

[8] The Third Department declined to follow the *Sibley* case in *Vacation Village Homeowners' Ass'n Inc. v. Mordkofsky*, 679 N.Y.S. 2d 435 (3d Dep't 1998).

5

issue here. Further, despite the Debtors' contentions to the contrary, the *Sibley* court did not hold that a mortgagees' counsel would be subjected to sanctions for "frivolous conduct" in attempting to recover attorneys' fees against a mortgagor following a foreclosure. Sanctions were awarded in *Sibley* due to the mortgagee's counsel request for an award of attorneys' fees from the mortgagor while knowing that the underlying mortgages did not provide for the payment of attorneys' fees and other courts had ruled the same. Similarly, *Cohoes Sav. Bank v. Blair,* 119 Misc. 2d 153 (Sup. Ct. Saratoga Cnty. 1983), which the Debtors cite, analyzed language dissimilar to that at issue here. Furthermore, the *Cohoes* court stated: "The mortgage agreement in this proceeding was obviously prepared by the lendor [*sic*] plaintiff and the court will interpret it according to its plain language and clear provisions." The Cohoes court *did not* state that the agreement prepared by the lender "needs to be interpreted against the lender and in favor of the debtors' contentions" or that the "attorney fees provision must come across as clear," as the Debtors recklessly misstate.

9.      Lastly, the Debtors cite numerous cases that stand for the proposition that where the underlying mortgage does not provide for the payment of attorneys' fees and expenses incurred in a foreclosure action, such fees and expenses will not be awarded. <u>Opposition</u> at ¶ 6. The Lender submits that the plain language of the above-quoted paragraph 35 of the Consolidated Mortgage clearly and simply provides for the payment by the Debtors of fees and expenses incurred to "collect the obligation or to protect or foreclose said mortgage . . . including reasonable attorney's fees for the services of such counsel together with all other costs and disbursements in connection therein whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding."

US2008 14215119 4

10.    In accordance with the Consolidated Mortgage, the Consolidated Note, the So-Ordered Stipulation, and the Amended Foreclosure Judgment and section 506(b) of the Bankruptcy Court, the Lender is entitled to the payment of its attorneys' fees and expenses.

**D.    The Lender's Attorneys' Fees and Expenses are Reasonable.**

11.    The Lender's requested attorneys' fees and expenses are reasonable and in line with the prevailing market rates of the Eastern District of New York for similar representations.  The Debtors repeatedly make the conclusory allegation that the rates of KTS are unreasonable, yet, do not provide evidence of the prevailing market rate of counsel in the Eastern District of New York.

12.    This court has opined on the standard under which legal fees of an oversecured creditor's professional sought pursuant to section 506(b) of the Bankruptcy Code must be examined:

> Unlike fee applications by professionals whose retention are approved by the court, where the legal fees requested are pursuant to a proof of claim filed by a creditor, a court need not examine the qualifications of a creditor's counsel as rigorously as such counsel was not retained pursuant to a court order and a creditor is entitled to its choice of legal representation. A creditor's proof of claim only needs to have sufficient documentation to substantiate that such fees and costs were validly incurred, the amount could be determined, and such fees were reasonable . . . The court may rely on its own knowledge of hourly rates charged in the relevant area for similar services by attorneys of comparable skill, experience and reputation to determine what is reasonable and courts in the Second Circuit have routinely considered rates of both the Eastern District of New York and the Southern District of New York. Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 280 (E.D.N.Y. 2008). . . "The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)(citing Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990)).

In re Sandy Hills, LLC, No. 12-74482 (DTE) (Bankr. E.D.N.Y. Mar. 10, 2014) (approving secured creditor's attorneys' fees over the Debtors objection that, among other things, the secured creditor failed to provide a retainer agreement, and finding that the "rates were comparable to the hourly

rates charged by comparable firms in the area that have been approved by federal courts in [the Eastern District of New York] and in the South (*sic*) District of New York.")

