UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                                  Chapter 11

BOYSIN RALPH LORICK and
CYNTHIA THERESA LORICK,

                                                  Case No. 1-16-45645-nhl

                              Debtors.
----------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

       Before the Court are two related motions. The first (the "Distribution Motion"), filed by secured creditor Wells Fargo Bank, N.A. ("Wells Fargo"),[1] seeks an order directing distribution of the proceeds from the sale of its collateral, a piece of real property owned by the debtors, Cynthia and Boysin Lorick (the "Debtors"), and located at 3126 Coney Island Avenue, Brooklyn, New York 11235 (the "Property"). ECF No. 191. By Order entered December 29, 2017, the Court granted the Distribution Motion in part, and awarded Wells Fargo a partial distribution of $4,039,705.02. ECF No. 209. The balance of that motion was adjourned from time to time to permit the Debtors to file the second motion at issue here, which seeks to surcharge the collateral pursuant to 11 U.S.C. § 506(c) (the "Surcharge Motion").[2] ECF No. 231.

       For the reasons set forth below, the Court finds that, as of August 9, 2018, Wells Fargo is entitled to a further distribution of $1,165,658.97, and that, with one exception, the Debtors' expenditures on, or related to, the Property are not sufficient to justify surcharge. However, the

---

[1] Wells Fargo is serving as the Trustee for the registered holders of Sovereign Commercial mortgage Securities Trust, 2007-CI, Commercial Pass-Through Certificates, Series 2007-C1.
[2] 11 U.S.C. §§ 101 *et seq.* may be referred to throughout as the "Code." References to "§ ___" are to sections in the Code unless otherwise specified.

Debtors are entitled to recover the sum of $73,997.53, representing the administrative claim of Partner Engineering and Science, Inc., should that claim be deemed allowed.

## Background

The parties' familiarity with the details of this case is assumed, and only a brief history will be provided here. On or about September 13, 2005, Wells Fargo's predecessor in interest made a loan to the Debtors in the original principal amount of $2,250,000, which was secured by a first mortgage on the Property. Dist. Mot. 2, ECF No. 191. On January 30, 2013, Wells Fargo, acting by and through Waterstone Asset Management LLC, commenced an action to foreclose on the mortgage in the Supreme Court for the State of New York, County of Kings. *Id.* A final judgment of foreclosure and sale was entered on June 8, 2016. It provided that Wells Fargo was owed over $3,668,619.69. *Id.*

On December 15, 2016, the Debtors commenced the instant case by filing a voluntary petition under chapter 11. The Debtors listed the Property in their Schedule A with a value of $5,500,000. Sched. A, ECF No. 26. Wells Fargo timely filed a proof of claim in the amount of $4,149,568.83. Claim No. 8-1.

On August 22, 2017, the Debtors auctioned the Property pursuant to an Order of this Court. *See* ECF Nos. 77, 80, 82. The Court confirmed a successful bidder with a bid of $7,350,000. After several attempts on the Debtors' part to stay or postpone the sale, it closed on November 21, 2017.

Shortly thereafter, Wells Fargo filed the Distribution Motion. Wells Fargo sought a distribution of the sale proceeds in the amount of $5,220,520, comprised of the judgment amount plus interest at 9% and attorneys' fees through the date of the motion, with interest and fees continuing to accrue through the date of payment. Dist. Mot. 3, ECF No. 191. In addition to

filing several papers in opposition, the Debtors filed the Surcharge Motion,[3] which sought to surcharge against the collateral all "administrative expenses incurred in connection with the [s]ale" from the petition date through the date of the motion. Surcharge Mot. 2, ECF No. 231.

Though there have been several hearings on the motions, an evidentiary hearing has not been held.[4]

## Discussion

The following constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

### Distribution

*Balance Owed to Wells Fargo, Less Attorneys' Fees*

Section 506(b) of the Code provides that an oversecured creditor is entitled to post-petition interest on its claim.[5] 11 U.S.C. § 506(b); *In re Moshe*, 567 B.R. 438, 449 (Bankr. E.D.N.Y. 2017). Here, the final judgment of foreclosure and sale provides for the amount owed at the time of judgment and the manner in which interest is to accrue on that sum.[6]

---

[3] There were a considerable number of filings related to each of these motions, and not all of them were timely. Those documents considered by the Court related to the Distribution Motion were ECF Nos.: 191, 196, 197, 203, 204, 207, 253, 260, 276, 282, 285, and 290. Those considered in relation to the Surcharge Motion were ECF Nos.: 231, 232, 233, 235, 238, 254, and 258.