13.    A "reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany, 522 F.3d 182, 190 (2d Cir. 2008). "Courts are to consider the fee that is customarily charged in the local community by someone who possesses similar skill, experience, expertise, stature and reputation who is faced with similarly novel and complex issues and who procures comparable results." Nicholas v. Oren (In re Nicholas), 496 B.R. 69, 74 (Bankr. E.D.N.Y. 2011) (Craig, C.J.).

14.    The rates charged by KTS to the Lender in this matter are the standard hourly billing rates of each applicable attorney and paraprofessional at KTS and already reflect certain voluntary reductions by KTS, including not billing for non-working travel to and from New York. KTS was retained on an hourly basis as is customary in similar representations. Despite the Debtors' contentions that KTS's fees "far exceed" the prevailing market rates for the Eastern and Southern Districts of New York, the Lender submits that the fees are reasonable and in line with the prevailing market rates approved by this Court and the Bankruptcy Court for the Southern District of New York. See, e.g., In re Nicholas, 496 B.R. at 75 (finding that a blended hourly rate of $414 in 2011 was reasonable); In re Emanuel, 422 B.R. 453 (Bankr. S.D.N.Y. 2010) (finding that a blended hourly rate of $470.78 in 2010 was reasonable).[9]

---

[9] The Lender submits that the rates of KTS attorneys are consistent with other law firms regularly retained in bankruptcy cases in this district. See In re Calvin Graham, Sr., Case No. 18-40679-ess, Dkt. No. 40 (Bankr. E.D.N.Y. Apr. 16, 2018) (retention application for Windels Marx Lane & Mittendorf, LLP with rates of partners ranging from $555 - $860, counsel $660 - $710, associates $480-$590, paraprofessionals $235 - $330); In re G.A.F. Seelig, Inc., Case No. 17-46968-ess, Dkt. No. 58 (retention application of Weltman & Moskowitz, LLP with partners' rates of $625); In re Wentz Didier Maeller, Case No. 18-40599-ess, Dkt. No. 16 (retention application of Rosenberg, Musso & Weiner, LLP with partners' and associates' rates of $650 and $575, respectively).

8

15.     The time spent by KTS professionals in representing the Lender in this case are also reasonable in light of the history of this case.[10]  The Debtors have done everything in their power to prevent the Lender's foreclosure of its mortgage and collection of the amounts owed since the loan matured in 2012.[11]  Time spent and fees incurred in connection with responding to the Debtors' own actions and dilatory strategies cannot be said to have shown excessive caution or overzealous advocacy on behalf of the Lender, particularly given the history with the Debtors. In fact this court has noted where a secured creditor was forced to engage in heavily contested motion practice, to make repeated court appearances, and argue in prolonged and extensive evidentiary hearings due to the actions of the Debtor, "[t]he Debtor should not be surprised or dismayed at the amount of legal fees incurred by [secured creditor's] counsel in preserving [secured creditor's] rights, seeking to enforce the Debtor's obligations in order to collect the amount due, and seeking to continue the foreclosure sale . . ." In re Sandy Hills, LLC, No. 12-74482 (DTE) (Bankr. E.D.N.Y. Mar. 10, 2014).

16.     The Lender submits that it is not required to submit a retainer agreement in light of the complete time records provided, which reflect the reasonableness of the time expended and

---

[10] The Debtors argue that the number of attorneys assigned to this case resulted in a duplication of efforts.  There is "no per se rule against the use of multiple attorneys." *Saldana v. New Start Grp., Inc.,*  No. 14-CV-4049 (CBA) (RLM), 2016 WL 368530, *4 (E.D.N.Y. July 5, 2016).  The Lender submits that the time expended by all attorneys having worked on this matter was reasonable and appropriate in light of the contentious and lengthy history of this case and the Lender's prior efforts to foreclose on the loan.  Strategic conferences between attorneys and with the Lender and KTS were particularly necessary in response to the dilatory tactics of the Debtors throughout this case.