[4] Hearings were held on the Distribution Motion on December 21, 2017 and February 8, 2018. Hearings on both motions were held on March 22, 2018, May 24, 2018, and June 28, 2018.

[5] That sections reads:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

[6] Wells Fargo provided its breakdown of the total of these sums at the Court's request. *See, e.g.*, ECF Nos. 227-1, 290. While instructive, the calculations offered by the party did not adhere to the direction of the foreclosure judgment, in that they provided, at least initially, for the accrual of interest on interest. *See* ECF No. 227-1. While this was later corrected, an additional issue was not. The Court's partial distribution order was meant to apply to specific sums that would reduce the interest-bearing portion of the judgment. None of the calculations submitted after that order properly accounted for its effect. *See* Dec. 29, 2017 Order, ECF No. 209; *see also, e.g.*, ECF No. 227-1. The Court has addressed that issue in its analysis below.

In that judgment, the paragraph entitled "FOURTH" awarded to Wells Fargo several amounts—$300; $3,668,619.69; $9,602.78; and $85,000.[7] *See* Judgment, ECF No. 207-3. The total of those amounts, $3,763,522.47, was to accrue interest first at the contract and default rates from January 31, 2016 to June 8, 2016, and then subsequently at the statutory rate of 9%. *Id.*

The total judgment amount accrued **$115,117.60** in contract and default interest before the 9% statutory rate became applicable on June 8, 2016. From that date forward, additional interest of $525,242.34 accrued through December 26, 2017.[8]

On December 29, 2017, the Court entered an order awarding a partial distribution to Wells Fargo as follows:

- the total foreclosure judgment amount, without interest: $3,668,619.69, ECF No. 207-3;
- accrued interest on the foreclosure judgment amount at 9% from June 9, 2016 to December 15, 2016 ($904.59 per diem; 189 days): $170,967.73; and
- attorneys' fees as provided in the foreclosure judgment, without interest: $85,000.

---

[7] This paragraph provides the following:

> **FOURTH:** Said Substitute Referee shall then pay to the plaintiff or its attorney the sum of $9602.78 [sic] for costs and disbursements in this action to be taxed by the Clerk and inserted herein, with interest from the date hereof, [together with an additional allowance of $300.00 hereby awarded to the plaintiff in addition to costs with interest thereon from the date hereof,] and also the sum of $3,668,619.69 the said amount so reported due as aforesaid, together with interest thereon pursuant to the terms of the Note from January 31, 2016, the date of interest was calculated to in said Report, to the date of entry of this Order, and thereafter at the statutory post-judgment rate to the date of transfer of title, or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with $85,000.00 hereby awarded to the plaintiff as reasonable legal fees, together with any advances as provided for in the note and mortgage which plaintiff may have made for taxes, insurance, principal and interest and any other charges due to prior mortgages or to maintain the premises pending consummation of this foreclosure sale, not previously included in the computation, upon presentation to the Substitute Referee of receipts for said expenditures, all together with interest thereon pursuant to the note and mortgage as above provided. . . .

Judgment, ECF No. 207-3.

[8] For the sake of completeness and clarity, the Court will provide its interest calculations here, below the line. In this case, $3,763,522.47 x .09 / 365 = 927.99 per diem x 566 days = $525,242.34.

Dec. 29, 2017 Order, ECF No. 209. The order accounted for a portion of the interest-bearing base judgment amount, and only **$9,902.78** of that sum would continue to accrue interest beyond December 26, 2017. As of August 9, 2018, the additional interest totals **$551.44**.[9]

The order also eliminated $170,967.73 of the interest that had accrued at 9% on the total original judgment amount through December 26, 2017 (i.e. $525,242.34), leaving an outstanding interest balance of **$354,274.61**.

The order further left unpaid certain advances made by Wells Fargo, and those advances have accrued interest through the present date. These include a tax advance made on December 19, 2016 in the amount of **$22,112.10** and insurance advances made on February 12, 2016 and March 9, 2016 totaling **$9,136.13**. As of August 9, 2018, based on the 9% rate, interest of **$3,264.55** accrued on the tax advance,[10] and of **$1,989** on the insurance advance.[11]

Wells Fargo made additional advances and incurred costs as follows: $500 in referee's fees, $3,790.52 in publication costs, and $23,136.90 in "property protection advances," for a total of **$27,427.42**. These too have accrued interest at the 9% rate, totaling **$1,527.76** as of August 9, 2018.[12]

Adding the above amounts, the total amount owed on the judgment, including interest but excluding attorneys' fees incurred post-judgment, is **$545,303.39**.