[11] The Debtors state that "this case was not complex" and recites that "[t]he property was listed for sale.  The sale took place." Opposition at ¶ 10.  Based on this revisionist history version of the sale process, the Debtors assert that it was unnecessary for the Lender to participate in the sale process and that any fees and expenses related to the auction should be stricken.  The Debtors seem to forget that the Debtors attempted to postpone the sale, caused the ultimate buyer to initiate litigation to back out of the sale, and that the closing of the sale of the Property was delayed numerous times and was only closed due to the Court's entry of an order holding Debtor Boysin Lorick in contempt.  [ECF No. 180].  All fees incurred by the Lender, which had a substantial interest in the closing of the sale, were proper and reasonable.  The Debtors cannot complain about reasonable fees incurred as a result of their own tactics.

9

rates charged.[12]    The Debtors seem to allege that the Lender has not been paying the fees and expenses of KTS.  The Lender expects to have one of its officers present in Court on May 24, 2018.  The Lender can verify that the Lender has been paying the monthly invoices of KTS in accordance with the KTS's hourly billing structure as is customary in similar representations and reflected on the KTS invoices.

17.    With respect to the redacted time entries in the KTS invoices, the Lender and KTS will provide such entries, unredacted, to the Court, upon request, for an *in camera* inspection.  The entries were redacted due to concerns over attorney-client privilege and attorney work-product.

18.    The Debtors repeatedly assert throughout the Opposition and the attached Affidavit that they have requested invoices and time records of KTS but have not received any to date.  Yet, in the Opposition, the Debtors cite to and quote from the KTS invoices provided to them.  This recurring, knowingly false representation, contradicted by the Debtors and their counsel themselves within the same pleading, is incredible and, potentially, sanctionable.  KTS has provided invoices to the Debtors multiple times over the course of this case.  Similarly, invoices have been filed on the docket as recently as April 9, 2018 in the Second Supplemental Statement and are easily ascertainable from a simple review of the docket.  Even had KTS not provided the invoices, the Debtors' request of discovery in an untimely Opposition filed *six days* before the May 24, 2018 hearing on the Application, which has been pending *since December 2, 2017,* is nothing more than an egregious attempt to delay the payment of fees and expenses to the Lender

---

[12] The Court should disregard any suggestion by the Debtors that the Lender has not disclosed the "real agreement" with KTS.  See Opposition ¶ 22.  As the invoices reflect, KTS bills the Lender at its standard hourly rates and charges expenses.  In its billing discretion, KTS occasionally does not bill for all of its time, including certain travel time.  The Lender pays KTS's monthly invoices.  Any suggestion to the contrary is baseless.

10

and yet another example of the Debtors attempts to thwart the Lender's collection of its claim. This behavior should not be condoned by the Court.

      **E.**      **The Lender's Claim Arising from the Fees and Expenses of Akin Gump Strauss Hauer & Feld LLP Should Be Approved**.

      19.      Prior to the Debtors' bankruptcy filings, the Lender hired Akin Gump Strauss Hauer & Feld LLP ("Akin") as environmental counsel to address concerns relating to the condition of the Property. The Debtors object to the payment of Akin's fees and expenses seemingly because the Receiver did not hire Akin. It is true that the Receiver did not hire counsel with respect to the environmental concerns relating to the Property. In light of the potential risks and liabilities arising from the Property's condition, conditions that were not remedied under the Debtors' watch, the Lender hired Akin to provide advice and representation with respect to the highly specialized issues arising in connection with the environmental conditions of the Property.

      20.      The Property is located adjacent to a former dry-cleaning facility, Brighton Dry Cleaners. See Affidavit of Douglas Rosenberg in Support of Motion for Receiver to Remain in Possession (the "Rosenberg Affidavit") [Dkt. No. 20, Exhibit A]. The Brighton Dry Cleaners is a "Recognized Environmental Condition" and a "New York Brownfields" site with confirmed contamination of soil and groundwater. Id. The neighboring drycleaners allowed tetrachloroethene and tricholoroethene, toxic chemicals that pose a substantial health hazard to the tenants of the Property, to seep into the Property. Id. The Lender sought to have the Receiver remediate the Property, and the Lender even offered to advance the funds for remediation. The Debtors objected to the proposed remediation of the Property. Id. ¶ 7. As a result, a hearing was held on November 13, 2015, in the Foreclosure Action. Id. Notwithstanding the Debtors' objections, an order was entered permitting, among other things, the Receiver to expend funds to