*Attorneys' Fees*

The Distribution Motion also seeks attorneys' fees and expenses incurred in connection with Wells Fargo's collection efforts by its counsel, Kilpatrick, Townsend & Stockton LLP

---

[9] $9,902.78 x .09 = 891.25 / 365 = 2.44 per diem x 226 days = $551.44.
[10] $22,112.1 x .09 = 1,990.089 / 365 = 5.45 per diem x 599 days = $3,264.55.
[11] $9,136.13 x .09 = 822.25 / 365 = 2.25 per diem x 884 days = $1,989.00.
[12] $27,427.42 x .09 = 2,468.4678 / 365 = 6.76 per diem x 226 days = $1,527.76.

("KTS").[13] KTS's fee request is based on 1,784.5 hours of worked performed between February 2016 and June 2018, at a voluntarily reduced blended hourly rate of $475, for a total of $847,637. Resp. in Further Supp. 3, ECF No. 260. KTS also seeks expenses through May 2018 in the amount of $26,945.75. *See id.* That figure reflects total expenses less those related to travel, which KTS has agreed to forego. *Id.* Additionally, on July 13, 2018, KTS submitted further expenses in the amount of $2,432.88 for the month of June 2018. June Time Sheet, ECF No. 290.

Post-petition fees and expenses may be awarded to the extent that they are both (i) provided for in the agreement under which the claim arose and (ii) reasonable. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose."); *Ryker v. Current*, 338 BR. 642, 648 (Bankr. D.N.J. 2006). Accordingly, even where fees and expenses are authorized by an underlying agreement, they are nevertheless subject to adjustments based on reasonableness. *See In re Sandy Hills, LLC*, Case No. 12-74482 (DTE), 2014 WL 953840, at *4 (Bankr. E.D.N.Y. Mar. 10, 2014) ("When an award of attorneys' fees is sought, the Court must determine what is reasonable and adjust the fees accordingly.").

Generally, KTS's fees and expenses are authorized by the parties' Consolidation, Extension and Modification Agreement (the "Consolidated Mortgage") dated September 13, 2005.[14] *See* Consolidated Mortgage ¶¶ 32, 35, ECF No. 207-4. However, KTS has requested fees

---

[13] Wells Fargo is also seeking fees for Akin, Gump, Struass, Hauer & Feld, but, at the request of the Court, has done so by separate application. That application is not being considered here.

[14] In relevant part, the Consolidated Mortgage provides:

> 35. If it becomes necessary to employ counsel to collect the obligation described herein or to protect or foreclose said mortgage, the mortgagor hereby agrees to pay all expenses and costs, including reasonable attorney's fees for the services of such counsel together with all other costs and

incurred in connection with a suit against members of the firm and Wells Fargo that arose out of the sale of the Property. The complaint in that suit, commenced by a bidder at the auction whose bid was ultimately rejected, alleges causes of action under 42 U.S.C. §§ 1981 and 1985(3) and for tortious interference with a contract, and seeks compensatory and punitive damages. *See* Letter to Hon. William F. Kuntz, ECF No. 227-2; Complaint, Case 17-cv-07195-WF-LB, ECF No 1. While this action is related to Wells Fargo's collection efforts in the superficial sense that it arose out of the sale, the fees incurred therein do not go directly toward collecting, protecting, or foreclosing on the mortgage. *See* Consolidated Mortgage ¶ 35. The action is a separate matter altogether, and does not affect Wells Fargo's ability to collect on its claim. Those fees are, for that reason, not contemplated by the Consolidated Mortgage, and must be excluded from KTS's fee award.

Additional reductions are appropriate based on the reasonableness of the fees sought. A number of entries in KTS's time sheets are "lumped," in that they combine several activities into one entry without identifying the amount of time spent on each discrete activity. *See In re Hancock St. SML LLC*, Case No. 1-14-45491-nhl, 2016 WL 6271329, at *5 (Bankr. E.D.N.Y. Oct. 26, 2016); *see also* ECF No. 227-4 (containing instances of lumped billing). To the extent that this is the case, the Court is unable to find that the time spent on those activities was reasonable.