11

obtain environmental remediation work (the "Remediation Order"). Id. Prior to the Chapter 13

Petition Date and after entry of the Remediation Order, the Receiver retained the firm of Partner

Engineering and Science, Inc. ("Partner Engineering") to remediate the environmental

contamination at the Property. Notwithstanding the state court's orders and the Lender's offer to

advance the funds for remediation, the Debtors refused to grant the Receiver and his agents access

to the Property so that the Property could be remediated. The Debtors' filing of the Chapter 13

Case and this Chapter 11 Case stayed the Receiver's remediation efforts until the Lender was able

to obtain orders from this Court allowing the Receiver to remain in possession of the property and

continue to remediate the environmental issues.

21.    The Debtors were entirely unwilling to remediate a potentially hazardous

environmental conditions to the potential detriment of the Debtors' tenants and took every step to

prevent the Receiver's remediation work. The Lender appropriately retained Akin and incurred

the related fees and expenses due to Akin's expertise in environmental law to ensure that the

remediation was properly performed. Such fees and expenses were required to be expended in

light of the seriousness of the situation that the Debtors ignored and the remediation that the

Debtors did everything in their power to prevent. Accordingly, Akin's fees and expenses were

reasonable, and the Lender should be allowed to assert a claim for their reimbursement.

**F.    The Court Should Direct That at Least $500,000 be Set Aside for the Lender's Defense Costs.**

22.    On December 11, 2017, Mohammad Choudhary initiated a lawsuit against various

parties, including counsel for the Lender, Wells Fargo Bank, N.A., and, after amendment to the

complaint, Berkadia Commercial Mortgage, LLC (collectively, the "Choudhary Defendants").

See Choudhary v. Barnardino, et al., Civil Action No. 1-17-cv-07195-WFK-LB (the "Choudhary

US2008 14215119 4

Action"). The history of the action may be found in the *Supplemental Statement in Support of Application for Order Directing Distribution of Sale Proceeds to Wells Fargo Bank, N.A.* [Dkt. No. 227].

23.    The Debtors assert that they "have absolutely nothing to do with that litigation" and yet acknowledge their filing of a notice of appearance in the Choudhary Action "to protect is [*sic*] interest." Opposition ¶ 7. Yet again, the Debtors and their counsel, who represents them in the Choudhary Action as well, provide this Court with a gross misrepresentation of the facts. The Debtors' notice of appearance the Choudhary Action describes the Debtors as "proposed co-plaintiffs" and the Debtors are reflected on the docket as "Intervenor Plaintiffs." *See* Civil Action No. 1-17-cv-07195-WFK-LB, Dkt. No. 14. It is unclear as to what interest the Debtors refer if they "have absolutely nothing to do with that litigation." As recently as May 1, 2018, Debtor Boysin Lorick has appeared at a hearing in the Choudhary Action. The Choudhary Action arises directly out of the Debtors' sale of the Property and the Lender's defense of its interests in the Property. The Debtors are required to indemnify the Lender for such amounts and such amounts are recoverable under the Consolidated Mortgage. See, e.g., So Ordered Stipulation ¶ 9 [Dkt. No. 207, Exhibit A]; Consolidated Mortgage ¶¶ 16, 35 [Dkt. No. 207, Exhibit C]. Therefore, the Lender is entitled to seek recovery of defense costs from the proceeds of the sale of the Property.

24.    In addition to the Choudhary Action, the Debtors allege that they have "serious claim [*sic*] against this law firm and creditor. . . [i]t is a different issue that the debtors have not yet initiated their action." Opposition at 39. Although the Debtors have alleged that they hold claims against the Lender, claims which were waived by the So Ordered Stipulation and they are otherwise estopped from pursuing because of the Amended Foreclosure Judgment (as defined below), they have yet to initiate an action against the Lender. However, to the extent that an action

is commenced, the Debtors are required to indemnify the Lender for amounts recoverable under the Consolidated Mortgage.  Accordingly, at least $500,000 should be escrowed to cover the Lender's defense costs in the Choudhary Action and whatever claims the Debtors seem to believe they possess.