The same is true of entries that have been redacted almost in full. *See, e.g.*, ECF No. 207. The Court appreciates that redaction may be necessary in some circumstances. Nevertheless, where entries must be redacted to the extent that they convey no information, an alternate,

---

disbursements in connection therein whether or not suit be brought and including those incurred in post-judgment collection efforts and in any bankruptcy proceeding.

Consolidated Mortgage ¶ 35, ECF No. 207-4.

perhaps less specific phrasing of those entries may be appropriate to avoid such extensive redactions. Here, as these entries cannot be assessed, a further reduction is appropriate.

The Court finds that, in total, these issues justify a 30% reduction in the fees sought. Accordingly, KTS is entitled to fees of **$593,346.25**.

As for expenses, KTS is entitled to a sum of **$27,009.33**. This includes the entirety of the expenses sought through May 2018, plus $63.58 of the expenses incurred in June 2018. The balance of the request for June 2018 is travel-related, which is a category of expenses that KTS had voluntarily agreed to waive.

Surcharge Under § 506(c)

Section 506(c) provides that a debtor-in-possession "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). It is therefore possible for the Debtors to recover the costs and expenses incurred in preserving or disposing of the Property, but such recovery is dependent upon their ability to establish that such costs and expenses were: (i) reasonable, (ii) necessary, and (iii) provided a direct benefit to the secured creditor, here Wells Fargo. *See In re Guterl Special Steel Corp.*, 316 B.R. 843, 854 (Bankr. W.D. Pa. 2004); *In re Flagstaff Foodservice Corp.*, 762 F.2d 10, 12 (2d Cir. 1985). Alternatively, they must show that that Wells Fargo has caused or consented to those expenditures. *See Compton Impressions, Ltd.*, 217 F.3d 1256, 1260 (9th Cir. 2000); *Flagstaff*, 762 F.2d at 12.

The Debtors seek to surcharge the fees and expenses of: their outgoing counsel, Ortiz & Ortiz; their special litigation counsel, Marilyn Macron; and the receiver, Douglas Rosenberg, and

his counsel, David Doyaga, Sr. They have also requested surcharge of the receiver's disbursements. *See* Sched. of Expenses, ECF No. 232.[15]

The dispute over whether § 506(c) provides for the surcharge of these sums turns exclusively on the issue of benefit, though the Debtors' argument seemingly straddles the concepts of benefit and cause. The crux of the Debtors' argument is that Wells Fargo benefitted from all of the expenses incurred to date because those expenses were, at bottom, caused by Wells Fargo's control over the progress of the case. According to the Debtors, Wells Fargo pushed for the receiver to stay in place and for the sale to occur, the latter of which has been the focus of this case until recently, and caused the litigation commenced by the successful bidder to vacate the sale confirmation order. In short, the argument goes as follows: because Wells Fargo wanted to have, and ultimately had, the Property sold, every related expense incurred was to their benefit. *See* Sur. Mot. ECF No. 231; Add'l Aff., ECF No. 254.

Wells Fargo, for its part, disputes both the substance of those allegations and that the argument is sufficient to meet the high burden imposed on a party seeking to surcharge. Resp. to Add'l Aff. 6–7, ECF No. 258. More importantly, however, it argues that surcharge of the above-listed expenses is inappropriate because Wells Fargo is an oversecured creditor with an ability under the loan agreements to charge to the Debtors all of the expenses sought in the Surcharge Motion. Given this status and ability, Wells Fargo contends that it did not benefit from the Debtors' expenditures because it was left no better off than if it had simply been permitted to foreclose. *See* Resp. in Opp'n, ECF No. 233.

Recovery under § 506(c) requires that the moving party, in this case the Debtors, show that their "funds were expended primarily for the benefit of the creditor and that the creditor

---

[15] Though this document was not timely filed, *see* Feb. 9, 2018 Order, ECF No. 229, it is nevertheless the clearest statement of the exact amount of the Debtors' request.