### G.    Miscellaneous.

25.    The 39-page Opposition contains various unclear arguments most of which are irrelevant to the allowance of the Lender's claim, including its reasonable attorneys' fees and expenses.  However, the Lender will address some briefly here:

26.    To the extent that the Debtors attempt to collaterally attack the attorneys' fees awarded to the Lender in the Amended Final Judgment of Foreclosure and Sale entered on June 3, 2016 (the "Amended Foreclosure Judgment") and the Amended Foreclosure Judgment itself, the Debtors' time to challenge the award has long since passed.  The Amended Foreclosure Judgment is entitled to *res judicata*.  See Schulz v. Williams, 44 F.3d 48, 53 (2d Cir. 1994). ("Under Migra v. Warren City Sch. Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984), a federal court must give the same preclusive effect to a state court decision as a state would give it . . . Under New York law, parties are precluded from raising in a subsequent proceeding any claim they could have raised in the prior one, where all of the claims arise from the same underlying transaction. Reilly v. Reid, 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978).").

27.    Further to the extent that the Debtors are arguing that the attorneys' fees awarded in the Amended Foreclosure Judgment are not entitled to interest, the Amended Foreclosure Judgment provides clearly provides for the accrual of interest upon the entire judgment, inclusive of the attorneys' fees awarded thereunder:

14

ORDERED, ADJUDGED AND DECREED that said Substitute Referee on receiving the proceeds of such sale shall forthwith pay therefrom:

\*\*\*

FOURTH: Said Substitute Referee shall then pay to the plaintiff or its attorney the sum of $9,602.78 for costs and disbursements in this action to be taxed by the Clerk and inserted herein, with interest from the date hereof, [together with an additional allowance of $300.00 hereby awarded to the plaintiff in addition to costs with interest thereon from the date hereof,] and also the sum of $3,668,619.69 the said amount so reported due as aforesaid, together with interest thereon pursuant to the terms of the Note from January 31, 2016 the date the interest was calculated to in said Report, to the date of entry of this Order, and thereafter at the statutory post-judgment rate to the date of transfer of title, or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with $85,000 hereby awarded to the plaintiff as reasonable legal fees, together with any advances as provided for in the note and mortgage which plaintiff may have made for taxes, insurance, principal and interest and any other charges due to prior mortgages or to maintain the premises pending consummation of this foreclosure sale, not previously included in the computation, upon presentation to the Substitute Referee of receipts for said expenditures, **all together with interest thereon pursuant to the note and mortgage as above provided**. Copies of such receipts shall be annexed to the Referee's Report of Sale. Plaintiff shall timely move to confirm the Referee's Report of Sale pursuant to RPAPL § 1355.

Amended Foreclosure Judgment at 5, 7 (emphasis added) [Dkt. No. 207, Exhibit B].

## CONCLUSION

In light of the foregoing, the Lender respectfully requests that the Court (i) allow the Lender's claim as voluntarily reduced herein, (ii) order payment of the balance of the Lender's claim, and (iii) order that sufficient funds remain in escrow with the Lender's lien attaching to the same to ensure that the Lender can be indemnified for future litigation costs.

Dated:  May 23, 2018          Respectfully submitted,

  /s/ Colin M. Bernardino
Colin M. Bernardino, Esq. (Ga. Bar No. 054879)
(admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309

15

Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555
Email:  cbernardino@kilpatricktownsend.com

and

Keith Brandofino, Esq. (NY Bar No. KB 2128)
KILPATRICK TOWNSEND & STOCKTON LLP
31  West 52nd Street, 14th Floor
New York, New York  10019
Telephone: (212) 775-8700
Facsimile: (212) 954-5555
Email:  kbrandofino@kilpatricktownsend.com

*Counsel for Wells Fargo Bank, as Trustee for the*
*registered holders of Sovereign Commercial Mortgage*
*Securities Trust, 2007-C1, Commercial Pass-Through*
*Certificates, Series 2007-C1*

16

**EXHIBIT A**

Consolidated Note

## Consolidated and Restated Mortgage Note

$2,250,000.00
                                        Dated the 13th day of September, 2005
                                        New York, New York

FOR VALUE RECEIVED, the undersigned promises to pay to Independence Community Bank, a banking corporation organized and existing under the laws of the State of New York, having its office and principal place of business at 195 Montague Street, Borough of Brooklyn, City and State of New York 11201, or order, the principal sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars, lawful money of the United States, which the undersigned also promises and covenants to pay to any holder hereof, with interest thereon at the rate of Five and One Quarter percent (5.25%) per annum from September 13, 2005 such payment to be made in the manner provided by that certain Consolidation, Extension and Modification Agreement of even date herewith between Independence Community Bank and Boysin Lorick and Cynthia Lorick (hereinafter referred to as the "Consolidation Agreement").