9

directly benefitted from the expenditure." *Flagstaff*, 762 F.2d at 12; *In re Beker Indus. Corp.*, 89 B.R. 336, 342 (S.D.N.Y. 1988). This direct and primary benefit must be "quantifiable, rather than qualitative or speculative." *Brookfield Prod. Credit Ass'n v. Borron*, 738 F.2d 951, 952 (8th Cir. 1984) (citing *In re Flagstaff Foodservice Corp.*, 29 B.R. 215 (Bankr. S.D.N.Y. 1983)). For that reason, and because the focus of the inquiry is on the benefit to the secured creditor rather than the outlay of the movant, *see In re Codesco*, 18 B.R. 225, 229 (Bankr. S.D.N.Y. 1982), the extent and nature of a benefit conferred generally turns on a showing that a lender would have received less from its collateral absent the moving party's expenditures, *see Beker Indus.*, 89 B.R. at 342; *In re Creed Bros., Inc.*, 70 B.R. 583, 587 (Bankr. S.D.N.Y. 1987); *In re W. Post Rd. Props. Corp.*, 44 B.R. 244, 247 (Bankr. S.D.N.Y. 1984); *In re Richards Pontiac, Inc.*, 24 B.R. 758, 760 (Bankr. E.D.N.Y. 1982); *Codesco*, 18 B.R. at 228–29; *see also Brookfield*, 738 F.2d at 952–53. In other words, did the creditor "fare[] any better," in quantifiable terms, as a result of the movant's expenditures? *See In re Happy Wave LLC*, Case No.: 14-74389 (REG), 2015 WL 7575497, at *2 (Bankr. E.D.N.Y. Nov. 25, 2015).

A creditor's oversecured status and ability to charge expenses to a debtor are essential to answering this question, and often create a high hurdle for a movant to overcome. *See, e.g.*, *Compton Impressions*, 217 F.3d at 1261; *W. Post Rd.*, 44 B.R. at 247; *Codesco*, 18 B.R. at 228–29. This is not because an oversecured creditor is per se exempt from surcharge under § 506(c). *See In re Debbie Reynolds Hotel & Casino, Inc.*, 238 B.R. 831, 838 (B.A.P. 9th Cir. 1999), *rev'd on other grounds*, 255 F.3d 1061 (9th Cir. 2001). Rather, it is because increases to the value of collateral that do not increase the yield to the creditor cannot be said to inure to that party's benefit. *See Beker*, 89 B.R. at 344 ("Any purchase price obtained in excess of [the full amount owed] was of no benefit to the Secured Lenders, but only to the Debentureholders and to the

10

equity creditors."). Similarly, a mortgagee saves no costs that were always the obligation of the mortgagor. *W. Post Rd.*, 44 B.R. at 247 (finding that a debtor's responsibility for certain expenses under the mortgage prevented the debtor from using § 506(c) to "shift [those responsibilities] to the mortgagee"). Ultimately, in cases where a debtor is contractually responsible for these costs, and the creditor could have recovered its full claim if it had been permitted to foreclose, it cannot generally be said that the creditor fared "any better as a result of a bankruptcy auction than it would have in the context of [a] pending non-bankruptcy foreclosure." *Happy Wave*, 2015 WL 7575497, at *2.

Here, the Debtors have failed to produce any evidence showing, in quantifiable terms, that Wells Fargo fared better because of the Debtors' expenditures. There is no dispute that Wells Fargo is oversecured, and that status is shown by comparing the scheduled value of the Property with Wells Fargo's proof of claim, as well as the sale price with the current payoff amount. The Debtors have not shown that any of their administrative expenditures resulted in an increase in the value of the Property, or that those increases had an impact on what Wells Fargo would have been able to collect. Even if it is assumed that the Debtors' efforts resulted in the increase of the scheduled value of $5.5 million to the sale value of $7.35 million—though there is no evidence of this—both values were in excess of Wells Fargo's claim at the relevant times, and would have been sufficient to cover both the claim and costs of sale. The increase would therefore not have improved Wells Fargo's position, but only that of other creditors and the Debtors themselves.[16] Similarly, because the Consolidated Mortgage makes the Debtors

---

[16] Alternatively, while it is possible that the Debtors' expenditures simply prevented the value of the Property from decreasing and rendering Wells Fargo undersecured, there is no evidence of this either, and the Debtors do not make such an argument. *See Debbie Reynolds*, 238 B.R. at 838 ("We can envision a situation in which an oversecured creditor may benefit from preservation of the collateral upon which its security interest attaches when the services rendered help to prevent a creditor from becoming undersecured.").

responsible for charges related to the receiver,[17] and the rents and equity cushion in the Property were sufficient to pay those sums, they too did not, and could not have, impacted what Wells Fargo was able to collect, and cannot be said to have inured primarily to its benefit. At best, it is possible but unproven that Wells Fargo benefitted from the Debtors' expenditures, and to the extent that this is the case, the benefit is merely speculative.