Both principal and interest under this Consolidated and Restated Mortgage Note (" Note") shall be payable at the office of the holder as above set forth or such other place as the holder hereof may designate in writing.

In the event the date for payment of the principal sum secured hereunder or any part thereof falls on a Sunday or any public holiday other than a half holiday, it is understood and agreed that interest thereon at the rate(s) provided for herein shall be paid to the actual date of payment of said principal sum or any part thereof.

In the event any payment to be made hereunder or under the terms of the Consolidation Agreement shall not be received by the holder within fifteen (15) days from the due date, a late charge of five percent (5%) for each $1.00 of such payment so overdue shall be charged by the holder hereof for the purpose of defraying the expenses incidental to handling such delinquent payment. Such charge may be added to the amount owing on the principal indebtedness and its payment further secured by the Consolidation Agreement.

In addition thereto, in the event any check delivered in payment of any sum or sums of money due hereunder is dishonored, the holder hereof may charge and the undersigned shall pay a reasonable sum for the expense of handling such dishonored check.

It is hereby expressly agreed that the whole of the principal sum and interest secured by this Note shall become due and payable, at the option of the holder hereof, after default in the payment of any sum or sums of money payable hereunder or under the terms of the Consolidation Agreement for fifteen (15) days after the due date thereof or upon the happening of any default or event by which, under the terms of this Note or the Consolidation Agreement said principal sum may or shall become due and payable, and further that all of the covenants, conditions and provisions contained in the Consolidation Agreement are hereby made a part of this Note.

It is further agreed that the obligation of this Note shall continue until the entire debt evidenced hereby is paid notwithstanding any action or actions, whether by foreclosure or otherwise, which may be brought to recover any sum or sums of money payable under the provisions of this Note and the Consolidation Agreement.

In the event the principal indebtedness evidenced by this Note becomes due and payable by the terms hereof or by reason of the holder hereof exercising its option to call the same due, interest thereafter shall accrue at the lower of (a) the highest rate permitted by applicable law or (b) sixteen (16%) percent per annum and such interest shall continue to accrue and be payable at the rate or rates herein specified and the same shall be collectible in any action to enforce this Note and/or foreclose the lien of the Consolidation Agreement.

Nothing herein contained shall be construed or operate so as to require the undersigned to pay interest at a greater rate than is now lawful or to make any payment contrary to law. In any event, the total charges for interest and in the nature of interest shall not exceed the maximum amount allowed by law and any excess portion of such charges that have been collected shall be refunded to the undersigned.

If it ever becomes necessary to employ counsel to collect this obligation or to protect or foreclose the lien of the Consolidation Agreement collateral hereto, the undersigned shall pay all expenses and costs, including reasonable attorney's fees and out-of-pocket expenses of said attorney for the services of such counsel, whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding).

The term "holder" as used herein shall be deemed to include Independence Community Bank and any successor in interest to the ownership of this Note.

Presentment for payment, demand, notice of dishonor, protest and notice of protest are hereby waived. This Note is secured by the Consolidation Agreement hereof covering premises located at 3126 Coney Island Avenue, Brooklyn, New York 11235 being more particularly described in the Consolidation Agreement.

This Note constitutes a consolidation and restatement of the total indebtedness of the undersigned to holder in the aggregate sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and interest thereon, comprising the total indebtedness due under the prior mortgages and prior notes as previously consolidated, and more fully set forth in the Consolidation Agreement, creating a consolidated, single first mortgage lien in the sum of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars with interest covering the premises described therein.