The Court also finds unsupported by the record the argument that Wells Fargo benefitted from the Debtors' expenditures because it in some sense "caused" them to be incurred. That Wells Fargo moved to maintain the receiver's possession of the Property does not in turn render it responsible for the entirety of the receiver's fees or disbursements. Nor, for that matter, does the Debtors' hope to refinance instead of sell the Property make Wells Fargo responsible for the costs incurred when the Property was ultimately sold. The same can be said of the costs associated with the litigation that ensued after the successful bidder attempted to vacate the sale confirmation order. Wells Fargo did not cause that litigation to occur in any meaningful sense, and did not benefit from the delay that resulted.

However, Wells Fargo has caused one expense that may therefore be appropriately surcharged. After the receiver was appointed, he retained a contractor based on the state court order and the lender's approval. *See* May 9, 2017 Tr. 15:15–21, ECF No. 88. As the receiver explained, this contractor, an engineering firm by the name of Partner Engineering and Science, Inc. ("Partner"), was, "in reality . . . a contractor that the plaintiff [in the foreclosure action] was comfortable with." *Id.* However, an issue arose with Partner, and it has since requested compensation for work that the receiver deemed unfinished. Oct. 26, 2017 Tr. 25:10–17. On that basis, Partner filed an administrative proof of claim in the amount of $73,997.53.

---

[17] Taken together, paragraphs 4, 40, and 45 of the Consolidated Mortgage dictate that any sums incurred by Wells Fargo in maintaining the Property could be charged against the Debtors. *See* Consol. Mortg., ECF No. 207-4.

"Implied consent" serves as an alternate basis for surcharge, and may be inferred "where a creditor has in some way caused the additional expense." *See Flagstaff*, 762 F.2d at 12; *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982). Though it is not to be inferred lightly, the Court finds that drawing such an inference is appropriate here. *See In re Croton River Club, Inc.*, 162 B.R. 656, 660 (Bankr. S.D.N.Y. 1993). The $73,997.53 claimed by Partner is an expense that arose from a situation wholly outside of the Debtors' control, involving an issue between the court-appointed receiver and Wells Fargo's preferred contractor. Yet, the responsibility for the claim now falls squarely on the Debtors' estate. "A secured creditor which causes administrative expenses, can and should be charged with such costs." *In re Hotel Assocs., Inc.*, 6 B.R. 108, 111–12 (Bankr. E.D. Pa. 1980). Here, Wells Fargo should be charged with Partner's allowed administrative claim.[18]

## Conclusion

For the reasons set forth above, it is hereby

**ORDERED**, that the Debtors' Surcharge Motion is DENIED, except to the extent that the administrative claim of Partner (Claim No. 12-1), should it be deemed allowed,[19] may be surcharged against the proceeds from the sale of the Property; and it is further

**ORDERED**, that the balance of the Distribution Motion is GRANTED, and Wells Fargo is entitled to a further and final payment of $1,165,658.97, less the allowed amount of Partner's claim, in full satisfaction of its claim; and it is further

---

[18] While it arguable that the parties' Consolidated Mortgage makes the Debtor responsible for claims arising out of repair and remediation work, the plain language of the relevant indemnification provision does not appear to cover this situation. *See* Cons. Mortg. ¶ 40 (referring only to "acts or failure to act of mortgagor or mortgagor's predecessors in interest, third parties in a contractual relationship with mortgagor, or any of them"). Yet, even if it were covered, the Court sees no basis for concluding that a creditor can cause any expense and evade responsibility under § 506(c) because of the terms of an underlying agreement.

[19] Should Wells Fargo wish to pursue an objection to Partner's claim, the Court will entertain an application, on notice and a hearing, to that end.

**ORDERED**, that Ortiz & Ortiz, as escrow agent, is authorized to disburse to Wells Fargo $1,091,661.44 (the sum of $1,165,658.97 less the $73,997.53 claimed by Partner). The balance of the total sum awarded pursuant to the Distribution Motion shall remain in escrow pending further order of this Court.



Dated: August 9, 2018
Brooklyn, New York

Nancy Hershey Lord
United States Bankruptcy Judge