This Note further evidences the undersigned's agreement to pay the consolidated principal sum hereof in the amount of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and the interest thereon; and this Note evidences a valid, consolidated indebtedness of Two Million Two Hundred Fifty Thousand and 00/100 ($2,250,000.00) Dollars and interest owing by the undersigned to the holder and secured by a valid and subsisting consolidated first mortgage lien on the premises described in the Consolidation Agreement; and the undersigned hereby acknowledges and confirms that there are no defenses or offsets to the prior mortgages or to the prior notes or to the same as consolidated, modified and extended by the Consolidation Agreement or to the indebtedness secured thereby and evidenced by this Note.

It is further agreed by the undersigned that the terms, conditions and provisions of the consolidated indebtedness evidenced hereby as secured by the Consolidation Agreement shall control and supersede the terms, conditions and provisions set forth in the prior notes and prior mortgages. This Consolidated and Restated Mortgage Note is given by the undersigned as further evidence of the consolidated debt but not in payment, satisfaction or cancellation of the outstanding indebtedness evidenced by the prior notes, which indebtedness is now evidenced by this Note.

The undersigned represents that the indebtedness evidenced hereby is being incurred by the undersigned solely for the purposes of carrying on a business or commercial enterprise, and not for personal, family or household purposes.

This Note shall be governed by the law of the jurisdiction in which the premises securing this Note is located.

All notices, demands and other communications required or permitted to be given by the holder to the undersigned pursuant to this Note shall be given in accordance with the provisions of the Consolidation Agreement securing this Note.

The holder, its successors and assigns, in consideration of the premises and the mutual covenants herein contained, does hereby covenant and agree as follows:

(a)     That it will not exercise its right to institute any action at law against the undersigned, or any principal of the undersigned disclosed or undisclosed, for the payment of any sum of money which is, or may be, payable hereunder other than the right to foreclose the lien of the Consolidation Agreement securing this Note, which right is specifically reserved;

(b)     That it will not seek against the undersigned, or any principal of the undersigned disclosed or undisclosed, any judgment for a deficiency in any action to foreclose the lien of the Consolidation Agreement securing this Note;

provided, however, that nothing in this covenant and agreement contained shall be or be deemed to be a release or impairment of the said indebtedness or of the lien thereof upon the premises, or shall preclude the holder from foreclosing the lien of the Consolidation Agreement in case of any default, or from enforcing any and all other rights under and by virtue of the Consolidation Agreement. The provisions of this paragraph shall not apply to any obligations or liabilities of the undersigned or any principal of the undersigned, disclosed or undisclosed, pursuant to the provisions of paragraphs 40 and 41 of the Consolidation Agreement.

IN WITNESS WHEREOF, the undersigned has duly executed this Note on the 13th day of September, 2005.

Boysin Lorick

Cynthia Lorick

State of New York      )
                       : ss.:
County of New York     )

On the 13th day of September, 2005, before me, the undersigned, personally appeared Boysin Lorick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

State of New York      )
                       : ss.:
County of New York     )

ROBERT MISTRETTA
NOTARY PUBLIC, State of New York
Qualified in Kings County
I.D. Number 01MI4779039
Commission Exp. Aug. 31, 2009

On the 13th day of September, 2005, before me, the undersigned, personally appeared Cynthia Lorick, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity(ies), and that by his/her signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

ROBERT MISTRETTA
NOTARY PUBLIC, State of New York
Qualified in Kings County
I.D. Number 01MI4779039
Commission Exp. Aug. 31, 2009

Loan #7207315 - File #D05-0738
Boysin Lorick and Cynthia Lorick

Restated Note Pg. 4

Mortgage Loan Number: 7207315
CD File Number: D05-0738

## Consolidated and Restated Mortgage Note

Boysin Lorick and Cynthia Lorick

- to -

Independence Community Bank

Dated:        September 13, 2005
Block:        8678
Lot:          59
County:       Kings
Premises:     3126 Coney Island Avenue
              Brooklyn, New York  11235

Cullen and Dykman LLP
44 Wall Street, 19th Floor
New York, New York 10005

ATT:  Bernard M. Soebke